IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                                                    PLAINTIFF

v.                                          NO. 4:16-CV-545-JM

STATE OF ARKANSAS, ARKANSAS                                               DEFENDANT
REHABILITATION SERVICES, AND
AMY JONES

BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

I.  INTRODUCTION

Plaintiff David Stebbins filed this action alleging Defendants Amy Jones and Arkansas Rehabilitation Services ("ARS") violated his civil rights pursuant to 42 U.S.C. § 1983 and his rights under Title II of the Americans With Disabilities Act (ADA), and seeks a total of $744,537.50 in damages.  Plaintiff also names the State of Arkansas as a Defendant, although he makes no allegations against the State in his Complaint.  Plaintiff alleges that he applied for but was denied money from ARS to fully fund a renewed attempt to complete a college education.  Plaintiff alleges that he was denied the funds not because he was ineligible for them, but because he, like all of the individuals served by ARS, has a disability.  Stebbins further alleges that ARS denied him money in retaliation for filing lawsuits against entities other than ARS.  Plaintiff's claims against ARS must be dismissed because it is clear from the allegations in his complaint that he was not eligible to receive assistance from ARS.  Therefore, Plaintiff was not a qualified individual with a disability as required to state a claim for relief under Title II of the ADA.  Similarly, because Plaintiff was denied assistance from ARS because he was ineligible for assistance and not based on any retaliatory motive, Plaintiff's retaliation claims under both the

1

ADA and § 1983 fail as a matter of law.  Moreover, Plaintiff's claims are completely barred by sovereign immunity.  Therefore, Defendants respectfully request that Plaintiff's complaint be dismissed in its entirety.

## II.     STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion to dismiss should be granted in favor of Defendant on Plaintiff's claims if Plaintiff "fail[s] to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) operates to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions.  *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).  Legal conclusions, unsupported conclusions, and unwarranted inferences must be ignored and fail to withstand a Rule 12(b)(6) motion.  *See Farm Credit Svcs. v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003).

While a Complaint does not need "detailed factual allegations," the plaintiff's "obligation requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level,…" *Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Id*.  Stated differently, the threshold requirement of Rule 8(a)(2) is that the "'plain statement possesses enough heft to 'show that the pleader is entitled to relief.'"  *Id*. at 557.  There must be enough to show "plausibility" of success, not mere "possibility."  "The plausibility standard is not akin to a 'probability

2

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### III.    FACTUAL ALLEGATIONS

Plaintiff, a resident of Harrison, Arkansas, is an individual with Asperger Syndrome as well as "a slew of" other disabilities including post-traumatic stress disorder and severe depression. (D.E. 1, ¶¶7, 12). According to Plaintiff, his disabilities "severely hinder[] his ability to socialize with others, make friends, get jobs, get a girlfriend, etc." (D.E. 1, ¶8). Plaintiff alleges that these disabilities entitle him to protection under the ADA. Defendant Arkansas Rehabilitation Services is an Arkansas State agency that exists solely to provide rehabilitation services in the form of vocational rehabilitation and independent living services to individuals who can benefit from those services as determined by the agency. Ark. Code Ann. § 25-30-203(a). Defendant Amy Jones was at all times relevant to this complaint the District Manager over ARS's Harrison office.

In November of 2015, Plaintiff applied for services at the ARS's Harrison office. (D.E. 2, ¶15). Plaintiff was seeking over $17,000.00 from ARS to fully fund his attendance at Arkansas Tech University for a year as well as funds to live on campus, to permanently relocate to Russellville, and to support him during the summer semester. (D.E. 2, ¶17). Approximately 30 days later, Plaintiff received notification that his application for ARS services was denied. (D.E. 2, ¶19). As part of the application process, Plaintiff provided release forms for some of his medical records. (D.E. 2, ¶¶ 21-21). Plaintiff was notified that ARS's determination that he was ineligible for services was based in part on his medical records and a Licensed Psychological

3

Examiner's determination that he needed to obtain counseling before he could benefit from ARS's vocational rehabilitation services. (D.E. 2, ¶22). Plaintiff's application file also contained a notation that a public-records search revealed that he had filed "multiple lawsuits against his parents, Wal-Mart, the U of A, and federal judges." (D.E. 2, ¶24).

To be clear, although Plaintiff's complaint cites many cases involving Title I of the ADA in the context of employment, Plaintiff has never been an employee of ARS, and his lawsuit is not based on any employment relationship with ARS, nor the denial of any accommodation under Title I of the ADA. Rather, Plaintiff's claims are based solely on ARS's obligations under Title II of the ADA as a public entity to make its services available to members of the public who are qualified to receive those services regardless of disability.

## IV. ARGUMENT

### A. Plaintiff's Claims Are Barred by Sovereign Immunity.

Plaintiff has named and served three defendants in this case: the State of Arkansas, Arkansas Rehabilitation Services, and Amy Jones, District Manager for ARS. Because the Eleventh Amendment bars suits against states and state agencies in federal court, Plaintiff's complaint must be dismissed. *Pennhurst State School & Hosp. v. Halderman,* 465, U.S. 89 (1984).

#### 1. Title II of the Americans with Disabilities Act Claims.

Plaintiff brings his first cause of action against Defendants under Title II of the ADA seeking an award of a hundreds of thousands of dollars. However, Defendants are not subject to suit for monetary damages under the Title II of the ADA. The Eleventh Amendment bars suits against states and state agencies in federal court. *Pennhurst State School & Hosp. v. Halderman,* 465, U.S. 89 (1984). The Eleventh Amendment also bars suits against state officials when the

4

state is the real party in interest and when the suit seeks retroactive monetary relief. Since a damages action against state employees or officials is tantamount to a suit against the state itself, such a suit is barred. *See, e.g., Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). This bar is absolute and can only be overcome in two circumstances: (1) if a state waives its sovereign immunity and consents to being sued in federal court, or (2) if Congress, through legislation, abrogates the state's immunity in order to effectuate the provisions of the Fourteenth Amendment to the United States Constitution. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

The State of Arkansas and its agencies and officials have not consented to suit in the federal courts, *see Burk v. Beene,* 948 F.2d 489 (8th Cir. 1991). Indeed, the Arkansas Constitution grants the State of Arkansas and its subdivisions sovereign immunity from suit. *See Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2010). And the Eighth Circuit Court of Appeals has specifically held that Congress did not abrogate the Eleventh Amendment in passing Title II of the ADA. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) ("…there is no valid abrogation of Arkansas' Eleventh Amendment immunity from private suit in federal court and the district court lacked subject matter jurisdiction over the ADA claim.") Thus, Plaintiff's ADA claims against the State, ARS, and Amy Jones as its District Manager should be dismissed with prejudice because of sovereign immunity.

### 2. 42 U.S.C. § 1983 Claims.

Plaintiff's second cause of action against Defendants is a claim of retaliation under 42 U.S.C. § 1983. Defendants, however, are not subject to a § 1983 lawsuit for monetary damages. Neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. *Will*, 491 U.S. at 65-66. In *Will*, the Court reasoned that a state

5

official is in effect acting on behalf of the state and, therefore, immune from liability under the Eleventh Amendment to the Constitution. *Id* at 66. The Court explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…As such, it is not different from a suit against the state itself." *Id* at 71. *See also Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).

The doctrine of sovereign immunity deprives federal courts of jurisdiction over suits against states and their agencies, boards, commissions and other "alter egos" of the state unless the state has waived its immunity or Congress has abrogated that immunity pursuant to a valid exercise of Congressional power. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 53 (1996); *Pennhurst*, 465 U.S. at 100. Even if the state is not named as a defendant, if a judgment for the plaintiff will operate to control the action of the state or subject it to liability, the suit must be treated as one against the state. *Short v. Westark Cmty. Coll.*, 347 Ark, 497, 505 (2002).

As stated above, the State of Arkansas and its agencies and officials have not consented to suit in federal court, and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will*, 491 U.S. at 66-67. Accordingly, Plaintiff's claims for constitutional violations against Defendants must be dismissed.

> **B.    Plaintiff Has Failed to Plead Sufficient Facts to Sustain a Claim for Relief Under Either the ADA or 42 U.S.C. § 1983.**

Even if this Court were to determine that Plaintiff's claims are not barred by sovereign immunity (and they are), Plaintiff's complaint must be dismissed because he has failed to state a claim for relief under either Title II of the ADA or 42 U.S.C. § 1983. Specifically, Plaintiff has failed to show that he was a qualified individual with a disability as required under Title II of the ADA, and has failed to show that retaliation was the "but for" cause of ARS's denial of Plaintiff's application for services.

### 1. Discrimination Under Title II of the Americans with Disabilities Act.

Title II of the ADA provides, in relevant part, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must allege that 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability. *See Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). The facts alleged in Plaintiff's complaint plainly show that he was not an otherwise qualified individual with a disability.

Plaintiff was not denied ARS's services because of his disability; rather, Plaintiff was not otherwise qualified to receive vocational benefits from ARS, *i.e.* able to meet all of the program's requirements *in spite* of his disabilities. Plaintiff would not have been eligible to receive any rehabilitative services in the absence of his disabilities. However, having a disability does not automatically make an individual otherwise qualified. *See, e.g., Mallett v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997) (holding plaintiff who was denied further vocational rehabilitation funds to attend graduate school was not "otherwise qualified" to receive the benefits). A qualified individual with a disability is defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Arkansas law provides ARS's policy regarding who is qualified to receive services:

> The policy and scope of the Arkansas Rehabilitation Services shall be to provide increased employment of individuals with disabilities through the provision of

>individualized training, independent living services, education and support services, and meaningful opportunities for employment in integrated work settings to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society.

Ark. Code. Ann. § 25-30-201(a). The Arkansas legislature has specifically declared it to be the policy of the State of Arkansas to "provide needed and feasible rehabilitation services to eligible disabled individuals…to the end that *they may engage in useful and remunerative occupations to the extent of their capabilities*." Ark. Code Ann. § 20-79-202(a) (emphasis added). The legislature further stated that ARS's services shall be provided to disabled individuals "whose rehabilitation the Director of the Arkansas Rehabilitation Services determines, after full investigation, can be satisfactorily achieved…" Ark. Code Ann. § 20-79-213(a)(1). To that end, ARS provides rehabilitation services to "eligible physically or mentally disabled individuals and those who can benefit from vocational rehabilitation and independent living services, *as determined by the agency to be eligible therefor*." Ark. Code Ann. § 25-30-203(a) (emphasis added). In other words, ARS helps those individuals with disabilities that it determines are likely to succeed in the workforce with some temporary assistance from ARS. Only those individuals who are likely to succeed in the workforce are eligible for assistance from ARS. And the determination of whether an individual is likely to succeed in the workforce is solely within the discretion of ARS.

Plaintiff's allegation that he was denied ARS services because of his disabilities misses the boat. Plaintiff would not have been eligible to receive ARS services at all if he had not been an individual with a disability. However, having a disability does not automatically make an individual eligible for ARS services. Rather, they must, as stated in the statutes above, show that they would benefit from those services in that their rehabilitation into the workforce could be

satisfactorily achieved with some assistance from ARS. And it is on that criterion that Plaintiff fell short.

Per Ark. Code Ann. § 20-79-213(a)(1), ARS is to conduct a "full investigation" into whether an applicant is likely to be satisfactorily rehabilitated with ARS assistance. As part of the investigation into whether Plaintiff met that requirement, Plaintiff admits that ARS had a Licensed Psychological Examiner review his medical records and perform a public records search on him. That investigation revealed that Plaintiff exhibited symptoms that "would interfere with Plaintiff's vocational efforts." (D.E. 2, ¶22). These symptoms included: impulsivity that may result in poor choices in job environment; depression that may interfere with counseling/job interviews; difficulty relating with instructions/students/co-workers; difficulty performing tasks which involve people; and difficulty changing behavior to meet requirements. (D.E. 2, ¶24).

Plaintiff does not deny that he suffers from the above symptoms. Rather, Plaintiff alleges that Defendants' articulation of the above symptoms as reasons he would not benefit from ARS services, is an "open confession" that they discriminated against him. (D.E. 2, ¶25). On the contrary, these symptoms are illustrative of why Plaintiff could not, without some further counseling services which ARS recommended, succeed in the workforce. While Plaintiff alleges that his past academic performance shows that he was qualified to receive assistance from ARS to return to college, academic performance not the only factor that determines success in college. Schools also have conduct and disciplinary requirements, and courts have held that individuals who cannot meet these standards may not be "otherwise qualified" for vocational rehabilitative services. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154-55 (1st Cir. 1998). Moreover, success in college is not the standard by which ARS determines if individuals are eligible for

9

their services; rather, it is whether an individual can enter the work force after successful completion of their education. ARS determined, as it is authorized to do by statute, that the answer to that question as it pertains to Plaintiff is no.

The Eighth Circuit addressed a similar issue in *Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 674 (8th Cir. 2005). In *Reaves*, the plaintiff sued over denial by Missouri Division of Vocational Rehabilitation of the plaintiff's request for funds to purchase equipment for the plaintiff's proposed electronic acupuncture business. The plaintiff alleged that the denial was discrimination based on the plaintiff's disability. The Eighth Circuit held that testimony demonstrated that the plaintiff was not well-suited to own the business that she sought to start up, and that the plaintiff was, therefore, not an otherwise qualified individual with a disability as it pertained to receipt of the requested services. *Id.* This Court should similarly rule that Plaintiff has failed to state a claim because he is not an otherwise qualified individual to receive services from ARS.

Plaintiff's complaint is based on the assumption that by virtue of his disabilities he should automatically receive vocational assistance from ARS. However, having a disability is only one of the factors that determines whether an individual is eligible for ARS services. It is undisputed that Plaintiff's Asperger Syndrome and his other disabilities have manifested in ways that "severely hinder[] his ability to socialize with others, make friends, get jobs, get a girlfriend, etc." (D.E. 2, ¶ 7). In fact, Plaintiff states in his complaint that it was "out of the question" for him to attempt to get along in society and that he has instead chosen to "file suit in federal court" to settle his disputes. (D.E. 2, ¶8). Because Plaintiff is not an "otherwise qualified" individual with a disability as it pertains to ARS services, Plaintiff has failed to plead facts that constitute a violation of Title II of the ADA and his ADA claims must be dismissed.

### 2. Retaliation Under Title II of the Americans with Disabilities Act.

The ADA prohibits discrimination against any individual who has opposed an unlawful act of discrimination, made a charge of discrimination, or participated in any manner in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) that he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." *Mershon v. St. Louis. Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006). If this prima facie showing is made, "the burden then shifts to the defendant to proffer a legitimate nondiscriminatory reason for the adverse action." *Id*. "The burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination." *Id*.

Plaintiff has not pleaded facts that show he engaged in a statutorily protected activity. Plaintiff makes the conclusory allegation in his complaint that "the factual allegations in Paragraph 7-10 sufficiently pleads that Plaintiff had a good faith reasonable belief that the defendants in those cases were engaged in discriminatory activity." (D.E. 2, ¶ 43). Paragraphs 7-10 of Plaintiff's complaint do not refer to any specific ADA protected activity which Plaintiff engaged in. Plaintiff's complaint makes vague reference to the fact that he had to "[e]ither suck it up and let people do whatever they want to him and walk all over him, or file suit in federal court." (D.E. 2, ¶8). Plaintiff goes on to state that he "had no choice but to represent himself pro se in these matters." (D.E. 2, ¶10). Plaintiff, however, never articulates what "these matters" were or how they fall within the protections of the ADA. While it is undisputed that Plaintiff had previously filed lawsuits regarding his civil rights against various individuals including his parents, Plaintiff does not allege that prior to this lawsuit he had ever complained about ARS's

conduct under the ADA. It is unclear from Plaintiff's complaint exactly what these prior lawsuits were about, if they constitute a protected activity under the ADA, or if ARS knew that his participation in the former lawsuits constituted a protected activity under the ADA.

Moreover, as stated above in section IV(B)(1), Plaintiff was denied ARS's services because he was ineligible for them – *i.e.* not "otherwise qualified" for the services. Plaintiff provides no support in his complaint for his conclusory allegation that he was denied ARS's services in retaliation for engaging in an ADA protected activity. Because Plaintiff cannot show a causal connection between the adverse action taken against him and the filing of civil rights lawsuits against agencies other than ARS, his ADA retaliation claims must be dismissed.

### 3. 42 U.S.C. § 1983 Retaliation Claims.

Plaintiff also alleges that ARS's denial of his application for assistance by way of a fully funded college education constitutes retaliation under 42 U.S.C. § 1983. First Amendment retaliation claims under § 1983 are analyzed under a burden shifting framework which requires Plaintiff to establish a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) he suffered an adverse action, and (3) a causal connection existed between the two. *Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009). These elements are identical to the elements necessary to establish retaliation under the ADA, and Plaintiff's § 1983 retaliation claim fails for the same reasons his claim for retaliation under the ADA fails: because he has not alleged that he engaged in a protected activity, and he cannot establish a causal connection between participation in any protected activity and the denial of his application for assistance.

Again, while Plaintiff's complaint makes vague references to having previously filed lawsuits regarding his civil rights and having to represent himself in those matters, these allegations fall short of the requirements for stating a claim for relief articulated in *Twombly* and

12

*Iqbal*. As the court stated in *Twombly*, a pleading "must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Plaintiff's complaint fails to chin that bar regarding participation in a protected activity.

And as with any § 1983 claim, causation is an essential element of a § 1983 claim for retaliation. It is well settled that causation is an essential element of a section 1983 cause of action. *See, e.g., Reimer v. Smith,* 663 F.2d 1316, 1322 & n. 4 (5th Cir.1981) (it is axiomatic that a plaintiff cannot succeed in a section 1983 action if he or she fails to demonstrate a causal connection between the state official's alleged wrongful action and the alleged deprivation); *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355–56 (9th Cir.1981) (causation, while frequently not mentioned, is an implicit requirement in a section 1983 action). If it appears from the complaint, including its reasonable inferences, that there is no causal connection between the alleged deprivations and the challenged conduct, the complaint may properly be dismissed for failure to state a claim. *See Hampton v. Mouser,* 701 F.2d 766, 767 n. 2 (8th Cir.1983) (per curiam) (summarily affirming district court's dismissal of section 1983 complaint for failure to state a claim where allegations failed to show that the defendant's conduct was the cause of plaintiff's injury).

Moreover, the Eighth Circuit has repeatedly held that where a plaintiff cannot show that retaliation was the "but-for" cause of the adverse action they suffered, they cannot succeed on a § 1983 retaliation claim. *See, e.g.*, *Univ. of Texas Sw. Med Ctr. V. Nassar* ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013) (holding that retaliation must be the "but for" cause of the adverse employment action); *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012) (holding that prisoner bears the burden of proving that "but for an unconstitutional, retaliatory motive the transfer

would not have occurred."); *Webb b. Hedrick*, 409 Fed. Appx. 33, 35 (8th Cir. 2010) ("Even if retaliation was one factor in the decision to transfer [Plaintiffs] they have not shown that their transfers would not have occurred 'but for' the retaliation."). In *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003), the Eighth Circuit held that where the record demonstrated that the plaintiff was disciplined and transferred due to a pattern of misbehavior and repeated violations of the jail's rules of conduct, the plaintiff failed to show that but for his assertions of his constitutional rights, he would not have been transferred. As the *Kind* court stated, "[h]is misconduct appears to have been reason enough for this administrative action." *Id*.

The same is true in this case. Plaintiff cannot show that but for his previous filing of lawsuits against agencies other than ARS, he would not have been denied assistance from ARS. In fact, the record is clear that Plaintiff was denied assistance because he was not an otherwise qualified individual with a disability. Therefore, Plaintiff's §1983 claims against Defendants must be dismissed.

## V.     Conclusion

Plaintiff's complaint must be dismissed as to all three defendants first and foremost because all of the claims are barred by sovereign immunity. Second, Plaintiff has failed to meet his burden under *Twombly* and *Iqbal* of pleading non-conclusory facts that show he is entitled to relief under either the ADA or § 1983. On the contrary, the facts in Plaintiff's complaint show that he was not qualified to receive the services for which he applied. Therefore, Plaintiff's complaint should be dismissed with prejudice.

          Respectfully submitted,

          Leslie Rutledge
          Attorney General

By: /s/ Amber R. Schubert
    Arkansas Bar No. 2009150
    Assistant Attorney General
    323 Center Street, Suite 200
    Little Rock, Arkansas 72201
    Telephone: (501) 682-2081
    Facsimile:  (501) 682-2591
    amber.schubert@arkansasag.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I, Amber R. Schubert, Assistant Attorney General, do hereby certify that on November 10, 2016, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system.

I, Amber R. Schubert, hereby certify that on November 10, 2016, I mailed the document by U.S. Postal Service to the following non CM/ECF participant:

Mr. David Stebbins
123 W. Ridge St., Apt. D
Harrison, Arkansas 72601

              /s/ Amber R. Schubert