**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 8 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                    PLAINTIFF

VS.                          CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES          DEFENDANTS

## MOTION AND INCORPORATED BRIEF IN SUPPORT THEREOF FOR EXTENSION OF TIME AND FOR SANCTIONS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following motion

for extension of time to file a response to the Defendant's Motion to Dismiss, and for the

Defendants to be sanctioned.

1.      The Defendants never served me with a copy of the motion. I do not have ECF access,

and so they must serve me with their filings themselves if I am to be served. I could go and pull

the two filings off PACER, but that would cost money; it's *their* job to serve me with their

filings.

### Evidence that it wasn't sent

2.      Now, I know what you're thinking: What *proof* do I have that the motion was never

mailed by them, and that merely shipment was not delayed through no fault of their own? The

answer to that question lies in Doc. 17 of this case. That is a filing from the U.S. Marshal

Service, stating that summons was returned executed on the third and final defendant (although

that defendant had already appeared in the case through the same counsel as the other two, but

that's beside the point). That was filed *after* the Defendant's Motion to Dismiss, and therefore, by

all accounts, should have taken even longer for me to get it in the mail. However, I received that

filing from the Marshal Service on Saturday, November 12, 2016, no fuss no muss.

3.      Keep in mind that all mailings which are submitted on a specific day are all mailed together and reach their destination simultaneously, regardless of what time of day it is submitted to the post office. Both the Marshal's return of service, and the Defendant's Motion to Dismiss, were supposedly mailed to me using the Little Rock Post Office, and both were mailed to the exact same destination, so if they were mailed at the same time with the same courier, they should have arrived at the same time. If the Little Rock Post Office was just having an "off" day, that should have delayed the shipments of *both* mailings, not just one.

4.      This eliminates the Post Office as a potential culprit. The only left to blame is the Defense Counsel.

5.      However, in one final act of giving the Defendants the benefit of the doubt, I decided to give it one more day. On Monday, November 14, 2016, the Defendant's Motion *still* had not arrived in the mail. It's safe to say that it's not coming.

6.      Last but not least, I called the Defense Counsel on November 14; they never even picked up the phone at all. It makes sense why they are avoiding me; even though she *claims* the Motion was sent, those are just squiggly lines on a sheet of paper. They are lies; she knows that they are lies, and she has no actual *evidence* that the Motion was sent except her word.

7.      And as we are about to see, the Defendants' motive/intent in this case is palpable.

### The Defendants have a history of using
### ex parte communications to their advantage

8.      This is not admissible for purposes of showing that the Defendants failed to serve the motion in the first instance; however, that has been proven thanks to Paragraphs 2-4 of this Motion. This next bit of evidence *is* admissible, however, to show intent and motivation on their part, e.g. that it might have been intended to be sent, but it was a mere clerical oversight that it was not. See Fed.R.Evid. 404(b).

9.    The Defendants have a history of using ex parte communications to their advantage. This history is being repeated today.

10.   For starters, see **Exhibit A**, a letter where a judge openly admitted that ex parte communications occurred, but refused to sanction the offending party. Parts of this letter have been censored since they are not relevant to finding a pattern of ex parte communications[1]. Namely, I have censored portions where the judge describes what the ex parte communications were about (which are censored because ... it doesn't matter what they were "about;" ex parte communications are prohibited ... period!) as well as portions where the judge goes on rants about how much he doesn't like me without offering any actual evidence or legal citations.

11.   See also **Exhibit B**, a page from a Complaint filed in this Court earlier this year. In it, facts are alleged that, if proven, would necessarily mean that Brad Karren had engaged in ex parte communications with other parties to rig a case in those parties' favor.

12.   I would not accuse them of this so readily *unless* they already had a history of doing that.

13.   As you can clearly see, the State of Arkansas has no qualms whatsoever about using ex parte communications to try and rig cases to achieve the outcome they want, with no regard to what the actual law of the land requires. This is yet another instance of that.

14.   My Complaint and Jury Demand alleges facts that, if proven true, necessarily mean the Defendants have discriminated and retaliated against me, including, but not limited to, a recommendation (and denial based on said recommendation) that offers no excuse for denial of services except my litigation history and real or perceived disabilities. This is not merely sufficient facts upon which a jury could draw an inference; they are facts that cannot possibly mean anything other than discrimination/retaliation. Therefore, the Motion to Dismiss is

---

[1] If the Defense disagrees with that allegation, then let them produce an uncensored or less-censored version by acquiring a copy thereof from the Clerk.

probably just being filed solely for purposes of delay for this reason. Granted, since I do not currently *have* the Motion in front of me, I cannot tell exactly what their motives are. But given their history, it certainly appears that they are trying to get out of otherwise air-tight judgments.

15.     This would also give them a motivation to not serve me with a copy of the Motion … why they would attach a "certificate of service" to their motion knowing full well the contents therein to be lies. Having it be ex parte would increase the odds that the Court would grant the motion, since A) I cannot make counter-arguuments against it, and B) when a nonmovant does not oppose a motion, the Courts usually treat the nonmovant as assenting to it.

16.     So, not only do they have a plausible motive for trying to make their Motion to Dismiss ex parte, but the State of Arkansas also has a *history* of using ex parte communications for that purpose, to rig the case in their favor. Their lack of service of this motion was clearly intentional.

### Relief Requested

17.     First, I request an extension of time to file my Response to the Motion to Dismiss. I request that the Defendants be forced to acquire proof – beyond their uncorroborated word – that the motion was served on me. A return receipt or other signature proof of delivery should suffice for that. The 2-week time limit for me to file my Response should run from the date the return receipt shows delivery was made.

18.     I also request that the Defendants be sanctioned for their continued use of *ex parte* communications to try and rig the case in their favor. Seeing as how they already have a history of doing this, the penalty should be harsh.

So requested on this, the 14th day of November, 2016.

_____
David Stebbins

123 Ridge St., APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

## **CERTIFICATE OF SERVICE**

I, *pro se* Plaintiff David Stebbins, do hereby certify that the Defendants were served with a copy of this motion. Of course, I do not *need* evidence to support it this time, since the Defendants were automatically notified, via email notification, when the motion was uploaded to PACER (which constitutes service (see FRCP 5(b)(2)(E)). So I don't even *have* to serve them myself.

David Stebbins
123 Ridge St., APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

## Russell Rogers

*Circuit Judge*
*Retired on Assignment*
*P.O. Box 365*
*602 South College*
*Stuttgart, AR 72160*

Phone: (870) 673-1162
Fax: (870) 673-2480

July 2, 2015

Mr. Jim Goldie
P.O. Box 1595
Harrison, AR 72602

Mr. David A. Stebbins
123 W. Ridge St., Apt. D
Harrison, AR 72601

2015 JUL -6 PM 2:54

FILED FOR RECORD

> Re:    *David A. Stebbins v. David D. Stebbins*
> *Boone County Circuit Court, Civil Division, Case No. CV-2012-85-4*

Gentlemen:

The only issues pending before the Court are a second motion for a new trial and

second motion for me to recuse:

As background, and in summation of the numerous exhibits and attachments:

1.    Exhibit A is my letter dated June 26, 2015 to the parties regarding ex parte

contacts. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



**Exh. A**

[text redacted]

2.     Mr. Goldie, who did not know that my secretary printed all emails and gave them to me, sent a couple of emails to her about the status of pleadings and two in partial responses to Mr. Stebbins pleadings. I recall the one about preparation of an Order but did not notice that it was not copied to Mr. Stebbins (Exhibit C). Exhibit D, dated May 7th, is about [redacted] I do not recall seeing this one [redacted] Exhibit E is a simple transmittal (May 8th) that was not copied to Mr. Stebbins [redacted] Exhibit F of May 11th is one that I do not recall. It was not copied to Mr. Stebbins and contains [redacted]

6. ~~Mr. Stebbins sent a motion to set aside the judgment and I denied it (Exhibit ).~~

~~Exhibit Mr. Stebbins/Goodie motion for a new trial and Exhibit the collection~~

~~correctly saying this is long and is a story aside from the Goldie regarding the~~

~~motion and what all he is going to do if he is not given a trial they claim the affi~~

~~this is stating that he said the threaten while he is mentioning the by of the~~

~~emails were "damaging his reputation"~~

As to the threatening demands that something be done to punish Mr. Goldie, I will
not do so for the following reasons:

~~1. Mr. Goldie is an experienced, capable attorney who represented the Plaintiff's~~

~~faithfully before me that it is very easy for an experienced attorney that is in~~

~~of a knife attack by the very who threatens this but of an attorney in all it is like if a~~

~~name his son at the bottom of it at that and the emails are of a very furious suspicious~~

~~nation the Plaintiff and I think "threaten" against the and to Goldie is scary I would~~

~~think as an abuse of for lack of for his anger~~

~~2. The Plaintiff in effecting from a condition that I believe off an over 40 years of~~

~~dealing with disturbed people, is more serious than Aspergers alone. He is most likely~~

~~homicidal, is definitely suicidal, as well as paranoid and I believe that he is a~~

~~danger to himself and others, as evidenced by my statements that referral to being~~

~~sent by this to the prosecuting attorney and to the Department of Human Services.~~ I have

been tempted to declare Mr. Stebbins incompetent on my own notion but believe that it is
best to refer it to the proper authorities in Boone County. Plus, I am recusing from this case

by separate order to follow. ▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰

I absolutely despise the thought of recusing in this matter ▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰the

existence of the emails that were not copied to him could possibly be construed as, however

remotely, affecting my judgment in this case. ▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

▰▰▰▰

With regrets,

Russell Rogers

cc: Mr. David I. Ethredge, Boone Co. Prosecuting Attorney
    Boone Co. Dept. of Human Services
    Boone County Circuit Court Clerk

## Sub-Section 4: The adverse actions by Brad Karren

35.     On June 24, 2015, Special Judge Brad Karren – who is normally a circuit judge in Bentonville – was assigned, by the Arkansas Administrative Office of the Courts, as special judge in Case No. CV2015-384 in the Boone County Circuit Court, in which Plaintiff was also a pro se party. In that case, Plaintiff sought $159,064,027.71 in total damages. The order of assignment made it perfectly clear that he had no authority in the Boone County Circuit Court beyond that one specific case.

36.     On August 4, 2015, a motions hearing was held in that case. He had arranged for the Boone County Circuit Clerk to be present at the hearing. Also, when Plaintiff entered the courtroom for the hearing, he noticed that the two defense attorneys were seated at the Plaintiff's table, rather than the defenses. Remember that point: It does not appear important at first, but it will become important later on.

37.     After oral argument, Karren freely admitted to having looked up Plaintiff's litigation history on PACER. He then proceeded to dismiss the Plaintiff's complaint, with prejudice. Officially, he did so on the grounds of collateral estoppel, a grounds not even raised by the Defense prior to the evidence hearing.

38.     He then proceeded to act entirely outside of his jurisdiction, usurp the position of Administrative Judge of the 14th Judicial Circuit, and bar Plaintiff from filing any more pro se lawsuits in the Boone County Circuit Court. He did this in complete defiance to the order assigning him to the case, which stated that he had no power in the 14th Judicial Circuit except to the extent it applied to that one case.

39.     He explained that the reason he asked the Clerk to be present for the hearing was so she could be aware of this particular sanction.

# Exh. B

40. Plaintiff begged the judge for an opportunity to be heard, as he was entitled under Rule 11(c)(6) of the Arkansas Rules of Civil Procedure, but he replied with a one-word answer: "No."

41. He then stormed out of the courtroom without hearing another word. He refused to give Plaintiff even ONE SECOND to argue his case.

42. On August 5, 2015, Plaintiff filed a Motion for Reconsideration. However, Brad Karren struck that motion from the record on the grounds that it was filed pro se, in violation of his order that the Clerk not accept any pro se filings from Plaintiff.

## Sub-Section 6: Causal Connection for Rogers' Adverse Actions

43. First of all, the Defense attorneys were stationed at the Plaintiff's desk. This does not appear, at first glance, to be a constitutional violation. The problem is that there is only one way the two attorneys could possibly have known they were supposed to do that, and that is if they had an ex parte communication of their own.

44. Second, there is only one conceivable *motivation* for wanting to switch it around. They wanted Plaintiff to know that there was an ex parte communication (using the logic explained in the previous paragraph), and, upon figuring that out, to know that it does not matter what the facts or written law are: when you're suing the government, the government wins. Period. Even if they are not immune from suit, even if they are clearly guilty, the judge will still make sure they win. If not legally, they will do so illegaly (such as ... via ex parte communications), regardless of what your rights are.

45. But that only matters if the adverse action was done because of Plaintiff's statutorily protected activities. Otherwise, the claim would only be cognizable under 42 USC § 1983, and then, it would be dismissed for 11ᵗʰ Amendment and/or judicial immunity.

46. With that said, keep in mind that Karren admitted to looking up Plaintiff's litigation