FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 23 2016

JAMES W. McCORMACK, CLERK
By:_____
                      DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                    PLAINTIFF

VS.                  CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES          DEFENDANTS

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for Partial Summary Judgment in the above-styled action.

1. Before we begin, I'd like to make something perfectly clear:

(a) This court cannot raise any defenses on the Defendant's behalf, sua sponte, unless it pertains to the Court's subject-matter jurisdiction. See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own"); see also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims"); see also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)); see also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

(b) As such, whatever defenses the Defendants raised in their responsive pleading are the defenses they are stuck with. This Court cannot "bail out" the Defendants by raising defenses the Court believes to be meritorious but that the Defendants "forgot" to raise. This Court

must restrict its consideration to the claims raised in the Complaint and the defenses raised in the Answer ... and **_absolutely nothing else_**!

2. With that said, it appears that the Court plans on denying the Defendant's Motion to Dismiss, or at the very least, deferring judgment for a little while, as evidenced by its recent decision to set a discovery & trial schedule despite the fact that the Defendants have not even filed an Answer yet. Therefore, I will go ahead and move for partial summary judgment on the issues of liability.

3. The following acts are not in genuine dispute.

   (a) I am believed to be disabled by the Defendants.

   (b) I have engaged in statutorily protected activities in the past.

   (c) The Defendants engaged in an adverse action – specifically, denial of ARS funding – against me.

   (d) I am otherwise qualified to receive this funding, since the Defendants believe me to be disabled, which is how one becomes qualified for ARS services in the first place.

   (e) The denial of ARS funding was motivated, at least in part, by the disabilities they believe me to have, as well as my statutorily protected activities.

   (f) No effort was made by the Defendants to determine if the symptoms they complained about would, in fact, interfere with my vocational efforts. They simply decided that the existence of X symptoms automatically renders me unqualified. They argue that they can do that because they are above the law.

   (g) No effort was made by the Defendants to try and provide reasonable accommodations for the symptoms they complained about.

   (h) If I display the symptoms at all, the Defendants (namely, the State of Arkansas) are

most likely primarily responsible for me having them in the first place.

4.  Therefore, I ask that the Court declare the Defendants liable to me for disability discretion, disability retaliation, and First Amendment retaliation. I ask that the Court award me the injunctive relief requested in Paragraphs 59-60 of his Complaint and Jury Demand. The only things that should remain to be litigated should be the amount of damages I should be awarded.

5.  Before we continue, please remember that this court cannot raise any defenses on the Defendant's behalf, sua sponte, unless it pertains to the Court's subject-matter jurisdiction. See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006); see also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988); see also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976).

6.  To support the undisputed facts in Paragraph 1 of this Motion, please find, attached to this motion, the following exhibits:

    (a)  **Exhibit A**: Initial recommendation from ARS' medical expert.

    (b)  **Exhibit B**: Rejection letter from Amy Jones

    (c)  **Exhibit C**: A letter sent to Amy Jones where Plaintiff submitted additional evidence that he was qualified for college.

    (d)  **Exhibit D**: A page from a portion of my medical records.

7.  A Brief in Support of this Motion is being attached, the contents of which are hereby incorporated by reference.

8.  Wherefore, premises considered, I request that partial summary judgment, with appropriate injunctions, be issued in my favor, costs incurred be awarded, and any other relief that the court finds appropriate.

9. So requested on this, the 19th day of December, 2016.

/s/ David Stebbins<br>
David Stebbins<br>
123 W. Ridge St.,<br>
APT D<br>
Harrison, AR 72601<br>
870-204-6516<br>
stebbinsd@yahoo.com

REHABILITATION INITIAL DIAGNOSIS AND ASSESSMENT FOR CLIENTS
ARKANSAS REHABILITATION SERVICES
4058 NORTH COLLEGE AVENUE, SUITE 150, FAYETTEVILLE, AR 72703

\*\*\*\*This confidential report is generated for Arkansas Rehabilitation Services use only for the purposes of determining eligibility and program planning. It is not to be utilized as a stand-alone document for treatment purposes, and is the property of Arkansas Rehabilitation Services. It is not to be released to any third party. \*\*\*\*

## RECORDS REVIEW

NAME: David Stebbins
SEX: Male          COUNSELOR: Amy Jones
DATE OF BIRTH: 12-29-88     DATE OF REVIEW: 12-15-15
REASON FOR REVIEW: to assist in determining feasibility of VR services/training

## EVALUATION PROCEDURES

Review of mental health treatment records from St. Bernard's Healthcare dated April 24-30, 2-15

## RECORDS REVIEW

Records from St. Bernard's indicated Mr. Stebbins had been transferred to their facility from Northwest Arkansas Regional Medical Center after a suicide attempt. The client received inpatient treatment at St. Bernards from April 24 through April 30. Discharge diagnoses were reported as follows:

Major Depressive Disorder, recurrent, severe
Asperger's' Disorder
Delusional Disorder NOS
Cluster B personality disorder traits (narcissistic and antisocial)

Mr. Stebbins indicated he attempted suicide by drinking bleach after he sued his father and lost. Records indicated he was arrested in 2011 for assaulting his father. Records also indicated he was kicked out of the U of A for making threatening statements. The client reported frustration, anger and depression over his situation. He denied homicidal ideation, but continued to report death wishes if he could 'die without pain'. Treatment records indicated Mr. Stebbins was impulsive, lacked insight, paranoid, irritable and agitated.

Treatment records indicated Mr. Stebbins feels he is chronically targeted by the government and law enforcement because he 'has the brains to be a leader and change things'. He acknowledged perseverative thoughts regarding this issue. A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination.

At discharge, Mr. Stebbins denied suicidal or homicidal ideation. Safety planning was done and he was discharged home. He has indicated to Amy Jones that he is not currently in treatment for his mental health issues.

Exh. A

Documents Review -- David Stebbins                                                   2

## DSM-5 DIAGNOSTIC IMPRESSIONS

See client records

## VOCATIONAL IMPLICATIONS

Following is a list of ways in which the individual's observed or reported problem areas are likely to be manifested in a vocational setting.

IMPULSIVITY MAY RESULT IN POOR CHOICES IN JOB ENVIRONMENT
DEPRESSION MAY INTERFERE WITH COUNSELING/JOB INTERVIEWS
MAY BE SOURCE OF DISTRACTION TO CO-WORKERS
DIFFICULTY ASSESSING CONSEQUENCES OF DECISION ALTERNATIVES
DIFFICULTY RELATING WITH INSTRUCTORS/STUDENTS/CO-WORKERS
DIFFICULTY PERFORMING WORK TASKS WHICH INVOLVE PEOPLE
DIFFICULTY CHANGING BEHAVIOR TO MEET REQUIREMENTS
EMOTIONAL INTENSITY MAY INTERFERE WITH TASK PERFORMANCE
CONFLICTS MAY PRECLUDE ADEQUATE TASK PERFORMANCE

## CONCLUSIONS AND RECOMMENDATIONS

Documentation available, which indicated a history of physical aggression and threatening statements, suggests that Mr. Stebbins is not currently appropriate for vocational rehabilitation services.

A referral to a local mental healthcare provider is strongly recommended. Mr. Stebbins would likely benefit from treatment and the support of a therapeutic relationship. Efforts to work with Mr. Stebbins should be coordinated with his treatment providers. His vocational success will depend on him stabilizing and effectively managing his psychiatric issues.

In order for Mr. Stebbins to be appropriate for ARS services he should be able to demonstrate a period of stable functioning. He will also need to provide documentation from his mental healthcare providers that his symptoms are well-managed and they agree he is ready for training, school or work.

*Leslie S. Johnson*

Leslie S. Johnson, MS
Licensed Psychological Examiner -- Independent Practice

Blank Letter - Stebbins, David (XXX-XX-4148) (System)

## STATE OF ARKANSAS

Asa Hutchinson
Governor

Charisse Childers, Ph.D.
Director

Arkansas Career Education
Division of Rehabilitation Services
Alan McClain, Commissioner

4058 NORTH COLLEGE, STE. 150,
FAYETTEVILLE, AR 72703
(479)582-1286

http://www.arsinfo.org
An Equal Opportunity Employer

December 17, 2015

David Stebbins
123 W. Ridge
D
Harrison, AR  72601

Dear David Stebbins:

Your case and records have been carefully reviewed and assessed by ARS. It has been determined that vocational rehabilitation services are not appropriate at this time.

The Licensed Psychological examiner has reported that a referral to a local mental healthcare provider is strongly recommended. Mr. Stebbins would likely benefit from treatment and the support of a therapeutic relationship. Efforts to work with Mr. Stebbins should be coordinated with his treatment providers. His vocational success will depend on him stabilizing and effectively managing his psychiatric issues.
In order for Mr. Stebbins to be appropriate for ARS services he should be able to demonstrate a period of stable functioning. He will also need to provide documentation from his mental healthcare providers that his symptoms are well-managed and they agree he is ready for training, school or work.

After you have meet the requirements for vocational rehabilitation services and can provide documentation of treatment, stability and recommendations from providers that you are ready for training, school or work, we will reassess your vocational service needs.

Best Regards,
AMY JONES CRC
District Manager

Exh. B

https://arrsa.libera.com/Sys7AR/lformdisplay.aspx?JsBgfpRtf5VofYIwIMA4cso4OMIyP...    12/17/2015

**Subject:** Latest petition to re-open case
**From:** David Stebbins (stebbinsd@yahoo.com)
**To:** amy.jones@arkansas.gov;
**Date:** Thursday, August 4, 2016 6:10 PM

Dear Mrs. Jones,

Please find, attached, my latest petition to re-open the case and approve me for funding.

I'll call you tomorrow to discuss it with you.

Sincerely,
David Stebbins

---

**Attachments**

- August 2016 letter to Amy Jones.doc (173.00KB)

*Exh. C*

Dear Mrs. Jones,

I am David Stebbins. I am writing today to petition you to approve me for funds so I can go to college. You previously rejected me on the grounds that I had some symptoms you believed might get in the way of my vocational rehabilitation. Today, I have evidence that I personally feel you will find irrefutable.

First of all, I think your original reasons for rejecting me were illegal. Your psychological examiner rejected me, summarily, without even examining me in person. He just looked at some medical records from St. Bernard's in Jonesboro, saw a list of symptoms on those records, and just *assumed* that those symptoms would get in the way of my vocational rehabilitation. In other words, you discriminated against me solely by reason of my real or perceived disabilities.

You cannot do that. Federal law expressly prohibits the discrimination of people with disabilities, just on the belief that the symptoms might get in the way of school or work "in order to 'protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear.'" See *EEOC v. Wal-Mart Stores, Inc.*, 477 F. 3d 561, 571 (8th Cir. 2007) (citing the Supreme Court case of *Sch. Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Moreover, if you wish to argue that these symptoms create a bona fide occupational qualification defense, you hold the burden of proof on that. See *Automobile Workers v. Johnson Controls, Inc.*, 499 US 187, 200 (1991) ("For the plaintiff to bear the burden of proof in a case in which there is direct evidence of a facially discriminatory policy is wholly inconsistent with settled [discrimination] law").

You absolutely cannot meet this burden of proof because you never examined me. The proof must be based on the "best current medical or other objective evidence." EEOC v. Wal-Mart. Your licensed psychological examiner never examined me, and therefore, there is no

medical evidence on your side, one way or another.

But the law does provide for "other objective evidence." Therefore, I went and sought out additional evidence. I sought out evidence that proves, beyond a shadow of a doubt, that I can, indeed, handle the rigor of being in class, and the stress of having to work with others. Specifically, I was in class.

I went to North Arkansas College (or NAC, for short) and enrolled in a single class, out of pocket, for the Summer II 2016 semester. It was English Composition II. I chose that class because it is the only class they offered in the summer II block (they only offered a total of twelve classes at all) that was even arguably relevant to my intended major of computer science.

Class was held from 8:00AM to 10:15AM, Monday through Thursday, from July 5, 2016 until August 4, 2016. I believe this is noteworthy because it shows that I was forced to wake up in the morning. I did not sign up for an afternoon – or even a late morning – class. My city bus only went by my nearest bus stop once before class began; if I was unable to wake up one day and I missed the bus, then I missed the class. I did not get a second chance to hop on the bus.

Despite having only one chance, each day, to make it to class, I had perfect attendance. My instructor in this class – one Rachel Lanning by name – has agreed to vouch for me on said perfect attendance if you contact her.

As of the time of this writing, the grades are not finalized. I still have one final essay (which effectively stood in as the final exam) to be graded. However, as long as I make a 73 or higher on that final grade, I will make a B (a grade of "above average") for the course.

While a grade of A would have been ideal, I believe that a B is good enough given the circumstances. What circumstances, you ask? Well, I actually had a lot more going against me, in this class, than just the symptoms that you were concerned with.

In addition to the symptoms of trauma and depression, I also had the following uphill battles while taking this class:

1. English is my worst subject. You can see from the NAC transcript I have already provided you that I made a C in my English Composition I class. If you were to pull my high school transcript, you will see that I made consistent C's and D's in my English classes, as well as my writing and reading electives.

2. This was a summer class. My instructor would repeatedly explain that summer classes are harder than their corresponding classes in the main semesters, because we only have a third of the time to go through the same amount of material. Nearly every class, Mrs. Lanning would state "It's a five week course ... it's a five week course." We had to rush through the material, at the expense of thorough understanding.

3. This next one is fairly situational, but it nevertheless shows my ability to overcome adversity. I believe that I had a crummy teacher. She would repeatedly expect us to understand things she either did not teach us, or refused to explain better. For example, I am attaching an email she sent to me, where I asked for help on one of my essays, and all she told me to do was to remember what was taught in class the day before. That clearly was not enough; clearly, there was something I was not grasping. And yet, she refused to even *try* to clarify the coursework. She never gave a second thought to the possibility that maybe, just maybe, she needed to use multiple, diversified teaching methods to help us understand the material.

Because of all these things I had to overcome, in addition to the symptoms that worry you so much (which, to reiterate, were already in violation of federal ADA law to begin with), I believe the fact that I'm earning a passing grade in this class at all – let alone a score of "above

average" – is definitive proof that I am, indeed, ready for school.

In addition to the grades and attendance record, on two occasions, Mrs. Lanning, as well as the department head, Pam Stone, sent me emails stating that I was doing just fine in class. You can see, from these emails, that I am definitely capable of participating in class, answering the questions, and working well with others.

In light of all this, I firmly believe that I have provided conclusive evidence that I can, indeed, handle being in class. After all, if I cannot handle being in college, how do you explain the fact that I ... um ... handled being in college?

Because of all this evidence (both the fact that you acted illegaly in denying me the first time, and the fact that I proved, decisively, that I can indeed do it), I ask that you re-open my case and approve me for funding. I will call you on Friday to discuss this with you further.

Sincerely,<br>
David Stebbins<br>
123 W. Ridge St.,<br>
APT D<br>
Harrison, AR 72601<br>
870-204-6516<br>
stebbinsd@yahoo.com

**Rachel Lanning**  ⏎ Reply all ⌄

David A Stebbins

David,

I already answered this question from you in class today. I said, your paper needs to be *about* 2000 words and will have *about* six body paragraphs because it is twice as long as the short, five-paragraph essays you have already written this semester. As I said in class, it's a guide and not a firm limit.

We have also discussed in class what it means to think deeply about your ideas. All of our class discussions were designed to illicit deep thought, so you have had practice doing this and now it is your turn to practice thinking deeply in writing.

Have a good weekend,
Mrs. Lanning


**Rachel Lanning**  ⏎ Reply all ⌄

David A Stebbins

David,

I looked at your paper again. I can only reiterate what I told you yesterday in class and via email. In addition, all of your body paragraphs need to follow the MEAL plan and right now they do not. Try to identify what each sentence in your paper is doing - what part of the MEAL plan it belongs to. This will help you identify missing parts of your argument. Lastly, your paper has many claims that are not supported or not supported well with evidence from scholarly sources. Peer review is Monday - I'm sure that will help you by giving you a third set of eyes to look at your paper.

Have a good weekend,
Mrs. Lanning

Print - Close Window - Click More at the bottom of the email to print single message

| | |
|---|---|
| Subject: | I have a complaint about Mrs. Lanning |
| From: | David Stebbins (stebbinsd@yahoo.com) |
| To: | pam.stone@northark.edu |
| Date: | Friday, July 8, 2016 8:28 AM |

Dear Ms. Stone,

I'm currently taking English Comp. II. I'm supposed to do an explication on a poem and turn it in on Monday. However, I'm supposed to log into turnitin.com and upload it there in order to be checked for plagiarism, and I'm supposed to do that BEFORE Monday morning.

Problem is ... I can't log in. Whenever I enter the ID and password she gave me (and I copied and pasted the ID and password, so I know I got it write), it just says "login failed."

But here's the real complaint: I sent Mrs. Lanning an email saying that I can't log in, but she hasn't responded.

And I get it: it's early in the morning. As of the time of this writing, it's been less than half an hour since the business day started.

But at the same time, she has stated that she will not check her email on the weekend, so I only have today and today only to get this straightened out. I only got the assignment yesterday (since this is a summer class that's only five weeks, the class is basically in "turbo" mode), and if the students are expected to pick up the pace by working quicker and more fervently, then I think it's a bit hypocritical of the teacher not to extend that same courtesy for us!

I swear, I'm going to throw a fit if I get a zero on this assignment, just because SHE didn't set up the system correctly!

Can you please get this straightened out? Have her call me at 204-6516 to let me know that she's got this straightened out.

**Subject:** Re: RE-SENT WITH ATTACHMENT Would I get a 100 for this?
**From:** Rachel Lanning (rachel.lanning@northark.edu)
**To:** stebbinsd@yahoo.com
**Date:** Tuesday, July 5, 2016 12:55 PM

David,

I'm so glad to see you have already complete your homework for tomorrow. Unfortunately, I do not offer grades in advance of the due date - everyone will receive grades at the same time. It would be unfair for me to do so. I will grade everyone's notebook every Monday and record the grades online. However, I can tell you that based on your awesome class participation today and your thorough answers to the questions we did in class, you should be fine. You are doing what I expect.

See you in class tomorrow!

Rachel Lanning

---

**Subject:** Re: Annotation
**From:** Pam Stone (pam.stone@northark.edu)
**To:** stebbinsd@yahoo.com
**Date:** Wednesday, July 27, 2016 3:43 PM

Mr. Stebbins,
I am out of town in a spot with limited internet, but I will try to reach Dr. Lanning to discuss this. Surely she and you can reach an understanding. <u>She says you are doing fine in the class.</u>
Sincerely,
Pam Stone

Get Outlook for iOS

STEBBINS, DAVID
PT: SV0131867699
SEX: M  DOB: 12/29/1988  AGE: 026
DT: 04/25/2015  MR:SM07090944



SBHU3012

**ST. BERNARDS MEDICAL CENTER**
*Behavioral Health Unit*
Jonesboro, AR

**ADULT ADMISSION PSYCHIATRIC EVALUATION**

Date of admission: 4-25-15
Date of evaluation: 4-26-15
Type of admission: ✓ Voluntary ___ Involuntary
Admitting physician: SBMC NEUICU - Transfer from NARMC
Attending physician: Weeks
Orienting statement: 26 y/o CF, single, unemployed. Lives alone in Harrison, AR

Chief complaint: "I tried to kill myself [redacted]"

History of present illness: 26 y/o CM c pmhx of Aspergers Syndrome per chart. [redacted] intentionally swallowing 3 cups of bleach. Trigger: "There is no justice, the government is corrupt." [redacted] Therefore, pt. has been focused on "how corrupt the government is." Voiced HI toward corrupt government officials and expressed if suicide was the way to be without pain, he would act on it. Onset SI age 15 y/o

Past Psychiatric treatment/history: Vista Health in Fort Smith: 2007 c recent Outpt. - none     decline in mood 2 mo. ago. Relates depression 8/10, hopeless, despair.

Ø SA prior to admission
Family Psychiatric history: None reported
Dad - etoh, arousal physically
Trial Risperdal

Pt. is very short c answers and refused to answer majority of questions

# 3012 Rev. 08/2009

[Exh. D]

Page 1 of 4