```
                                                          FILED
                                                  U. S. DISTRICT COURT
                                                EASTERN DISTRICT ARKANSAS
```

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DEC 2 3 2016

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

DAVID A. STEBBINS                                        PLAINTIFF

VS.                    CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES              DEFENDANTS

### BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of his Motion for Partial Summary Judgment.

### FACTS OF THE CASE

1. On December 1, 2015, I applied to the ARS for funding for college. After pulling Plaintiff's medical records and his litigation history, the Defendants decided to deny me any funding, or any services of any kind, until I could cure my disabilities. Officially, their grounds for rejection were that my disabilities could "interfere" with my vocational efforts in some vague, unspecified way. However, they offer no evidence whatsoever or details of any kind, beyond their own self-serving speculation and conjecture, to support their purely suppositional belief that this would happen.

2. The Defendants also denied me in part because of my litigation history, as evidenced by the following statement in Exhibit A:

> "search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination."

3. The Defendants refused to entertain any evidence that I might actually be qualified. This was made clear when I submitted **Exhibit C** to Amy Jones and never heard back from her regarding it. Their minds were made up to discriminate against me. I was not qualified in their

minds, and that's all there was to it.

4. This was made even clearer when the Defendants filed their Motion to Dismiss in this case. The Defendants openly admitted that they found me unqualified based entirely on the fact that I exhibited x, y, and z symptoms. By their own admission, they never bothered to inquire as to whether these symptoms actually *would* interfere with my vocational efforts; instead, by their own admission, they felt that the existence of these symptoms, alone, without more, justified my exclusion from any vocational assistance from them.

5. Remember that the causal connection between the adverse action and the disabilities/ protected activities has been confessed to in writing. Any attempts by the Defendants to allege another, nondiscriminatory excuse for the adverse actions should be viewed as automatically pretextual, since they have already issued written confessions to discriminatory/retaliatory animus.

6. I am, indeed, otherwise qualified to be in college. See Undisputed Fact no. 7. This is best exemplified by a line on Page 4 of **Exhibit C**: "After all, if I cannot handle being in college, how do you explain the fact that I ... um ... handled being in college?"

7. Therefore, all the essential elements of retaliation and prima facie discrimination have been satisfied. Plaintiff is otherwise qualified to be in college; he is disabled and thus qualifies for ARS funding, but the ARS denied this funding, half because of Plaintiff's statutorily protected activities, and half out of animosity towards Plaintiff's real or perceived disabilities (which, ironically, are what supposedly qualifies Plaintiff for ARS funding in the first place).

8. Even if the Defendants could prove a bona fide qualification (more on that later), that is not a defense to ADA retaliation or First Amendment retaliation, as a matter of law. Therefore, Plaintiff is entitled to have summary judgment entered in his favor on the two counts of

retaliation that were discussed in Paragraphs 42-48 of the "Complaint and Jury Demand" in this case.

9.  However, before we move onto the discrimination claim, I wold like to make a quick reference to the jaw-dropping levels of hypocrisy in the ARS's logic. They believe me to have delusional beliefs of being persecuted by the government (the key word being "delusional." In other words, not only do I have these beliefs, but they feel these beliefs are entirely unsubstantiated and are symptoms of insanity), and so they decided to retaliate by ... giving me *even more ammunition* with which to claim that I'm being persecuted! Isn't that kind of like in the summer of 2015, when Florida judge Mark Mahon -- met with accusations from local protesters that he was corrupt -- decided to punish what he considered to be slanderous statements by ... throwing freedom of speech in the dumpster?![1]

10. As for the one remaining charge -- disability discrimination -- there is one affirmative defense that the Defendants appear to have preserved: Bona fide qualification. The court cannot raise defenses on their behalf, so they are locked into that one defense.

11. However, even assuming, for the sake of argument, that I hold the burden of proof on that issue (which I don't; see Paragraphs 49-56 of the "Complaint and Jury Demand" in this case), I have nevertheless gone out and proven that I am still qualified despite having these disabilities. See Undisputed Fact No. 7 and Page 4 of **Exhibit C** ("After all, if I cannot handle being in college, how do you explain the fact that I ... um ... handled being in college?"). If a doctor says I cannot walk, I don't need a second medical opinion to prove that I can walk; I can just ... get up and start walking around! If a doctor says I am deaf, I can disprove this doctor's claims by responding orally to audio stimulation. Likewise, if a doctor says (without even examining me

---

[1] Unruh, B. (2015, July 06). "Protest Judicial Corruption, Go to jail." Retrieved from World Net Daily, http://www.wnd.com/2015/07/protestjudicial-corruption-go-to-jail/

personally) that I cannot be in school or be around others due to my medical conditions, I have disproven that claim by doing precisely the very thing he judged me incapable of doing. I do not need a second medical opinion to counter the "professional" opinion.

12.     Furthermore, you can tell from Exhibit A that the ARS is not basing its decisions on any mental health treatment they conducted on me directly, but rather, exclusively based on the reports given by St. Bernard's. This is stated most pointly in the "evaluation procedures" section of the Recommendation, where the so-called "psychological examiner" confesses that he is basing his decision exclusively on a "review of mental health treatment records from St. Bernard's Healthcare." No other source of medical information is listed in the "evaluation process" section, so these must be the only ones he considered.

13.     If anything, these records *corroborate* my story that I am, indeed, capable of being in society despite these disabilities. After all, if the doctor(s) at St. Bernard's did not believe I was capable of that, they would not have discharged me, would they? So, even to the extent a medical opinion might be powerful evidence – that it could not be refuted by such evidence as ... *doing* the thing they said I couldn't do – it still does not help them because they never even acquired a full medical opinion in their favor in the first place. No rebuttal evidence needed because there is nothing to rebut.

14.     So, as you can see, even the closest they come to offering a legitimate defense A) is not a defense as a matter of law to the retaliation, even if it could be proven, and B) to the extent it may provide a defense as a matter of law to discrimination, nevertheless fails on the merits. Therefore, I am entitled to have partial summary judgment entered in his favor, declaring the Defendants liable to me on all three causes of action being raised in this case.

15.     The only thing that should remain to be litigated is the extent of damages, as requested in

Paragraphs 61-63 of the "Complaint and Jury Demand."

## Discussion and Law

16. Summary judgment is appropriate when there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56. It is important to bear in mind that "the dispute of fact must be 'genuinne.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586-87 (1986).

17. That is important to mention here. While the Defendants may vaguely "deny all claims," the Court must remember that they had, prior to me filing this lawsuit, *confessed in writing* to holding this discriminatory/retaliatory animus against me and denying me services for that reason. They will need some impressive new evidence to negate the evidence that I have presented. See *Matsushita*, supra at 587 ("It follows from these settled principles that if the factual context renders [nonmovants'] claim implausible ... [nonmovants] must come forward with more persuasive evidence to support their claim than would otherwise be necessary").

18. To prevail on a claim of disability retaliation, I must show (1) that I engaged in a statutorily protected activity, (2) that an adverse action was taken against me by the defendants, and (3) a causal connection between the adverse action and the protected activity. See *Amir v. St. Louis University*, 184 F. 3d 1017, 1025 (8th Cir. 1999)

19. The elements of ADA retaliation have been proven by the Defendants' own written confessions. Despite the Defendants denying, without context, that the adverse action was caused by the statutorily protected activity, they have nevertheless confessed to it. It's a confession.

Since the Defendants have not moved to revoke their confession – on grounds of coercion, or any other grounds – in this case, the facts are not in dispute.

20. The Defendants have not raised any affirmative defenses to the claim of retaliation. This Court cannot raise any defenses on their behalf; see Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006); Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988); Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976). Therefore, no affirmative defenses are allowed.

21. In fact, it does not appear as if the law even *recognizes* any affirmative defenses! This is evidenced by the fact that the 8th Circuit Model Jury Instructions provide instructions to juries regarding multiple defenses to discrimination (such as Model Instructions Nos. 9.60, 9.61, and 9.62), but there does not appear to be any defenses mentioned in Title 10 of the 8th Circuit Model Jury Instructions (which deals with retaliation, whereas Title 9 deals with discrimination). As such, short of raising a novel issue of law (which the Defendants have not done and the Court cannot do on their behalf), the ban on ADA retaliation is an absolute one.

22. Because the three essential elements for retaliation are either judicially noticeable or were confessed to in writing, and no affirmative defenses are properly before the court, I am entitled to judgment as a matter of law on the claim of ADA Retaliation.

23. The claim of First Amendment Retaliation is equally straightforward. "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him … and (3) the adverse action was motivated at least in part by the exercise of the protected activity." See Revels v. Vincenz, 382 F. 3d 870, 876 (8th Cir. 2004).

24. Elements Nos. 2 & 3 are established the same way they are established under the ADA

Retaliation claim: The Defendants confessed in writing – entirely of their own free will, without being coerced – that their adverse actions were being done partially out of spite for my litigation history. Therefore, elements #2 and #3 are not in genuine dispute.

25. My litigation history, as a matter of fact, is judicially noticeable, and therefore requires no proof. It is, without a shadow of a doubt, a First Amendment right. "The right of access to the courts is indeed but one aspect of the right of petition." See Cali. Motor Trans. Co. v. Trucking Unlimited, 404 US 508 (1972).

26. Even if my litigation history is not protected by the First Amendment, it is still not Jones' place to be my judge, jury, and executioner regarding my alleged abuse of the court system. She is not a judge; she is not even a cop! It is not her place to factor *anything* into her decisions except those factors which their own bureaucratic regulations require her to consider. I could have been behind on my taxes; I could have had a taste for rap music which Amy Jones finds appalling; I could have been a pro gay activist despite being heterosexual myself; I could have been gay myself! **_It doesn't matter_**! It is simply *not her place* to decide whether my previous actions caused me to no longer deserve anything I might have otherwise been entitled to normally. By basing her decision – in whole or in part – on my exercise of First Amendment rights, she has become nothing more than a vigilante.

27. As such, Jones should be held liable to me for a count of First Amendment retaliation.

28. Last, but not least, we have the issue of disability discrimination. To prevail on a claim of disability discrimination, I must show (1) that I am either disabled, or am perceived, by the Defendants, to be disabled, (2) that I suffered some adverse action from the Defendants, and (3) that the adverse action was caused, at least in part, by the real or perceived disability.

29. The adverse action is, once again, not in dispute. See Exhibit B.

30.     The Defendants believed me to be disabled. See Exhibit A. Therefore, whether or not I am disabled[2], Essential Element No. 1 is proven beyond genuine dispute.

31.     The real or perceived disabilities are indeed the primary reason why the Defendants denied me any ARS funding. See Exhibit B. In particular, notice the last paragraph, where Amy Jones, within the course and scope of her status as an agent of the State, made the following statement:

> "After you have meet the requirements for vocational rehabilitation services and can provide documentation of treatment, stability and recommendations from providers that you are ready for training, school or work, we will reassess your vocational service needs."

32.     If the discriminatory intent was not obvious before, it is now. You can mention someone's disabilities in a conversation or letter, and that does not, in and of itself, qualify as discrimination. But here, Jones made the removal of the protected class *quid pro quo* conditional on further evaluation. At this point, there is virtually nothing the Defendants can offer to rebut the causal connection.

33.     However, unlike retaliation, there are some legally recognized affirmative defenses for disability discrimination. The one the Defendants appear to be using in this case is "bona fide qualification." The Courts cannot create new defenses for the Defendant, so that is the one they are stuck with.

34.     However, this defense fails right out of the gate. As stated in the "facts of the case" section of this brief, it is clear, from the face Exhibit A, that the medical expert who issued this recommendation did not base his findings on any of his own observations, but rather, based them exclusively on the medical records from months earlier, records that clearly deemed me competent to be in society (as evidenced by the fact that they resulted in a discharge, something

---

[2] See 42 USC § 12102(3), holding that being "regarded as" disabled carries the same protection as actually being disabled.

that should not have happened if they deemed me incompetent).

35. You can't do that. "In most cases, in order to determine whether a person handicapped ... is otherwise qualified' under [the ADA], the district court must conduct an individualized inquiry ... based on reasonable medical judgments given the state of medical knowledge." See School Bd. of Nassau Cty. v. Arline, 480 US 273 (1987). This policy is necessary to protect plaintiffs from "prejudice, stereotypes, or unfounded fear." See EEOC v. Wal-Mart Stores, Inc., 477 F. 3d 561, 571 (8th Cir. 2007).

36. Furthermore, the recommendation and subsequent denial based on said recommendation show no indication that the Defendants ever even so much as considered the possibility of reasonable accommodations. Without such considerations, the "otherwise qualified" defense is incomplete and, therefore, not properly before the Court. See Radecki v. Joura, 114 F. 3d 115, 117 (8th Cir. 1997) ("[i]f a reasonable accommodation could eliminate the risk, entities covered under [the FHA] are required to engage in such accommodation"); see also School Bd. of Nassau Cty. v. Arline, 480 US 273, 288 (1987) ("The next step in the 'otherwise-qualified' inquiry is for the court to evaluate, in light of these medical findings, whether the employer could reasonably accommodate the employee under the established standards for that inquiry").

37. Last but not least, as a novel issue of law, I argue that, any time a Defendant argues that a disability would interfere with a person's job, they should have to state the grounds thereof with reasonable specificity. I believe this is consistent with the public policy behind the ADA, as well as federal procedure. Bona fide qualification is an affirmative defense, meaning that it must be affirmatively plead, by the defendants, in order to be properly before the court. That is something I have gone out of my way to make exceptionally clear this entire motion and brief – only those defenses properly plead by the Defendants are entitled to the Court's consideration. To that end,

they must plead the grounds with reasonable specificity. The Supreme Court writes ...

> "[D]etailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face ... [T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662 (2009).

38. If that is in fact the law, the Defendants have failed to do that. Barring the fact that they never examined me personally, barring the fact that they never considered the possibility of reasonable accommodations, they still were unable to articulate any specific ways my real or perceived disabilities would interfere with my vocational efforts.

(a) They say that my alleged impulsivity may cause me to make "poor choices," but give no specific examples – hypothetical or otherwise – to support this conjecture beyond simply saying that my choices would, in some vague way, meet their personal[3] definition of "poor."

(b) They say that my depression may "interfere" with my job interviews. But they give no indication as to what kind of interference they are talking about.

(c) They say that I might be "distracting" to co-workers. However, not only do they offer no details as to what kind of distraction I might provide, they do not even attach a symptom or disability as the root cause of it! They just say that "I" would be a "source of distraction," and nothing more.

39. The list goes on and on. Altogether, they have given nine so-called "vocational implications," but not one of them had anything remotely resembling specific grounds. You can't even call it "expert testimony" when there isn't any testimony!

40. As such, the closest they have to a defense – that my disabilities make me "not otherwise

---

3 And yes, by their own admission, it is entirely their "personal" definition. In their Brief in Support of their Motion to Dismiss, the Defendants freely admit that, as a matter of state law, the determination is "solely at the discretion of the ARS." So by the Defendant's own admission, their definitions are subject entirely to their arbitrary whim.

qualified" – still fails on the merits due to them not making even a tenth of the inquiry they are legally required to make. Since the Court cannot raise any affirmative defenses on their behalf, they are left without an adequate defense.

41.     Thus, with the Defendants having confessed in writing to the *prima facie* elements of discrimination, ADA retaliation, and First Amendment retaliation, and being left without a technically complete (let alone meritorious) affirmative defense, the facts are therefore not in genuine dispute. The Defendants simply cannot show any more than a mere speculative, metaphysical doubt as to the relevant facts. Therefore, I am entitled to summary judgment in my favor on the question of liability.

### If I have these symptoms, it's still the State's fault.

42.     The Defendants used these symptoms as a (rather vague and unsubstantiated) grounds for denying me college assistance. However, even if these symptoms do in fact interfere with my vocational efforts, it is still the State's fault I have these symptoms in the first place.

43.     Why is this relevant to determining their liability? Well, imagine if someone's boss assaulted them and broke their leg, and then used the employee's inability to walk as a grounds to fire him. Granted, that could just as easily be dealt with in a common law battery action in state court, but at that point, you're just arguing technicalities. The principle of the matter still applies: The boss should, unquestionably (assuming the facts were not in dispute), be held liable as a matter of law for the plaintiff's unemployment, not *just* his doctor bills.

44.     Common law has this principle dotted around, if you know where to look. For example, provocation is sometimes a defense to battery; entrapment is generally a defense to most crimes.

45.     Thus, if it could be shown that the Defendants are personally responsible for inflicting the symptoms that they would later turn around and use as grounds for denying me any government

services, then their defense of "bona fide qualification" should be stricken in its entirety, completely independent of how much evidence they may have to support it if they were not responsible for creating the symptoms. A paragraph at the end of Federal Rule of Evidence 804(a) applies this public policy to the context of using the hearsay testimony of an unavailable witness. In contract law (at least in Arkansas), the "plaintiff's prevention of performance" is usually a defense to breach of contract; see AR Model Civil Jury Instruction #2441. The list goes on and on, and at this point, you can probably think of a few instances on your own.

46. So that begs the question ... are the actions of the State of Arkansas the primary cause of my symptoms that the ARS complains about? The answer is, unquestionably, yes.

47. See **Exhibit D**. This is a page taken out of the medical records which the ARS used to fuel its decision to deny me services. As you can clearly see, the doctor explains that the "trigger" for my symptoms was "how corrupt the government is." In other words, my depression and anxiety were a *direct* result of the multiple years of government corruption I suffered at the hands of the State of Arkansas and their crooked agents.

48. From this, you can clearly see that it is the government's fault why I have these symptoms. Even if the individual judges & prosecutors may be immune from suit for these acts, the State is not immune in this case (see Doc. 23, ¶¶ 8-16 in this case).

49. Therefore, just as a boss who cripples his employee should be liable for the loss of employment independent of any battery liability, the State in this case should be liable for denying me services based on symptoms that they created, independent of any § 1983 liability the individual agents may be immune from.

50. At this point, the only way the Defendants could possibly get out of liability is if they could argue that this medical opinion is inaccurate, and that the State is not actually at fault for

inflicting these symptoms. However, that would defeat their initial defense altogether.

51. Without this medical opinion, the Defendants have no evidence that I even have these symptoms at all, let alone that they will interfere in any non-trivial way with my vocational efforts. A medical opinion cannot be both accurate and inaccurate at the same time. This would defeat the very grounds upon which they attempt to justify their discrimination in the first place: That my symptoms supposedly make me unqualified.

52. Perhaps the Defendants may have had a leg to stand on if the symptoms, and Exhibit D, came from two different doctors. Or at the very least, to separate medical sessions. But that is not the case. It was one doctor, one hospital visit, one examination, one diagnosis, and one plan for treatment. Either this medical document is accurate or it is inaccurate. If it is inaccurate, then the Defendants cannot show that I even exhibit these symptoms in the first place, let alone whether they will interfere with my vocational efforts; they therefore lose the closest thing they get to a valid defense to liability in the current action. But if it is accurate, then it is necessarily the Defendants' fault that I even have these symptoms in the first place, and therefore, should not have the right to discriminate against me based on circumstances that they created.

### Injunctive Relief

53. Before we continue, please remember that this Court cannot raise claims or defenses on the Defendants' behalf.

54. While the extent of damages may still require a trial by jury, the injunctive relief requested in Paragraphs 59-60 of the "Complaint and Jury Demand" are usually awarded by the court, not the jury. As such, if the Defendants cannot show a genuine dispute of material fact in this motion, the Court should go ahead and award injunctive relief to me.

55. First, I request an order that the Defendants pay for all of my college education costs in

the first instance. This includes any extra funds, beyond the default $5,300, that are needed for me to pay for college without having to take out any more loans, since that was a grounds I alleged for wanting the extenuating circumstances funds in the first place.

56. I am not merely requesting an injunction for the ARS to re-evaluate my application without the discrimination. If that were the case, the ARS would almost certainly reject me again, even if they have to manufacture some excuse out of thin air. Rather, I ask that they simply be ordered to fund my education, straight away.

57. Public policy supports the limitation described in Paragraph 44 of this brief. For example, in the case of *Amir v. St. Louis University*, 184 F. 3d 1017, 1025 (8th Cir. 1999), the plaintiff – upon showing that his teacher flunked him out of retaliation – obtained an injunction against the school, not to provide him with free enrollment with another teacher so he could get passed under his own power, but rather, to simply pass him. No further grades, no further evaluation. He's passed, the end. Hand him his degree.

58. Other public policy can be found by looking at cases of employment discrimination. When an employer has passed over the plaintiff's application for a discriminatory reason, courts do not order the defendant to re-evaluate the plaintiff's resume, but rather, to just hire him automatically. Since the defendants in these cases have, by that point, proven themselves unworthy of being trusted to evaluate the plaintiff fairly, their discretion is revoked.

59. That is what I seek in this case. I ask that the Court to order the Defendants to *approve* my petition – not simply re-evaluate it – and pay for all of my college expenses in the first instance.

60. In addition, I request an injunction against the entire State of Arkansas, to never again retaliate against me. No matter what program, no matter how much they feel I "deserve" this

retaliation, my statutorily protected activities should never, ever again, serve as even so much as a contributing factor in anything they do, no matter how big or small.

61.     To break this requested injunction, it should not be required that the adverse action be motivated solely, or even primarily, by my statutorily protected activities. The injunction I'm requesting should state that, if my statutorily protected activities are even so much as a *contributing factor* in anything they do, the State of Arkansas should be held in contempt of court for violating the injunction.

62.     Additionally, this injunction should cover all acts and omissions with no inherent motivation behind them. If there is no pretextual excuse given, then there should be no need for me to show evidence that it is pretextual. Since they have already proven themselves untrustworthy to act without retaliatory animus, they should be presumed to be acting according to this animus if they provide nothing better.

## CONCLUSION

63.     This is cut and dry. It is rare for defendants in discrimination cases to confess in writing to discrimination; normally, the plaintiff is usually required to show evidence of pretext, but not here. The Defendants have openly confessed, in writing and without coercion, to holding a vendetta against me because of my litigation history, denying me services for that reason alone, and assuming – without any evidence whatsoever – that my disabilities would interfere with my relations with people, even though the medical records they relied on clearly contained the medical opinion that I was indeed capable. They never even tried to hide how lazy they were being in evaluating my abilities, and they never bothered to hide their discriminatory and retaliatory intent. No pretext necessary; everything has been admitted to. Since the Court cannot raises defenses on the parties' behalf, they are left without a defense.

64.     Last but not least, the Defendants are, unquestionably (unless they are prepared to abandon the very symptoms which they use to justify their discrimination in the first place) at fault for causing me these supposed symptoms in the first place. Thus, even if the symptoms could be proven to be a hindrance to my vocational efforts, they should be liable to me because it's their fault it even comes to that in the first place.

65.     Wherefore, premises considered, I respectfully request that this Court grant this motion, issue the injunctions requested in it, award costs incurred, and any other relief to which I may be entitled.

66.     So requested on this, the 19th day of December, 2016.

*(signature)*

David Stebbins
123 W. Ridge St., APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com