UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                  PLAINTIFF

VS.                         CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES               DEFENDANTS

## MOTION FOR LEAVE TO AMEND PLEADINGS AND FOR JOINDER OF PARTIES

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion

for Leave to Amend Pleadings and for The Arkansas Department of Higher Education, as well as

North Arkansas College, Tovanda Brown, and Donna Wood in their personal and official

capacities, to be added as parties in this litigation.

1.      North Arkansas College has similarly retaliated against me by refusing to admit me as a

student for the Fall 2017 semester because of my statutorily protected activites, just like the ARS

has done.  As such, I wish to sue the State of Arkansas (who is already a defendant in this case;

no joinder necessary), the Arkansas Department of Higher Education, and North Arkansas

College, for retaliation in violation of Section 503 of the Americans with Disabilities Act, as well

as in violation of the Rehabilitation Act.

2.      I also wish to bring Section 1983 claims against Tovanda Brown and Donna Wood in

their personal capacities for First Amendment Retaliation.

### Timing of this Complaint

3.      This case is over a year old. Normally, it would not be approppriate to add new parties at

such a late stage. However, the Defendants filed a Motion to Dismiss that took about 9 months to

dispose of. A new scheduling order will have to be set (see the recently-filed "Motion to Reset

Scheduling Order"). This means that there still enoguh time left in the litigation to add a new

party.

## Original Complaint and Jury Demand

1.      For brevity's sake, the contents of Paragraphs 1-11 of the original "Complaint and Jury

Demand" in this case (Doc. 2 in the above-styled action) are hereby incorporated by reference.

That includes the paragraphs regarding jurisdiction and venue, the lack of sovereign immunity,

and establishing my statutorily protected activities, are hereby incorporated by reference.

2.      However, there is some additional clarification I feel I need to provide. In addition to the

Americans with Disabilities Act, I also wish to hold the new defendants liable under the

Rehabilitation Act. This completely changes the landscape of any 11th Amendment immunity that

they may or may not have under Tennessee v. Lane or U.S. v. Georgia. Because only those who

receive federal funding are bound by the Rehabilitation Act in the first place, that means that 11th

Amendment immunity is freely and voluntarily waived. See Doe v. Nebraska, 345 F. 3d 593 (8th

Cir. 2003). This renders any and all assertions of sovereign immunity entirely moot, and any

attempts to claim such immunity are necessarily frivolous.

3.      The Court can take judicial notice that North Arkansas College receives federal funding

for its operations through the FAFSA program, which includes such funding as Pell Grants and

Work-Study to allow students to pay for their enrollment at that college. Thus, this Court can

take judicial notice that they are bound by the Rehabilitation Act and thus have voluntarily

waived their 11th Amendment Immunity.

## ADVERSE ACTIONS

4.      Because this case was taking so long to get underway, and because there was no

guarantee that I would necessarily win, I decided to re-enroll at North Arkansas College and

study for an associates degree, which would be my backup plan.

5.      North Arkansas College admits on their website that those who graduate from their associates' degree in information technology earn an average salary of $77,502 per year.

6.      Because I was a returning student at NAC, I expected that I could just re-enroll in classes. However, they insisted that I have to submit an entirely new application. They would not proceed with my re-enrollment until I submitted a new, de novo application. Remember that, because although it appears benign at first glance, it will soon become crucial in establishing a causal connection.

7.      I submitted my full application on July 10, 2017. The application took a long tme to get process, so on July 19, 2017, I sent an email to Randy Esters, the President of NAC, seeking to lodge a complaint against Tovanda Brown, the Dean of Students who processed my application. At 2:19PM, Dr. Esters sent a response email to me, but also CC'd Tovanda Brown, thereby notifying her that she was getting a complaint filed against her.

8.      At 3:27PM that day (a mere 68 minutes after she was informed that I was filing a complaint against her), I received a notice that the application for re-admission was denied. Their official reason for denying my application for readmission was that I had been suspended from the University of Arkansas. I was only suspended for a single semester, but that did not stop Tovanda Brown from denying my application for re-admission.

9.      I immediately wrote an email to Tovanda Brown explaining that I could tell she was only doing this out of spite for my statutorily protected activities. I demanded that she reverse this decision "or else." Please note that this is *all* I said. I never threatened to inflict any kind of physical harm onto her in any way, shape, or form.

10.     I also called her office and demanded to know to file an administrative appeal of her decision. She stated that was no system in place to administratively appeal her rejection.

11.    This ended up being a bald-faced lie, because the next day, on July 20, 2017, I received an email from Donna Wood, the Vice President of Learning, providing me with a form to fill out to appeal to the "Institutional Standards and Appeals Committee."

12.    However, she also stated that, because of the "threats" I made against Tovanda Brown, I was no longer to be allowed on NAC campus. She openly admitted that the only quote-unquote "threats" I made were the phrase "or else." But she says that, because that was *considered* a "threat," they were going to treat it as such.

## CAUSAL CONNECTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT

13.    Admittedly, this is a bit trickier to pin down. Unlike the ARS, these defendants have not confessed in writing to denying my application for re-enrollment because of my statutorily protected activities. However, that alone is not an absolute bar to my case. It is well-established, black letter law that a person can still recover on a claim of retaliation and/or discrimination if he can show evidence that the officially-given reason for the adverse action is "pretextual;" that is … a cover up for a retaliatory motive. See *Amir v. St. Louis University*, 184 F. 3d 1017, 1026 (8th Cir. 1999) ("Once the defendant establishes a legitimate nondiscriminatory reason for the adverse action, the burden of production then shifts back to the plaintiff to show that the defendant's reason is a pretext for discrimination").

14.    So here is my initial evidence that their officially-given reason is pretextual. It is important to note that this is only my *initial* evidence. As Magistrate Judge J. Thomas Ray has acknowledged, a complaint does not need to show enough evidence to conclusively prove one's case; as long it alleges "only enough facts to state a claim to relief that is plausible on its face,"[1] I am entitled to my day in court. "[A] complaint should not be dismissed for failure to state a

---

1    See Doc. 55 in the above-styled action, Page 3, Footnote No. 4.

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007).

15.     Also remember that, by Magistrate Judge J. Thomas Ray's own admission, "causation is generally a question for the fact-finder." See Doc. 55, Page 18, Footnote No. 12.

16.     More evidence will likely surface after these defendants have been summoned into court and I am able to obtain verbatim transcripts and/or audio recordings of their meetings.

**Evidence No. 1: My previous enrollment at NAC despite the UA suspension.**

17.     It is important to note that I originally enrolled at North Arkansas College in the Fall of 2008. I continued to study there continuously until the Summer semester of 2010. My enrollment back then was approved without issue. They knew that I had been suspended from the University of Arkansas but also noted that the suspension period had ended, and so they agreed to allow me to enroll.

18.     So my first piece of evidence that their officially-given reason is pretextual is … because they are only just now starting to care about it. Something must have happened *in between* my last enrollment and my current attempt at enrollment.

19.     My statutorily protected activities are one thing that happened since then[2], and it is usually the thing that most government officers tend to be the most upset over and have the most disdain against me for. Thus, whenever their officially-given reasons make no logical sense, that is usually what they are retaliating against.

**Evidence No. 2: The lack of disciplinary history at NAC**

20.     I continued to study at North Arkansas College from the Fall of 2008 to the Summer of 2010, never receiving any disciplinary sanctions against them. I have vague memories of, at one

---

2   My first ever lawsuti, pro se or otherwise, was filed in late summer of 2010.

time, being called into the Dean's office, but nothing ever came of it. I do not even remember

what the altercation was about. It is a true testament to my behavior at NAC during those years;

even when I walked a dangerously thin line with the rules there, I never fully *crossed* them.

21.     This is my second piece of evidence that my previous suspension from UA is not the real

reason they have denied my admission. My time at NAC before my statutorily protected

activities clearly shows the reasons behind the UA suspension were almost certainly a fluke.

NAC has these records (or rather, lack of records) proving that I was able to study at NAC

without incident, so they should know better than anybody else that my UA suspension was a

fluke. Yet they still use the UA suspension to deny me re-enrollment as if they were afraid of me

shooting the place up, when they should know better that I am not like that.

22.     When an officially-given reason does not make sense, it is usually pretextual.

**Evidence No. 3: Donna Largent's obliviousness to the application requirements.**

23.     Remember earlier when I said that the officers of North Arkansas College *insisted* that I

re-do my admissions application? Here is where it becomes evidence on pretext.

24.     I had previously sent an email to the email address of admissions@northark.edu, asking

what I needed to do to be a returning student. I initially received a response from a person named

Joanna Keys, who stated I would have to re-do the application … which I proceeded to do as

described above.

25.     On July 17, 2017, I received an email from a NAC Admissions Officer by the name of

Donna Largent. She had been out of the office the preceding week, meaning she was not privy to

what everyone else at the office had agreed to do with me. She apparently did not know that I

was being forced to re-do the application.

26.     Her response email stated, in pertinent part, the following:

"If you were a student here before, then we have all the necessary documentation needed to enroll. I checked and we also have transcripts from University of Arkansas on file. All you will need to do to enroll is make an appointment with an Advisor to pick your classes."

27.    This is, in my opinion, the most blatant evidence that I was singled out for special treatment. If returning students were routinely made to fill out their applications de novo, don't you think an established agent of the admissions office like Donna Largent would be privy to such a regular policy? Her obliviousness to this is evidence that this is not normally how they do things ... meaning I am being singled out.

28.    The Court is politely reminded that I am not required to present the most compelling evidence at this stage. I am only required to state a claim for relief that is plausible on its face. This complaint should only be dismissed at this stage if it appears beyond doubt that I cannot prove my case. These factual allegations are sufficient to establish a "plausible" claim of retaliation, and that is all I need.

## FIRST AMENDMENT RETALITION

29.    I also wish to sue Tovanda Brown and Donna Wood in their personal and official capacities for First Amendment Retaliation.

### Tovanda Brown's 1st Amendment Retaliation:
### The time between the complaint and the denial

30.    Remember that I stated that the denial of my application was processed only 68 minutes after she was notified that I was filing a complaint against her. This is evidence that she engaged in an act of First Amendment Retaliation by denying my application, at least in part, *because* of the complaint I filed against her. In Helvey v. City of Maplewood, 154 F. 3d 841 (8th Cir. 1998), the 8th Circuit Court of Appeals argued that there was a plausible claim for retaliation when there was a "short time between statements and negative treatment by [defendant]," particularly when

placed alongside "previous favorable performance evaluations." See *id* at 844.

31.     As I mentioned earlier, I spent several years at NAC without nay disciplinary issues.

Well, I also received favorable evaluations from my teachers. In addition to making good grades,

I also received regular praise from my teachers for my involvement in the class. For example, in

addition to the praise I received from a former math teacher stating that I "was a very successful

mathematics1 student," with an "innate sense of logic, order, and patterns,"[3] I also received

praise over a private email from an English Composition teacher stating, in pertinent part, the

following:

> "I'm so glad to see you have already completed your homework for tomorrow ... I
> can tell you that based on your awesome class participation today and your
> thorough answers to the questions we did in class, you should be fine. You are
> doing what I expect."

32.     This unquestionably satisfies the criterion of "previous favorable performance

evaluations."

33.     Thus, I have thoroughly set forth enough factual allegations to survive "failure to state a

claim," many times over.

**Donna Wood's 1ˢᵗ Amendment Retaliation: Written Confession of Motives**

34.     I also wish to sue Donna Wood in her personal and official capacity for the retaliatory

action of banning me from campus for issuing what she considers "threats" to Tovanda Brown.

Unlike Brown herself, Wood admits in writing that she was doing this in response to the email I

sent to Brown demanding that her retaliatory denial of re-enrollment be corrected. This means

that I do not have to prove any causal connection.

35.     For any sort of content-based speech restriction to be constitutional, it must pass strict

scrutiny. This means that a content-based speech restriction is constitutional "only if it furthers

---

3   I mentioned this letter in Paragraph 16 of the original "Complaint and Jury Demand" in this case. The Magistrate
Judge even referenced this letter in his Recommended Partial Disposition.

an important or substantial governmental interest unrelated to the suppression of expression, and
the limitation is no greater than necessary or essential to protect that interest." See Turner v.
Safley, 482 US 78, 83 (1987).

36.     More importantly, it is well established, black letter law that, when restricting a citizen's
speech, the citizen does not hold the burden of proving that the law is unconstitutional, but
rather, the government holds the burden of proving it is constitutional. See United States v.
Playboy Entertainment Group, Inc., 529 US 803, 816 (2002) ("When the Government restricts
speech, the Government bears the burden of proving the constitutionality of its actions"). See
also Greater New Orleans Broadcasting Assn., Inc. v. United States, 527 U. S. 173, 183 (1999)
("[T]he Government bears the burden of identifying a substantial interest and justifying the
challenged restriction"). See also Reno, 521 U. S., at 879 ("The breadth of this content-based
restriction of speech imposes an especially heavy burden on the Government to explain why a
less restrictive provision would not be as effective . . ."). See also Edenfield v. Fane, 507 U. S.
761, 770-771 (1993) ("[A] governmental body seeking to sustain a restriction on commercial
speech must demonstrate that the harms it recites are real and that its restriction will in fact
alleviate them to a material degree"). See also Board of Trustees of State Univ. of N. Y. v. Fox,
492 U. S. 469, 480 (1989) ("[T]he State bears the burden of justifying its restrictions . . ."). See
also Tinker v. Des Moines Independent Community School Dist., 393 U. S. 503, 509 (1969) ("In
order for the State . . . to justify prohibition of a particular expression of opinion, it must be able
to show that its action was caused by something more than a mere desire to avoid the discomfort
and unpleasantness that always accompany an unpopular viewpoint").

37.     So the question now becomes … did Donna Wood in this case have the right to punish
my speech? The answer is, unquestionably, no.

38.     Threats are indeed a well-established exception to free speech. See R. A. V. v. City of St. Paul, supra, at 388 ("[T]hreats of violence are outside the First Amendment"). However, I think it goes without saying that a government official cannot simply declare whatever they want to be a threat and use that as a catch-all excuse to ban any and all speech that they disagree with. A government official cannot simply say "The way you picked up that coffee cup was very threatening. You are banned from campus." I believe that goes without saying.

39.     To not be covered under the First Amendment, a statement must be a "true threat." In other words, the First Amendment prohibits only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." See Virginia v. Black, 538 US 343, 359 (2003).

40.     In the current scenario, I never threatened to do anything unlawful. I hardly even threatened to anything *period*. In order to lose my First Amendment protection, I must threaten unlawful violent action, according to Virginia v. Black.

41.     Furthermore, I have every right to demand that an adverse action which I reasonably believe to be a violation of my rights be corrected. Such a demand would fit just as neatly under the First Amendment Right to Petition as the right to free speech! Simply attaching the two-word phrase "or else" at the end, without any additional context, does not alone, by itself, take away my free speech protection.

42.     As a result, Donna Wood unquestionably violated my right to free speech.

### INJURIES, DAMAGES, AND INJUNCTIVE RELIEF

43.     In light of these violations of my rights, I seek the following relief:

### ADA Retaliation

44.     First of all, North Arkansas College, and their parent company the Arkansas Department

of Higher Education, should be jointly liable to me loss of wages. Just like with the ARS, their

refusal to approve me has delayed my entry into the workforce.

45.    I therefore seek an injunction against North Arkansas College and the Arkansas

Department of Higher Education to reverse their decision to not allow me to re-enroll. I also seek

an injunction against these defendants to permanently and perpetually cease and desist any and

all retaliation against me for my statutorily protected activities.

46.    Also, as I stated before, the average annual wage for graduates from their Information

Technology degree is $77,502 per year. Therefore, I seek damages of that much money each year

until the injunctions requested in Paragraph 44 are complied with.

47.    I also ask for punitive damages of $310,008 per year, or four (4) times the amount of

compensatory damages. Although Title III of the Americans with Disabilities Act expressly

forbids the recovery of punitive damages, Title II does nto prohibit this. In fact, it appears to be

the complete opposite; Sec. 203 of the Americans with Disabilities Act – which governs the

remedies and penalties for a violation of Title II thereof – states that the remedies and penalties

are the same as those for employment discrimination under the Rehabilitation Act. Employment

discrimination allows the recovery of punitive damages, and therefore, they are also recoverable

in this case.

### Tovanda Brown's First Amendment Retaliation

48.    I have sued Tovanda Brown in both her personal and official capacities. Therefore, I

should be eligible to receive both damages and injunctive relief from her.

49.    First, I request injunctions identical to the ones I requested in Paragraph 44 in this

Amendment Complaint. Just apply those same injunctions to her as well as NAC and AR

Department of Higher Education.

50.    I also request compensatory damages of $77,502 per year, as she effectively caused me the same injury as noted above.

51.    In addition, I request punitive damages of $310,008 per year. This is four (4) times the compensatory damages I requested against her. I am allowed to recover these damages

### Donna Wood Retaliation

52.    Unlike the other two, Donna Wood's act of First Amendment retaliation did not cost me several years of employment. However, that does not mean that her actions were harmless. An infringement upon a citizen's First Amendment rights is an injury unto itself, especially when the retaliation is a restriction on one's freedom of movement (such my current inability to set foot on NAC campus without being arrested on the spot). See Trobaugh v. Hall, 176 F. 3d 1087 (8thCir. 1999) (reversing the District Court's decision to award nominal damages, and also instructing the District Court to consider an award of punitive damages).

53.    I therefore request compensatory damages of $100 for each day that this ban from campus is not lifted. These damages should begin to pile on July 20, 2017, the day this ban was implemented.

54.    I also request punitive damages of $400 per day that this ban is not lifted. That is four times the compensatory damages, and should be designed to punish Wood for completely ignoring my First Amendment rights.

### JURY DEMAND

55.    I demand a jury trial to try any disputed facts.

### OFFER OF GOOD FAITH

56.    In the Western District of Arkansas, I have had filing restrictions placed on me. Originally, I have been ordered to post a $100 refundable bond any time I wished to file a new

lawsuit. However, that was later reduced to $50.

57.     This Court may believe that my attempt at filing in the Eastern District is an attempt to get around that filing restriction. I assure you that it is not. The State of Arkansas and Arkansas Department of Higher Education are both headquartered in Little Rock. Thus, Little Rock is just as good of a choice to file this complaint as Harrison. I have my reasons for filing here instead of there. Remember that a plaintiff's choice of venue is entitled deference.

58.     Here is my evidence that I am not merely attempting to circumvent that restriction:

59.     For starters, the three-month time limit for me to file a new lawsuit, set forth by that order, has long since expired. So I certainly cannot possibly be filing here to try and get around that limitation.

60.     So the only limitation I could possibly be trying to avoid is the partial, refundable filing fee. As a sign of good will, and to prove that I am not merely trying to circumvent that restriction, I would offer to pay that $50 filing fee into this Court. I would humbly ask that this partial filing fee be subject to the same conditions as in the Western District (namely … that it would be refunded to me if my complaint passed initial scrutiny from the courts pursuant to 28 USC § 1915(e)(2)(B)).

61.     This Court need only say the word, and this partial filing fee will be promptly tendered to the Clerk of this Court.

## CONCLUSION

62.     This is absolutely ridiculous. The State of Arkansas wants me to stop filing so many pro se lawsuits, and I would love to be able to stop doing this too! However, I cannot even so much as attempt to rebuild my life by enrolling in college without having to sue everyone at every step of the way just to get them to lay off the retaliation! I would love to get my degree, get a job, and

start contributing to society! But the government won't let me! I keep filing these lawsuits

because it's the only way I can ever move on with life!

63.     Wherefore, premises considered, I respectfully request that the aforementioned

defendants and claims be added to the above-styled action, and that all relief requested during

Paragraphs 43-54 of this Amended Complaint be awarded to me.

So requested on this, the 2nd day of August, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com