IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS     PLAINTIFF

v.     CASE NO. 4:16CV545 JM

STATE OF ARKANSAS, ARKANSAS     DEFENDANTS
REHABILITATION SERVICES, AND
AMY JONES

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

COME NOW Defendants State of Arkansas, Arkansas Rehabilitation Services, and Amy Jones, by and through their attorneys, Attorney General Leslie Rutledge and Senior Assistant Attorney General Christine A. Cryer, and for their Statement of Undisputed Material Facts, state as follows:

1. On December 1, 2015, Plaintiff David Stebbins entered the Harrison office of Arkansas Rehabilitation Services and met with ARS Counselor Kevin Cook. **ARS 1**

2. During his meeting, Stebbins completed an application for services, in which he stated he was seeking assistance with attending Arkansas Tech in Russellville. **ARS 3**

3. The first paragraph of the Application reads as follows: "I understand that I am responsible to help the Arkansas Rehabilitation Services (ARS) to determine my eligibility within 60 days of my application." **ARS 7**

4.  Further, it states that: "When ARS receives the information about me ARS will review it to determine if I am eligible for vocational rehabilitation services." **ARS 7**

5.  The application completed by Stebbins states that "When ARS receives the information about me ARS will review it to determine if I am eligible for vocational rehabilitation services." **ARS 7**

6.  The application further documents the steps available to the applicant should he disagree with any decision made by ARS. **ARS 7**

7.  Stebbins signed his application. **ARS 8**

8.  Counselor Kevin Cook documented his meeting with Stebbins that day. He documented the following:

    - He told me I was against him as soon as he set down.
    - He reported attending U of A Fayetteville but said he was kicked out.
    - Client was not cooperative so not able to discuss his grades and obtaining copies.
    - He states that his family is against him and everyone he meets is out to get him. "The whole world hates me" was another comment.
    - Client said he needs assistant with paying for college.
    - Counselor told him we can assist with funding but he must apply for pell grants, FASFA, loans, etc. to pay his part. **ARS 42 - 44**

9.  Mr. Cook noted that "additional medical records would be needed and were requested as something else seems to be going on with Mr. Stebbins." **ARS 44**

10. Stebbins was provided a Professional Disclosure Form. It states that "the purpose of public vocational rehabilitation is to assist eligible persons with disabilities in achieving an employment outcome. This outcome may be returning to your former job or obtaining a job in a new field." Further it states that "you and

your counselor will work together to find a job that you are physically and mentally able to do that is as close as possible to your vocational goals." **ARS 24**

11. It also states that "if you are eligible for vocational rehabilitation services, you and your RC (rehabilitation counselor) will jointly develop an Individual Plan of Employment (IPE). **ARS 25** Also, it state that "it is important to remember that the goal of the RC is to help you secure a satisfactory job and that services must be related to that goal." (*Id.*)

12. Stebbins brought with him to his interview 13 pages of medical records from St. Bernard's in Jonesboro dated April 2015. **ARS 45 – 57**

13. Stebbins also signed a release for medical records and provided two physician's names. **ARS 30**

14. ARS faxed records requests to Dr. Victor Chu and Dr. Robert Frenal's offices on 12/01/15. **ARS 31 & ARS 34**

15. On December 2, 2015, Dr. Robert Frenal/Vantage Point responded to the records request stating they had no records on this patient. **ARS 36**

16. On December 3, 2015, Stebbins emailed his counselor at 10:50 a.m., asking about the status of his application. **ARS 59**

17. On December 4, 2015, CRC Lorraine Miller, spoke with Stebbins via telephone. Stebbins was quite agitated, and wanted to speak with a supervisor. Ms. Miller was told by the person answering the phone that he had been "yelling" at her. Ms. Miller picked up the phone, Mr. Stebbins asked her to call him back. Ms. Miller did so. **ARS 62 - 63**

18. Upon her return call, Stebbins sound very, very anxious, was breathing hard, and talking very fast. At one point, Ms. Miller counseled him to try to calm himself down. Stebbins told her what he was asking ARS to do for him. Ms. Miller inquired about Stebbins taking some online courses but he did not think there were many he could take. She told him that she hardly ever asked for an exception to the funding, and that requests aren't always approved. He wanted to speak with a different counselor. **ARS 62 - 63**

19. That same day, Stebbins emailed his counselor at 5:50 p.m. He appeared to be inquiring regarding his records. Stebbins wanted to know if Cook could subpoena the records. **ARS 60**

20. On Monday, December 7, 2015, Mr. Cook responded to Stebbins' email and reminded Stebbins he had to allow 60 days for them to get the medical records from the providers. **ARS 60**

21. On Tuesday, December 8, 2015, Stebbins called ARS around 2:20 p.m., and spoke with Administrative Assistant Maghee. Stebbins was very rude and yelling. He was insisting on talking with his counselor. The Phone counselor transferred his call to another person b/c Stebbins did not want to talk with her. **ARS 64**

22. Stebbins was transferred to counselor Caterina Matheny. Ms. Matheny informed Stebbins that they had not yet received the medical records. Stebbins wanted to know who had not provided his information. **ARS 65**

23. Stebbins called back at 3:20 p.m. yelling in a high voice and would not calm down. Stebbins reported that he had tried calling Crossroads Medical Clinic to follow up on ARS' records request, but they hung up on him. Ms. Matheny forwarded the call to Alana Walls to help with the client. **ARS 65**

24. Stebbins was transferred to Alana Walls at 3:25 p.m. He sounded short of breath and emotionally upset. He was questioning why Cook had not made any progress in his case. Ms. Walls explained to Stebbins that ARS needed documentation from a doctor establishing that he has a disability in order to determine eligibility. Stebbins became verbally abusive. Stebbins asked why the information he had already supplied was not enough. He began to yell and she told him she was hanging up. **ARS 66**

25. Ms. Walls called Amy Jones and told her of the conversation. **ARS 66**

26. Amy Jones attempted to contact Stebbins via phone, but there was no answer. **ARS 67**

27. Alana Walls reported to Amy Jones that she was concerned for her safety and the safety of her staff in Harrison. **ARS 67**

28. Ms. Jones was later able to reach Stebbins via telephone. Stebbins stated that he was angry at the government and that explained a bit of why he was mad at ARS – because they are the government. Ms. Jones explained the process for eligibility and plan development to Stebbins again. **ARS 67**

29. Ms. Jones asked Stebbins about his past college experience. Stebbins reported that he had been thrown out of the U of A for making threats in 2007.

Stebbins reported that he then attended the North Arkansas College and that his provided him accommodations by pulling him aside to explain his behavior. **ARS 67 - 68**

30. Stebbins was unable to complete most of his semesters. **ARS 67-68.**

31. Stebbins reported he'd been seen by St. Bernard's in April 2015, but had received no follow up services since that time. Ms. Jones inquired about his discharge report and recommendations. He reported that he'd been told to go somewhere for counseling, and did one time, but that was it. **ARS 67-68.**

32. Ms. Jones expressed her concern for Stebbins' well-being and mental stability based on the conversation they were having. This was based on throughout their conversation, Stebbins maintained an escalated voice, rapid breathing, and extreme agitation. **ARS 67-68.**

33. Ms. Jones asked about Stebbins' family or any support system he might have so she could contact them regarding her concerns. Stebbins said he hated his family. He said he cannot control his anger, especially when he cannot get any answers. **ARS 67-68.**

34. Ms. Jones explained their system and answered all of Stebbins' questions. **ARS 67-68.**

35. Ms. Jones told him she'd speak with his counselor and the psychological examiner and would try to call him back tomorrow. **ARS 67-68.**

36. Ms. Jones spoke with Leslie Johnson, a Licensed Psychological Examiner. Ms. Johnson said she did not think Stebbins needed to be scheduled in any office at this time due to his instability. **ARS 68**

37. Ms. Jones called Carl Daughtery, her supervisor, and explained the situation to him. Mr. Daughtery said they needed to contact the Harrison Police Department and let them know of the threatening calls and threatening behavior being exhibited by Stebbins. He also said they needed to call a psychiatric facility for mandated reporting regarding their concern for Stebbins' well-being. **ARS 68**

38. Ms. Jones called the Harrison ARS Office and told them to keep doors from the lobby to the office area locked at all times. If Stebbins were to show up, they were to call the police. Ms. Jones also instructed them that if Stebbins were to call the Harrison ARS Office, he was to be directed to her and that she would be handling his case going forward. **ARS 68**

39. A report was made to the Harrison Police Department. ARS staff did not ask the police go out and do anything, but they did want the incidents documented. **ARS 70**

40. On <u>December 9, 2015</u>, Stebbins emailed Mr. Cook to inquire about any updates on his case. **ARS 60**

41. That same day, Ms. Jones performed a review of the partial hospital records that Stebbins had provided during his December 1st interview. In the records, the doctor reported that Stebbins did not and would not provide them with a medical history. The records further stated that Stebbins was arrested for

domestic battery against his father.  Stebbins reported to the doctor that he was thrown out of the U of A for making threats. Ms. Jones read court documents and found very disturbing facts about the case.  Stebbins made threats to numerous employees at the U of A to the point of terroristic threatening. **ARS 71**

42. Based on Stebbins' actions/inappropriate communication with ARS staff, Ms. Jones did not believe that Stebbins was mentally stable enough at that time for a Vocational Rehabilitation program.  She also felt that Stebbins was a physical threat to her staff and did not feel comfortable in setting him up for a Rehabilitation Initial Diagnosis and Assessment ((RIDAC) or sending him to anyone's office. **ARS 71**

43. Ms. Jones initially made the decision on December 9, 2015, to close Stebbins' case that day; however, she decided to reconsider that decision. **ARS 71**

44. Ms. Jones called Stebbins to speak with him about her records review findings.  She explained that she had reviewed his medical documentation again and that she wanted to clarify where the remainder of his most recent medical/mental health visits were (post April 2015). Ms. Jones asked Stebbins where he was treated/transferred to from the ER in Jonesboro.  Stebbins said that he was treated for 1-2 weeks at St. Bernard's Behavior Clinic.  He said he was released from their clinic on April 30th. Ms. Jones explained that she would like to review those records because she believed they would have his latest psychiatric evaluation on file.  She also wanted to see what his discharge papers recommended for further or ongoing treatment. **ARS 72**

8

45.     Ms. Jones told Stebbins that she would request all of his records from St. Bernard's and would notify him once she had the records. **ARS 72**

46.     At approximately 11:45 a.m. that day, Vantage Point called and reported that Stebbins had called their office – was very rude and hateful - demanding they send their records to ARS. **ARS 76**

47.     Ms. Walls called the Northwest Arkansas Regional Hospital and asked to speak with someone in the Psychiatric Unit. She was informed they were not open for business, and referred her to Health Resources of Arkansas in Harrison. Ms. Walls relayed the information to Renae at HRA, and then faxed the information ARS had received from Stebbins. **ARS 77**

48.     Information was relayed in an effort to protect Stebbins from self-harm or in the event there may have been a threat of harm to office personnel. **ARS 77**

49.     On <u>December 11, 2015</u>, Stebbins emailed both Mr. Cook and Ms. Jones a copy of his college transcript from NAC. **ARS 83**

50.     Ms. Jones asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on Stebbins. Ms. Jones wanted Ms. Johnson's input in determining the feasibility of VR (vocational Rehabilitation) services/training for Stebbins. **ARS 84 - 86**

51.     After her review, Ms. Johnson provided Ms. Jones with her conclusions and recommendations. In Ms. Johnson's opinion, as of December 2015, Stebbins was not appropriate for vocational rehabilitation services. **ARS 84 - 86**

52. Ms. Johnson strongly recommended a referral to a local mental healthcare provider for Stebbins. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues. **ARS 84 - 86**

53. Further, in order for Stebbins to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work. **ARS 85 - 86**

54. On December 16, 2015, Ms. Jones made the determination that Stebbins was not feasible for VR services at that time. Ms. Jones based her decision on several factors: (a) his behavior to both Fayetteville and Harrison staff was hostile at every encounter; (b) Stebbins did not want to cooperate in giving his medical information but relented that they could send a request for records to his last place of treatment – St. Bernard's Behavioral Unit; and (c) a Licensed Psychological Examiner reviewed his records and concluded that Stebbins was not feasible for VR services at that time. **ARS 121**

55. That same day, Ms. Jones wrote to Stebbins and informed him of her decision. Ms. Jones informed him of his right to request an administrative review of the decision, as well as an opportunity for a fair hearing. **ARS 122 – 123**.

56. Ms. Jones wrote Stebbins a second letter on December 17, 2015. She again explained her reasoning for determining him to be ineligible for services at that time. **ARS 130**

57. Ms. Jones did not deny David Stebbins vocational rehabilitation due to his previous filings of civil rights lawsuits. (**Ex. C**)

58. Ms. Jones did not base her determination that Stebbins was ineligible for services on his prior civil litigation. (**Ex. C**)

59. Stebbins did not "automatically qualify" for ARS funding. (**Ex. C**)

60. For all individuals applying for services, ARS will conduct an assessment to determine eligibility. There is a "presumptive eligibility" for SSD/SSI recipients, which Stebbins was. The presumption means that the process will not be delayed for the gathering medical records. The "presumption" does not mean that the individual does not still have to be assessed, because the assessment will still occur. (**DE 79, pp. 19 – 22; and Ex. C**)

61. Stebbins' assessment (history of his interaction with ARS staff members, past records and history, and his refusal for treatment) made him ineligible for services in December 2015. (**Ex. C**)

62. Stebbins 2017 suggestion that he could have attended school while simultaneously receiving counseling was not a "reasonable accommodation" that would have been made. (**Ex. C**)

63. Stebbins has not stopped filing lawsuits since being told he was ineligible for benefits in December 2015. (**Ex. E**)

64. In 2016, Stebbins proceeded with his pro se appeal in *David A. Stebbins v. David D. Stebbins* in the Arkansas Court of Appeals, CV-16-16. **(Ex. E)**

65. Stebbins filed various motions and briefs over the course of 15 months in the *Stebbins v. Stebbins* appeal. **(Ex. E)**

66. On September 2, 2016, Stebbins filed a Complaint with jury demand in *David A. Stebbins v. State of Arkansas*, in the Eastern District of Arkansas, 4:16CV00638 BRW. **(Ex. E)**

67. On December 2, 2016, he filed a Complaint with jury demand against the State of Arkansas and Boone County Circuit Court in the Western District of Arkansas, 3:17CV03016 TLB. **(Ex. E)**

68. On December 31, 2016, he filed a Complaint with jury demand against the State of Arkansas and Boone County Circuit Court in the Eastern District of Arkansas, 4:16CV00878 BSM. **(Ex. E)**

WHEREFORE, Defendants respectfully request this Court to deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By: /s/Christine A. Cryer
Christine A. Cryer
Ark. Bar No. 2001082
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 683-0958
Email: christine.cryer@arkansasag.gov

## **CERTIFICATE OF SERVICE**

   I, Christine A. Cryer, hereby certify that on this 12th day of October, 2017, I mailed this document by U.S. Postal Service to the following:

David A. Stebbins
123 West Ridge Street, Apt. D
Harrison, AR 72601


         By: /s/Christine A. Cryer
            Christine A. Cryer