US DISTRICT COURT
WESTERN DIST. ARKANSAS
FILED

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

OCT 19 2017

DOUGLAS F. YOUNG, Clerk

DAVID A. STEBBINS                                                    PLAINTIFF

By_____ Deputy Clerk

VS.                          CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES                  DEFENDANTS

### AFFIDAVIT OF DAVID STEBBINS

Comes now, Plaintiff David Stebbins, who hereby submits the following Affidavit in his

favor in the above-styled action.

1.      On December 1, 2015, I entered Harrison office of Arkansas Rehabiliation Services and

met with ARS Counselor Kevin Cook.

2.      During his meeting, I completed an application for services, in which I stated I was

seeking assistance with attending Arkansas Tech in Russellville.

3.      I did not say he was against me as soon as I sat down. I did my absolute best to cooperate

with him and answer his questions. However, he was not very clear about what he wanted me to

say. Cook mentioned that I am supposed to apply for Pell Grants, FAFSA, etc. When I explained

that I could not do that, he said that the ARS has the discretion to increase the financial

assistance beyond the traditional $5,300, with no upper cap, under special circumstances.

4.      I brought 13 pages of medical records from St. Bernard's with me to the interview.

5.      ARS faxed records requests to Dr. Victor Chu and Dr. Robert Frenal's offices on

12/01/15.

6.      On December 3, 2015, I emailed Kevin Cook at 10:50a.m., asking about the status of his

application. I was not angry, yelling, cussing or anything else suggesting a lack of mental

instability.

7.    On December 4, 2015, I called the ARS office in Fayetteville to try and check up on the

status of my application, since I was told by the Harrison Office that Kevin Cook was in

Fayetteville that day. I had to use my landline for the call because my Skype was not working at

the moment, which irritated me in a way the ARS had nothing to do with. I asked to speak with a

supervisor. I was transferred to somebody named Miller. I asked her to call me back so I would

not have to continue to pay by the minute for long distance, and Ms. Miller complied.

8.    On Monday, December 7, 2015, Kevin Cook responded to my email and informed me

that clinics have up to 60 days to comply with the request for records..

9.    On Tuesday, December 8, 2015, I called ARS around 2:20 p.m., and spoke with

Administrative Assistant Maghee. I did my absolute best to maintain my composure and be

patient with them. I asked to speak to Kevin Cook. I was transferred to someone other than

Kevin Cook, named Caterina Matheny. She informed me that they had not received the medical

records. I asked who had not provided the information, so I could contact them myself. I was told

that it was Crossroads Medical Clinic. I called them and asked why they had not complied with

the request for records, but hey hung up on me. I tried to call them multiple times, but the same

results happened, over and over again. So at 3:20PM, I decided to contact ARS again and ask

them for assistance. I did not yell at the ARS during this call. I was forwarded to Alana Walls for

help.

10.    Walls merely told me that the ARS "needed medical documentation." I tried to explain to

her that I was trying to get the documentation for her, but that was precisely what I needed help

with; getting the clinic to cooperate. I did not yell at her. I was not verbally abusive.

11.    Amy Jones later called me. However, I never said in that call that I hated the ARS simply

by reason of them being "the government." Jones answered *some* of my questions, but there were

still a few she refused to give straight answers on. Namely …

    (a)     How long does processing the application take?

    (b)     Is there anything I could do to help expedite the application processing?

12.     Jones asked me about his past college experience. I explained that I was in the U of A for a semester. However, I was not thrown out for making threats. I was thrown out because they misconstrued something I said as a threat. I then enrolled in North Arkansas College and was able to thrive there, completing most of my semesters, once I had reasonable accommodations for my disability. Sure, I withdrew from some classes, but I still completed most of my semesters. Only once did I ever go below being enrolled half-time. In four of the five semesters I took there, I completed at least six (6) hours, and thus was enrolled half-time in four of those semesters.

13.     After being discharged from St. Bernards in April 2015 by order of Dr. Eloise Weeks, I was told, as part of my discharge, to attend a single, lone session at Health Resources of Arkansas in Harrison. I was not supposed to attend any sessions beyond that. I attended that session as ordered by the Dr. Weeks.

14.     During this call, I never once yelled or cussed at her, never once called her a "fucking bitch faggot," and I never once said that I cannot control my anger.

15.     Amy Jones promised to call me back the next day, but she never did.

16.     Dr. Leslie Johnson issued a report & recommendation saying that my "symptoms" that were recorded in my St. Bernard's discharge papers could potentially interfere with my vocational rehabilitation, and recommended denial of funding just for the *possibility* of me being unable to succeed in the workforce. She also mentioned that I had filed several civil rights & discrimination lawsuits, and suggested that I be denied ARS funding for that reason, too.

17.    In forming this recommendation, Dr. Johnson based her opinion *exclusively* on reading my medical records and noticing that a list of symptoms that she could use as fodder to recommend denial. She never once even so much as examined me personally, let alone determined that these symptoms were indeed severe enough that I could not hold a job.

18.    Amy Jones adopted Dr. Leslie Johnson's recommendation, verbatim, including the references to my statutorily protected activities, as the primary reason for denying me ARS funding. She sent me a letter on December 17, 2015 informing me of the decision. At no point during this 1-page letter does she never mention, or even hint at, any alleged behavior I exhibited during any phone calls or interviews.

19.    I asked Disability Rights, Arkansas to request on my behalf all the documents and evidence that were used by the ARS to reach that determination. In response to this request – the request to produce *absolutely everything* that was even a slight factor in their decision – they attached only a single, two-page document: Dr. Johnson's recommendation spoken of in Paragraph 16 of this Affidavit. That's it. Nothing else was attached. Therefore, this one document was the sole determining factor in the ARS's adverse actions.

20.    I filed suit against the Defendants, for disability discrimination, ADA retaliation, and First Amendment Retaliation. The Defendants moved to dismiss, arguing that they are above the law, that they are the only ones who get to decide whether I am likely to succeed in the workforce, even if they have no evidence outside of their arbitrary and baseless assumptions that are devoid of any extrinsic evidence.

21.    This motion to dismiss was denied by Judge Moody of the Eastern District of Arkansas, adopting verbatim a Magistrate Judge's Recommended Partial Disposition stating, among other things, the Defendants' unilateral approval is not an essential eligibility requirement for any

public benefit, and the Defendants' determinations regarding my lack of ability are not sacrosanct, like they believe.

22.    As we conducted discovery, the Defendants requested an additional 30 days to respond to my first discovery requests. They were probably forging a number of documents and needed more time to put the final touches on these forgeries.

23.    When I finally got the responses to the discovery requests, they contained numerous references to never-before-heard-of hostile interactions with ARS staff. This was the first time, literally since Day 1 when I first applied for ARS funding, that the ARS had made even the slightest mention of any behavior problems, let alone stated that they were factors in the adverse action.

24.    So testified to, on this 18th day of October, 2017.

_____
David Stebbins

## ACKNOWLEDGEMENT

On this day before the undersigned, a Notary Public, duly qualified and acting in and for the County and State aforsesaid personally appeared **DAVID A. STEBBINS**, known to me or satisfactorily proven, whose name appears as AFFIANT in the foregoing instrument, and stated that he/she had executed the same for the uses and purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this **EIGHTEENTH** day of **OCTOBER, 2017**.

Notary Public:    _____

My Commission expires:    ___6 , 30 , 21___

Seal:

