US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

OCT 1 9 2017

DOUGLAS F. YOUNG, Clerk
By _____
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                          PLAINTIFF

VS.                        CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES          DEFENDANTS

## RESPONSE IN OPPOSITION TO [087] DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response

in Opposition to the Defendants' Statement of Undisputed Facts.

1.     **On December 1, 2015, Plaintiff David Stebbins entered Harrison office of Arkansas**

**Rehabiliation Services and met with ARS Counselor Kevin Cook.**

Admitted.

2.     **During his meeting, Stebbins completed an application for services, in which he**

**stated he was seeking assistance with attending Arkansas Tech in Russellville.**

Admitted.

3.     **The first paragraph of the Application reads as follows: "I understand that I am**

**responsible to help the Arkansas Rehabilitation Services (ARS) to determine my eligibility**

**within 60 days of my application."**

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the

Defendant sole discretion to decide that I am ineligible for any reason they want.

4.     **Further, it states that "When ARS receives the information about me ARS will**

**review it to determine if I am eligible for vocational rehabilitation services."**

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the

Defendant sole discretion to decide that I am ineligible for any reason they want.

5.      The application completed by Stebbins states that "When ARS receives the information about me ARS will review it to determine if I am eligible for vocational rehabilitation services."

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the Defendant sole discretion to decide that I am ineligible for any reason they want.

6.      The application further documents the steps available to the applicant should he disagree with any decision made by ARS.

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the Defendant sole discretion to decide that I am ineligible for any reason they want.

7.      Stebbins signed his application.

Admitted.

8.      Counselor Kevin Cook documented his first meeting with Stebbins that day. He documented the following:

- He told me I was against him as soon as he set down.

- He reported attending U of A Fayetteville but said he was kicked out.

- Client was not cooperative so not able to discuss his grades and obtaining copies.

- He states that his family is against him and everyone he meets is out to get him. "The whole world hates me" was another comment.

- Client said he needs assistance paying for college.

- Counselor told him we can assist him with funding but he must apply for pell grants, FAFSA, loans, etc. to pay his part.

Admitted in part and denied in part. I admit that Counselor Kevin Cook was the person I

met with on December 1, 2015. I also admit that I said I needed assistance paying for college.

However, I never said he was against me as soon as I sat down.

I deny that I was not cooperative with him; instead, I maintain that he was not clear about what questions he wanted me to answer.

I never said saying that the whole world hates me.

I never said that everyone I meet is out to get me.

Cook mentioned that I am supposed to apply for Pell Grants, FAFSA, etc. However, he also said that the ARS has the discretion to increase the financial assistance beyond the traditional $5,300, with no upper cap, under special circumstances.

See **Plaintiff's Exhibit 21.**

9.     **Mr. Cook noted that "additional medical records would be needed and were requested as something else seems to be going on with Mr. Stebbins."**

Denied. Cook never told me that additional medical records would be needed. He gave me every indication that I had already provided enough evidence during that interview for them to be able to fully process my application. See **Plaintiff's Exhibit 21.**

10.     **Stebbins was provided a professional disclosure form. It states that "the purpose of public vocational rehabilitation is to assist eligible persons with disabilities in achieving an employment outcome. This outcome may be returning to your former job or obtaining a job in a new field." Further it states that "you and your counselor will work together to find a job that you are physically and mentally able to do that is as close as possible to your vocational goals."**

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the Defendant sole discretion to decide that I am ineligible for any reason they want.

11.    It also states that "if you are eligible for vocational rehabilitation services, you and your RC (rehabilitation counselor) will jointly develop an Indivdiualized Plan of Employment (IPE). Also, it state that "it is important to remember that the goal of the RC is to help you secure a satisfactory job and that services must be related to that goal."

Admitted in part and denied in part. I admit that it says this. But I deny that this gives the Defendant sole discretion to decide that I am ineligible for any reason they want.

12.    Stebbins brought wtih him to his interview 13 pages of medical records from St. Bernard's in Jonesboro dated April 2015.

Admitted.

13.    Stebbins also signed a release for medical records and provided two physicians names.

Admitted.

14.    ARS faxed records requests to Dr. Victor Chu and Dr. Robert Frenal's offices on 12/01/15.

Admitted in part and denied in part. It appears they spelled the Vantage Point doctor's name wrong. His name is spelled "Feral," as in "feral child" (like Tarzan). They appear to have mis-read my handwriting. That might be the reason Vantage Point said they have no records.

15.    On December 2, 2015, Dr. Robert Frenal/Vantag Point responded to the records request stating they had no records on this patient.

Admitted. They probably did this because the ARS spelled the doctor's name wrong.

16.    On December 3, 2015, Stebbins emailed his counselor at 10:50a.m., asking about the status of his application.

Admitted in part and denied in part. I admit that this email exchange took place.

However, I deny that this shows any evidence of me being angry, yelling, cussing, or threatening. Those accusations were made up by the Defendants only after the Motion to Dismiss was denied, so as to create the illusion of a legitimate, non-discriminatory motive. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**17.      On December 4, 2015, CRC Lorraine Miller, spoke with Stebbins via telephone. Stebbins was quite agitated and wanted to speak with a supervisor. Ms. Miller was told by the person answering the phone that he had been "yelling" at her. Ms. Miller picked up the phone, Mr Stebbins asked her to call him back. Ms. Miller did so.**

Admitted in part and denied in part. I admit that I called the ARS on that day. I also admit that I was agitated, but not with the ARS. Instead, I had some electronics technology that was malfunctioning at the time that the ARS had nothing to do with; I was in a bad mood because I was frustrated trying to get the electronics equipment to work. This was why I asked Ms. Miller to call me back; I could not get my Skype to work properly, so I had to call her using my landline telephone, meaning I was paying by the minute for a long-distance call.

The ARS never told me that my agitation was making them uncomfortable. If they had told me that, I would have apologized and unequivocally told them that my bad mood was not their fault ... at least not yet.

I absolutely, 100% deny that I ever yelled at her. That is a bald faced lie. Those accusations were made up by the Defendants only after the Motion to Dismiss was denied, so as to create the illusion of a legitimate, non-discriminatory motive. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**18.      Upon her return call, Stebbins sound very, very anxious, was breathing hard, and talking very fast. At one point, Ms. Miller counseled him to try and calm himself down.**

Stebbins told her what he was asking ARS to do for him. Ms. Miller inquired about Stebbins taking some online courses but he did not think there were many he could take. She told him that she hardly ever asked for an exception to the funding, and that requests aren't always approved. He wanted to speak to a different counselor.

Admitted in part and denied in part. I admit this conversation took place, but I was not acting threatening with any of the ARS staff. Any statements to the contrary are bald-faced lies. Those accusations were made up by the Defendants only after the Motion to Dismiss was denied, so as to create the illusion of a legitimate, non-discriminatory motive. See **Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

19.   **That same day, Stebbins emailed his counselor at 5:50 p.m. He appeared to be inquiring regarding his records. Stebbins wanted to know if Cook could subpoean the records.**

Admitted in part and denied in part. I admit that this email exchange took place. However, I deny that this shows any evidence of me being angry, yelling, cussing, or threatening. Those accusations were made up by the Defendants only after the Motion to Dismiss was denied, so as to create the illusion of a legitimate, non-discriminatory motive. See **Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

20.   **On MOnday, December 7, 2015, Mr. Cook responded to Stebbins' email and remainded Stebbins that he had to allow 60 days for them to get the medical records from the providers.**

Admitted in part and denied in part. I admit that this email exchange took place. However, I deny that this shows any evidence of me being angry, yelling, cussing, or threatening. Those accusations were made up by the Defendants only after the Motion to Dismiss was denied,

so as to create the illusion of a legitimate, non-discriminatory motive. See **Plaintiff's Exhibit 21.**
See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

21.     **On Tuesday, December 8, 2015, Stebbins called ARS around 2:20 p.m., and spoke
with Administrative Assistant Maghee. Stebbins was very rude and yelling. He was
insisting on talking wtih his counselor. The Phone counselor transferred his callt o another
person b/c Stebbins did not want to tlak with her.**

        Denied. I was not rude to her, nor did she ever explain to me that I was making her
uncomfortable in any way. I did not yell at her. The Defendants are lying. See **Plaintiff's Exhibit
21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

22.     **Stebbins was transferred to counselor Caterina Matheny. Ms. Matheny informed
Stebbins that they had not received the medical records. Stebbins wanted to know who had
not provided the information.**

        Admitted in part and denied in part. I admit that this email exchange took place.
However, I deny that this shows any evidence of me being angry, yelling, cussing, or threatening.
To the contrary, I wanted to know who to contact so I could expedite the process. See **Plaintiff's
Exhibit 21.**

23.     **Stebbins called back at 3:20 p.m. yelling in a high voice and would not calm down.
Stebbins reported that he had tried calling Crossroads Medical Clinic to follow up on ARS'
records request,b ut they hung up on him. Ms. Matheny forwarded the call to Alana Walls
to help with the client.**

        Denied. I did not yell. That is a bald-faced lie that was made up after the Motion to
Dismiss was denied so they could have a pretextual excuse for their adverse actions. See
**Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

24.　Stebbins was transferred to Alana Walls at 3:25 p.m. He sounded short of breath and emotionally upset. He was questioning why Cook had not made any progress in his case. Ms. Walls explained to Stebbins that ARS needed documentation from a doctor establishing that he has a disability in order to determine eligibility. Stebbins became verbally abusive. Stebbins asked why the information he had already supplied was not good enough. He began to yell and she told him she was hanging up.

Denied. I did not become verbally abusive, nor did I yell. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

25.　Ms. Walls called Amy Jones and told her of the conversation.

Denied. Since my hostile behavior was made up by the Defendants after their Motion to Dismiss was denied (see Doc. 81, Plaintiff's Undisputed Fact No. 9), this means that there is a 99.999999999% chance that this conversation between Walls and Jones never happened.

26.　Amy Jones attempted to contact Stebbins via phone, but there was no answer.

Denied. I did not yell at anyone named Anita. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

27.　Alana Walls reported to Amy Jones that she was concerned for her safety and the safety of her staff in Harrison.

Denied. This conversation almost certainly did not happen. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

28.   Ms. Jones was later able to reach Stebbins via telephone. Stebbins stated that he was angry at the government and that explained a bit of why he was mad at ARS - because they are the government. Ms. Jones explained the process for eligibility and plan development to Stebbins again.

Admitted in part and denied in part. I admit that a conversation took place. However, I deny that I stated that I hate the ARS simply because they are the government. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

29.   Ms. Jones asked Stebbins about his past college experience. Stebbins reported that he had been thrown out of U of A for making threats in 2007. Stebbins reported that he then attended the North Arkansas College and that his provided him accommodations by pulling him aside to explain his behavior.

Admitted in part and denied in part. I did not state that I was thrown out of U of A "for making threats in 2007." I was thrown out because they misunderstood something I said as a threat, even thought it was not a threat.

However, I admit that I attended North Arkansas College and was able to complete four semesters there once I had reasonable accommodations for my disabilities.

30.   Stebbins was unable to complete most of his semesters.

Denied. I withdrew from some classes, but I still completed most of my semesters. Only once did I ever go below being enrolled half-time. In four of the five semesters I took there, I completed at least six (6) hours, and thus was enrolled half-time in four of those semesters. See Doc. 79, Exhibit 18. See also **Plaintiff's Exhibit 21**

31.    Stebbins reported he'd been seen by St. Bernard's in April 2015, but had received no follow-up services since that time. Ms. Jones inquired about his discharge report and recommendations. He reported that he'd been told to go somewhere for counseling, and did one time, but that was it.

Admitted in part and denied in part. I admit that I was discharged from St. Bernards in April 2015. I also admit that I attended a single out-patient session at Health Resources of Arkansas (HRA). I also admit that, at the time of that phone conversation, I had no plans of returning there.

However, there appears to be an implication with this undisputed fact that my intention of not returning to HRA implies some sort of refusal on my end to seek treatment. To the extent this fact implies that, this is denied. The doctor at St. Bernards did not recommend I attend any sessions with HRA besides the one. That is all I was supposed to do.

See **Plaintiff's Exhibit 21.**

32.    Ms. Jones expressed her concern for Stebbins' well-being and mental stability based on the conversation they were having. This was based on throughout their conversation, Stebbins maintained an escalated voice, rapid breathing, and extreme agitation.

Denied. I did not have an escalated voice. I was not "extremely agitated" with her. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

33.    Ms. Jones asked about Stebbins' family or any support system he might have so he could contact them regarding her concerns. Stebbins said he hated his family. He said he cannot control his anger, especially when he cannot get any answers.

Denied. I never said that I could not control my anger. I am, indeed, very much capable of controlling my anger, and even if I wasn't, I would never admit to that out loud. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**34.    Ms. Jones explained their system and answered all of Stebbins' questions.**

Denied. My questions were not answered fully. See **Plaintiff's Exhibit 21**.

**35.    Ms. Jones told him she'd speak with his counselor and the psychological examiner and would try to call him back tomorrow.**

Admitted in part and denied in part. Amy Jones promised to call me back tomorrow, but she never did. See **Plaintiff's Exhibit 21**.

**36.    Ms. Jones spoke with Leslie Johnson, a Licensed Psychological Examiner. Ms. Johnson said she did not think Stebbins needed to be scheduled in any office at this time due to his instability.**

Admitted in part and denied in part. I admit that Dr. Johnson did not have me in her office for any evaluation. However, I deny that this was done because of any instability. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**37.    Ms. Jones called Carl Daughtery, her supervisor, and explained the situation to him. Mr. Daughtery said they needed to contact the Harrison Police Department and let them know of the threatening calls and threatening behavior being exhibited by Stebbins. He also said they needed to call a psychiatric facility for mandated reported regarding their**

concern for Stebbins' well-being.

Denied. This conversation almost certainly did not happen. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

38.    **Ms. Jones called the Harrison ARS Office and told them to keep doors from the lobby to the office area locked at all times. If Stebbins were to show up, they were to call the police. Ms. Jones also instructed them that if Stebbins were to call the Harrison, ARS Office, he was to be directed to her and that she would be handling his case going forward.**

Denied. This conversation almost certainly did not happen. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

39.    **A report was made to the Harrison Police Department. ARS staff did not ask the police to go out and do anything, but they did want the incidents documented.**

Denied. This conversation almost certainly did not happen. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21.** See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

40.    **On December 9, 2015, Stebbins emailed Mr. Cook to inquire about any updates on his case.**

Admitted.

41.    **That same day, Ms. Jones performed a review of the partial hospital records that**

**Stebbins had provided during his December 1st interview. In the records, the doctor reported that Stebbins did not and would not provide them with a medical history. The records further stated that Stebbins was arrested for domestic battery against his father. Stebbins reported to the doctor that he was thrown out of the U of A for making threats. Ms. Jones read court documents and found very disturbing facts about the case. Stebbins made threats to numerous employees at the U of A to the point of terroristic threatening.**

Denied. Did you notice that they are not actually providing the medical records, but rather, Amy Jones' notes about the medical records? You know why they aren't showing the medical records themselves to support this fact? Because this paragraph in their Statement of Undisputed Facts is a bald-faced lie, and the medical records themselves completely contradict it.

The medical records do not say I was thrown out of the U of A "for making threats." It clearly says that I was thrown out of the U of A because "they misconstrued something I said as a threat." There is a big difference. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**42.    Based on Stebbins' actions/inappropriate communication with ARS staff, Ms. Jones did not believe that Stebbins was mentally stable enough at that time for a vocational rehabilitation program. She also felt that Stebbins was a physical threat to her staff and did not feel comfortable in setting him up for a Rehabilitation Initial Diagnosis and Assessment ((RIDAC) or sending him to anyone's office.**

Denied. She never once decided that I was a threat. That is a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

43.    Ms. Jones initially made the decision on December 9, 2015, to close Stebbins' case

that day; however, she decided to reconsider that decision.

Denied. Amy Jones made ONE decision to deny me funding because of my statutorily

protected activities, then used my symptoms as a pretextual excuse, since she couldn't think of

anything better. Any accusations about my supposed behavior are a bald-faced lie that were made

up after the Motion to Dismiss was denied so they could have a pretextual excuse for their

adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

44.    Ms. Jones called Stebbins to speak with him about her records review findings. She

explained that she had reviewed his medical documentation again and that she wanted to

clarify where the remainder of his most recent medical/mental health visits were (post April

2015Ø). Ms. Jones asked Stebbins where he was treated/transferred to from the ER in

Jonesboro. Stebbins said that he was treated for 1-2 weeks at St. Bernard's Behavior Clinic.

He said he was released from their clinic on April 30th. Ms. Jones explained that she would

like to review those records because she believed they would have his latest psychiatric

evaluation on file. She also wanted to see what his discharge papers recommended for

further or ongoing treatment.

Admit. She probably was searching for any excuse she could think of to deny the

application.

45.    Ms. Jones told Stebbins that she would request all of his records from St. Bernard's

and would notify him once she had the records.

Denied. I was never told this. See **Plaintiff's Exhibit 21**. Also, she never notified me of

any of when the records arrived.

46.    At approximately 11:45 a.m. that day, Vantage Point called and reported that

**Stebbins had called thier office - was very rude and hateful - demanding they send their records to ARS.**

Denied. I did not call their office. Also, even if I did, I would not have been rude or hateful to anyone who was not part of the problem.

**47.    Ms. Walls called the Northwest Arkansas Regional Hospital and asked to speak with someone in the Psychiatric Unit. She was informed they were not open for business, and referred her to Health Resources of Arkansas in Harrison. Ms. Walls relayed the information to Renae at HR, and then faxed the information ARS had received from Stebbins.**

Denied. The document the Defendants reference in this paragraph – filemarked as ARS 77 – does not have a release form signed by me attached to it. Therefore, it would have been illegal for HRA to release my records to ARS. This suggests that this document, supposedly requesting the medical records, is actually a forgery, and was added in after the fact in an attempt to make the ARS's decision *appear* to have been based on thorough evidence and investigation.

Also, to my knowledge, nothing in those records played any role in the Defendants' adverse action. Thus, even if it could be proven to be true, it is not material to this case.

**48.    Information was relayed in an effort to protect Stebbins from self-harm or in the event there may have been a threat of harm to office personnel.**

Denied. The information was not "relayed," behind my back or otherwise. This was made up by the Defendants after the Motion to Dismiss was denied in an attempt to create the illusion that their decision was based on a thorough investigation.

This is best evidenced by the fact that no medical release form containing my signature appears anywhere in the ARS's files. Thus, even in the already-unlikely event the ARS had

indeed submitted this request for records, it would have been a blatant violation of my right to medical privacy anyway. So it is much more likely that this was just made up by the Defendants in response to litigation.

**49.     On December 11, 2015, Stebbins emailed both Mr. Cook and Ms. Jones a copy of his college transcript from NAC.**

Admitted.

**50.     Ms. Jones asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on Stebbins. Ms. Jones wanted Ms. Johnson's input in determining the feasibility of VR (vocational Rehabilitation) services/training for Stebbins.**

Admitted in part and denied in part. I admit that this recommendation from Dr. Johnson was sought. However, I maintain that this recommendation, and the two discriminatory factors – the statutorily protected activities and the symptoms and disabilities – that were mentioned in this report – are in fact the only two things that motivated the Defendants' adverse action. This is evidenced by the fact that, prior to their Motion to Dismiss being denied, they never once made any mention of any other factors besides just those two. Only after the Motion to Dismiss was denied, and the Defendants received unequivocal confirmation that these two factors amounted to discrimination and retaliation, only then did the Defendants give even the slightest inkling that they considered, even slightly, any other factors. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**51.     After her review, Ms. Johnson provided Ms. Jones with her conclusions and recommendations. In Ms. Johnson's opinion, as of December 2015, Stebbins was not appropriate for vocational rehabilitation services.**

Admitted in part and denied in part. I admit that Amy Jones made this decision. However,

I deny that it was even 1% as thorough as the Defendants' Statement of Undisputed Facts make it seem. All mentions of any other factors are just bald-faced lies that were made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. They probably just noticed my litigation history, decided that I didn't "deserve" any public benefits, and just made up what they believed at the time to be a legitimate excuse to deny me funding: That I had symptoms that would interfere with my vocational rehabilitation.

See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

52.    **Ms. Johnson strongly recommended a referral to a local mental healthcare provider for Stebbins. She opined that his vocational success would depend on him stabalizing and effectively managing his psychiatric issues.**

Admitted in part and denied in part. I admit that Amy Jones made this decision. However, I deny that it was even 1% as thorough as the Defendants' Statement of Undisputed Facts make it seem. All mentions of any other factors are just bald-faced lies that were made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. They probably just noticed my litigation history, decided that I didn't "deserve" any public benefits, and just made up what they believed at the time to be a legitimate excuse to deny me funding: That I had symptoms that would interfere with my vocational rehabilitation.

See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

53.    **Further, in order for Stebbins to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work.**

Admitted in part and denied in part. I admit that Amy Jones made this decision. However,

I deny that it was even 1% as thorough as the Defendants' Statement of Undisputed Facts make it seem. All mentions of any other factors are just bald-faced lies that were made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. They probably just noticed my litigation history, decided that I didn't "deserve" any public benefits, and just made up what they believed at the time to be a legitimate excuse to deny me funding: That I had symptoms that would interfere with my vocational rehabilitation. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**54.     On December 16, 2015, Ms. Jones made the determination that Stebbins was not feasible for VR services at that time. Ms. Jones based her decision on several factors: (a) his behavior to both Fayetteville and Harrison staff was hostile at every encounter; (b) Stebbins did not want to cooperate in giving his medical information but relented that they could send a request for records to his last place of treatment - St. Bernard's Behavioral Unit; and (c) a Licensed Psychological Examiner reviewed his records and concluded that Stebbins was not feasible for VR services at that time.**

Admitted in part and denied in part. I admit that Amy Jones made this decision. However, I deny that it was even 1% as thorough as the Defendants' Statement of Undisputed Facts make it seem. I was not hostile with the ARS staff. That is just a bald-faced lie that was made up after the Motion to Dismiss was denied so they could have a pretextual excuse for their adverse actions. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**55.     That same day, Ms. Jones wrote to Stebbins and informed him of her decision. Ms. Jones informed him of his right to request an administrative review of the decision, as well as an opportunity for a fair hearing.**

Denied. I never received this letter from the ARS. The letter filemarked as ARS 130 is the

only document I received notifying me of the adverse action taken against me. See **Plaintiff's Exhibit 21**.

**56.     Ms. Jones wrote Stebbins a second letter on December 17, 2015. She again explained her reasoning for determining him to be ineligible for services at that time.**

Admitted in part and denied in part. I admit that Amy Jones sent me this letter. However, I deny the word "again." This letter was the first time I had received written notice of the Defendant's adverse action. See **Plaintiff's Exhibit 21**.

Think about it: Why would the ARS send *two* letters that effectively tell me the same thing? That does not make any sense. That is a terrible waste of public resources, and there is no motive to do that.

**57.     Ms. Jones did not deny David Stebbins vocational rehabilitation due to his previous filings of civil rights lawsuits.**

Denied. She unquestionably did use my litigation history as a factor in her adverse actions. See my Second Motion for Summary Judgment, Statement of Undisputed Facts, Brief in Support Thereof, as well as the various Replies I have filed replying to the Defendants' Responses in Opposition.

**58.     Ms. Jones did not base her determination that Stebbins was ineligible for services on his prior civil litigation.**

Denied. She unquestionably did use my litigation history as a factor in her adverse actions. See my Second Motion for Summary Judgment, Statement of Undisputed Facts, Brief in Support Thereof, as well as the various Replies I have filed replying to the Defendants' Responses in Opposition.

**59.     Stebbins did not "automatically qualify" for ARS funding.**

Denied. My receiving of SSI created a presumption that I am otherwise qualified for ARS funding. The Defendants' own ARS Manual clearly puts the burden of proof on the Defendants to show clear and convincing evidence (not merely a preponderance of the evidence) that my disabilities are so severe that they completely bar me from procuring gainful employment.

**60.      For all indivdiuals applying for services, ARS will conduct an assessment to determine eligibility. There is a "presumptive eligibility" for SSD/SSI recipients, which Stebbins was. The presumption means that the process will not be delayed for the gathering of medical records. The "presumption" does not mean the individual does not still have to be assessed, because the assessment will still occur.**

Admitted in part and denied in part. I admit that the Defendants had the right to assess me. However, they never assessed me. They denied me solely on the fact that (A) I had filed discrimination lawsuits in the past, and (B) I have symptoms they they *think* had the *potential* to interfere with my vocational efforts. When the Court denied their Motion to Dismiss and unequivocally explained to them that these two excuses were retaliation and discrimination, respectively, then, and only then, did the Defendants give even the slightest mention of there being any other factors behind their decision. See **Plaintiff's Exhibit 21**. See also Doc. 81, Plaintiff's Undisputed Fact No. 9.

**61.      Stebbins' assessment (history of his interaction with ARS staff members, past records and history, and his refusal for treatment) made him ineligible for services in December 2015.**

Denied. There was no assessment made. They probably just noticed my litigation history, decided that I didn't "deserve" any public benefits, and just made up what they believed at the time to be a legitimate excuse to deny me funding: That I had symptoms that would interfere

with my vocational rehabilitation. When the Court denied their Motion to Dismiss and

unequivocally explained to them that these two excuses were retaliation and discrimination,

respectively, then, and only then, did the Defendants give even the slightest mention of there

being any other factors behind their decision. See **Plaintiff's Exhibit 21**. See also Doc. 81,

Plaintiff's Undisputed Fact No. 9.

62.     **Stebbins 2017 suggestion that he could have attended school while simultaneously**
**receiving counseling was not a "reasonable accommodation" that would have been made.**

Denied. The Defendants offer no evidence whatsoever to support their opinion that my

proposed accommodation is not reasonable. Paragraph 33 of the affidavit attached by the

Defendants as Exhibit C merely has Amy Jones giving the *opinion* that this proposed

accommodation is not reasonable ... but she offers absolutely no details or evidence whatsoever

to support this arbitrary and summary opinion.

As the Defendants themselves state in their own Brief in Support of their Response in

Opposition, a person's "beliefs are not evidence." See Doc. 85, bottom of Page 4.

In fact, this is the main problem in this entire case! The Defendants maintain that I cannot

be in college or obtain gainful employment ... simply because they say so[1]. They maintain that I

cannot even interact with the public, simply because they say so. They say that my medical

records indicate I was thrown out of U of A for making threats, even though the records

themselves tell a very different story, simply because their statements of what the medical

records say override what the actual medical records say. They maintain that my proposed

reasonable accommodation is not reasonable ... simply because they say so.

They don't need evidence to support their claims. Their claims ARE the evidence!

---

1  See Doc. 16: "[T]he determination of whether an individual is likely to succeed in the workforce is solely at the
   discretion of the ARS."

Something wasn't true five minutes ago; they claim it, and their claim, alone, without more, causes a statement to suddenly become true.

63.    Stebbins has not stopped filing lawsuits since being told he was ineligible for benefits in December 2015.

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66 of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second Motion for Summary Judgment.

64.    In December 2016, Stebbins proceeded with his pro se appeal in David A. Stebbins v. David D. Stebbins in the Arkansas Court of Appeals, CV-16-16.

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66 of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second Motion for Summary Judgment.

65.    Stebbins filed various motions and briefs over the course of 15 monmths in the Stebbins v. Stebbins appeal.

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66 of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second Motion for Summary Judgment.

66.    On September 2, 2016, Stebbins filed a Complaint with jury demand in David A. Stebbins v. State of Arkansas, in the Eastern District of Arkansas, 4:16CV00638 BRW.

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66 of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second Motion for Summary Judgment.

67.    On December 2, 2016, he filed a Complaint with jury demand against the State of

Arkansas and Boone County Circuit Court in the Western District of Arkasnas,

**3:17CV03016 TLB.**

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66

of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second

Motion for Summary Judgment.

**68.      On December 31, 2016, he filed a Complaint with jury demand against the State of**

**Arkasnas and Boone County Circuit Court in the Eastern District of Arkansas,**

**4:16CV00878 BSM.**

Admitted. However, this is not a material fact, for the reasons stated in Paragraphs 59-66

of my Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second

Motion for Summary Judgment.

Wherefore, premises considered, I request that the Second Motion for Summary

Judgment be granted.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com