FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Oct 20, 2017

OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                           PLAINTIFF

VS.                         CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES                    DEFENDANTS

### REPLY TO [085] BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO [079] SECOND MOTION FOR SUMMARY JUDGMENT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply to Doc. 85, the Defendant's Brief in Support of Response in Opposition to Second Motion for Summary Judgment.

**Preliminary Matters**

1. Before we continue, I would like to address four preliminary matters before we move onto the reply itself.

2. First, this response was uploaded to Pacer on Oct. 12, 2017. However, I did not receive it in the mail until Monday, October 16, 2017. Therefore, the 7-day time limit to file a Reply set forth in AR Local Rule 7.2(b) begins on that date, not the date the Response was uploaded to PACER. This means that I must have the reply in the mail by October 23, 2017. Therefore, this reply is still timely.

3. Second, this Court cannot raise new claims or defenses sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

    (a) See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own").

    (b) See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence

of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims").

    (c)    See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

    (d)    See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

4.    This means that, if the Defendants, in their response to this motion, fail to establish any dispute of material fact, this Court cannot "bail out" the Defendants by raising its own disputes of material fact. To do so would cause the court to become an advocate for the defense, and I should not even have to explain to you why that is not allowed.

5.    Third, I would also like to remind this Court that it cannot issue an order without giving an explanation behind it. Failure to give an explanation constitutes an automatic abuse of discretion.

    (a)    See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations ... but this does not permit a district court to give no explanation for its decision");

    (b)    See also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992) ("The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice.")

    (c)    See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) ("we neverthe-less find it necessary to remand because we cannot determine from the record

whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion")

(d) See also Foman v. Davis, 371 US 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.")

(e) See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) ("We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order.")

(f) See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

(g) See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

(h) See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

(i) See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

(j) See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total

suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.")

(k)  See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

(l)  See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

6.  This means that, if this Court wishes to deny this Motion, it must actually state with particularity which facts are in dispute, point to the evidence presented by the defense to show that this dispute exists, and provide citations of law.

7.  And if the Defense does not produce any evidence to show this dispute of fact, that means they lose. Period. Because as I have already established in Paragraph 2, this Court cannot make any findings unless the evidence is presented to it by one of the parties.

8.  This means that this Court cannot simply say that whatever material fact is "still in dispute" and end the analysis there. It must show what evidence the Defense has that actually disputes my evidence.

9.  Fourth, and finally, the Eastern District of Arkansas has already determined, on a Motion to Dismiss, that A) I have stated a claim upon which relief can be granted, and B) the Defendants are not entitled to sovereign immunity. See Doc. 51, Page 15.

> "Stebbins's allegations state plausible claims for relief under Title II, the Fourteenth Amendment, and the anti-retaliation provisions of the ADA ... the State of Arkansas and Defendant ARS are not entitled to invoke sovereign immunity as a bar to Stebbins's claims."

10.  Therefore, this Court cannot dismiss the complaint under 28 USC § 1915(e)(2), because of res judicata.

11. With that said, let us continue with the Reply.

### Defendants' denial of retaliation is chronically implausible.

12. In response to the claims of ADA Retaliation and First Amendment Retaliation, the Defendants' arguments appear to be thus:

- Dr. Johnson referenced my litigation history, but it is Amy Jones, Dr. Johnson, who gets final say in the matter.
- Amy Jones adopted Dr. Johnson's recommendation verbatim.
- Jones made no mention of my litigation history when denying my application for ARS services.
- Therefore, the ARS did not use my litigation history as a factor in deciding to deny me ARS funding.

13. The Defendants' attempts at denial miss the boat. By the Defendants' own admission, Amy Jones based her rejection of my ARS Application, in part, by adopting Dr. Johnson's recommendation verbatim. Anything in that recommendation is therefore necessarily a factor in Jones' decision to deny the application.

14. The Defendants also attempt to maintain that Dr. Johnson's mentioning of my litigation history does not mean that it was actually a factor in her recommendation. They appear to argue (although this is very unclear; I am reading between the lines on this) that they were only searching the public records looking for any evidence of additional criminal charges, and that Dr. Johnson was merely mentioning what she found, but was not actually basing her recommendation, in whole or in part, on these findings.

15. This, however, makes no economic sense, and therefore is insufficient to establish a genuine dispute of fact. "[I]f the factual context renders respondents' claim implausible — if the

claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." See *Matsushita v. Zenith*, 475 US 574, 587 (1986).

16. The Defendants' version of events (assuming I am even understanding their position correctly) makes no sense because ... if my litigation history was not, and was never intended to be, even the slightest factor in their decision, then why even bring it up at all? Dr. Johnson obviously had a *reason* for bringing it up! Now all of the sudden, the Defendants' maintain that she did not mention it for any particular reason, just for its own sake.

17. First of all, how would she possibly see my statutorily protected activities if she were looking for evidence of criminal charges? She was obviously looking at the *federal* court records, since those are where my discrimination cases have been filed[1]. So she must have used PACER to search for them. Pacer has two completely seperate search engines for criminal and civil cases. See **Plaintiff's Exhibit 20**, a screenshot from the federal courts' pacer website[2] that clearly shows two completely separate links to view the records of criminal cases and civil cases. So Dr. Johnson would not have seen my statutorily protected activities if she were searching only for criminal cases.

18. There is only one explanation: Her statement that she was searching for criminal charges was a lie; she was actually searching for my litigation history and is now changing her story when she realizes that the ARS is going to be held liable.

19. Second, of all the things she could have mentioned "just for its own sake," she chose my litigation history. She could have mentioned "for its own sake" that I have a grating voice ... or

---

[1] While she might have searched the records for both state and federal courts, it was the records from federal court that showed her my statutorily protected activities.

[2] Once logged in to Pacer, this webpage is viewable at the following URL: https://ecf.arwd.uscourts.gov/cgi-bin/DisplayMenu.pl?Reports

that my style of written communication was annoying ... or that I graduated high school in 2007. Of all the things she could have mentioned "just for its own sake," she chose to mention my statutorily protected activities. It is entirely implausible that she was only doing this just for the sake of mentioning it.

20. Third, if she was supposed to be looking for criminal charges, why not simply mention that there was no evidence of criminal charges? Why would you only mention my statutorily protected activities ... but not mention the very thing you were supposed to be looking for?! Defendants' Exhibit B says that she mentioned that my litigation history was mostly civil rights and discrimination *as a means of* explaining that they are not criminal charges. But that does not make any sense, either. Why not just say "I found no record of additional criminal charges?" That would have conveyed her thoughts just fine and would not have raised suspicion of ADA retaliation.

21. The Defendants' position is getting more and more implausible by the minute. Sure, there is still a slight chance that she is telling the truth. However, that alone is not good enough to survive summary judgment. See Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F. 3d 824, 827 (8th Cir. 2003): "[A] mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden." See also Anderson v. Liberty Lobby, Inc., 477 US 242, 252 (1986): "The mere existence of a scintilla of evidence in support of the [nonmov-ant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."

22. All the evidence – except for the defendant's uncorroborated word that does not even make sense alongside the undisputed facts, even as-is – suggests that Dr. Johnson mentioned the litigation history because she intended for it to be a factor in determining my eligibility for ARS

funding. Thus, when Amy Jones adopted the recommendation, verbatim, that included, by proxy, the reference to the statutorily protected activities. This means that the ARS denied my application for services, at least in part, because of my statutorily protected activities. The Defendants can deny that fact, but the fact is nevertheless proven beyond genuine dispute (the key word being "genuine;" see Paragraphs 13 and 21 of this Reply for details).

### The Defendants' next arguments are frivolous because of res judicata.

23. In Pages 10-19 of the Defendant's Brief, the Defendants attempt to repeat, almost verbatim, the very arguments in their Brief in Support of their Motion to Dismiss.

   (a) "And the determination of whether an individual is likely to succeed in the workforce is solely within the discretion of the ARS." Doc. 85, Page 12. Also Doc. 16, Page 8.

   (b) "On the contrary, these symptoms are illustrative of why Stebbins could not ... succeed in the workfroce." Doc. 85, Page 16. Also Doc. 16, Page 9.

   (c) "they must ... show that they would benefit from those services in that their rehabilitation into the workforce could be satisfactorily achieved with some assistance from ARS." Doc. 85, Page 15. Also Doc. 16, Pages 8-9.

24. The list goes on an on. With only a few minor differences, this is the same argument they have made in their Brief in Support of Motion to Dismiss.

25. This is patently frivolous, on the grounds of res judicata. The Court has already expressly rejected these arguments. See Doc. 51.

   (a) "In ADA cases, rather than simply deferring to an entity providing the service in question and deeming its eligibility rules to be sacrosanct, a reviewing court must undertake an independent analysis of ... the importance of an eligibility requirement for a public program or benefit ... It is inconsistent with the ADA to elevate the unilateral approval of the

entity accused of discrimination to the status of an essential eligibility requirement ... Thus, in determining whether Stebbins is a qualified individual with a disability for Title II purposes, the Court is not bound by Defendant ARS's determination that he was not 'qualified' to receive its benefits." *Id* at Pages 12-13 (citations and quotations ommitted).

(b)  "[B]y the express word of Congress, it is not necessary for a person to meet all eligibility requirements. Instead, if a proposed modification of those requirements is 'reasonable,' a person can be a 'qualified individual.'" See *Id*, Page 13.

26.  These arguments of law have already been adjudicated in my favor by a court of competent jurisdiction. This Court has no jurisdiction or authority to revisit these conclusions of law.

27.  Therefore, with the Defendants having once again admitted to using my symptoms and disabilities as being at least one factor in their determination that I would not receive any ARS funding, that means that I am entitled to summary judgment.

### My alleged hostility, even if true, is not a material fact and, at best, only turns this into a mixed-motive case.

28.  The Defendants are placing a good deal of stock in my allegedly hostile behavior as one of the reasons for the adverse action. As I have said before, this is most likely made up by them after their Motion to Dismiss got denied, as evidenced by the fact that we only first heard about these statements after the Motion to Dismiss got denied, when they had plenty of opportunities before then to bring it up.

29.  However, even if my allegedly hostile behavior was a factor in their adverse actions, that still does not save them. As I said in the Second Motion for Summary Judgment, they have nevertheless admitted that my symptoms and disabilities were still a determining factor in their adverse action; they just were not the *sole* factor in the adverse action.

30. As long as my disabilities were even a factor at all in their adverse action, I am entitled to relief. See Doane v. City of Omaha, 115 F. 3d 624 (8th Cir. 1997):

> "Once a plaintiff proves that an unlawful motive played *some part* in the [adverse] decision, the plaintiff is entitled to relief, including compensatory damages, declaratory judgment, and injunctive relief. The defendant may attempt to limit the relief by showing that it would have made the same decision, even absent consideration of the impermissible factor. If the [defendant] proves that it would have made the same decision absent consideration of the [plaintiff]'s disability, the remedies available are limited to a declaratory judgment, an injunction ... and some attorney's fees and costs." See *id* at 629.

31. The Defendants admit that my symptoms and disabilities were a factor at all in their adverse action. Therefore, I am entitled to relief.

32. The only way this fact could possibly be relevant is if the Defendants would have reached the same decision absent the impermissible factor. This is clearly not the case, since the Defendants have nevertheless admitted that they would have agreed to re-evaluate my application if I got rid of the symptoms.

33. Therefore, even assuming the facts in a light most favorable to the Defendants, my allegedly hostile behavior is still not a material fact. Therefore, it cannot be considered by the Court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted"). See also Conseco Life Ins. Co. v. Williams, 620 F. 3d 902, 910 (8th Cir. 2010) (same). See also Rickard v. Swedish Match North America, Inc., 773 F. 3d 181, 184 (8th Cir. 2014) (same). See also Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F. 3d 824, 827 (8th Cir. 2003) (same). See also Villanueva v. City of Scottsbluff, 779 F. 3d 507, 510 (8th 2015) (same).

**The Defendants' rejection of reasonable accommodations is based on bald faced lies.**

34. The closest the Defendants come to raising any new evidence is when they addressed

whether any reasonable accommodations could enable me to be eligibile for ARS services. They state that my proposed accommodation of attending therapy while attending college would not have worked, due to my supposed "failure to follow physician's orders ... to seek counseling."

35. This is a bald-faced lie. In Doc. 87 (the Defendant's Statement of Undisputed Facts), the Defendants admitted that I attended the therapy session the physician recommended I attend. See Doc. 87, Paragraph 31: "He reported that he'd been told to go somewhere for counseling, and did one time." I was only supposed to go there that one time. I was not supposed to go to that counseling session more than once. That was only supposed to be a follow-up to my hospital discharge. It was not supposed to be a recurring thing. By the Defendant's own admission, I attended that single, lone session, and that was all I was supposed to do.

36. The Defendants are just making stuff up to retroactively justify their decision to deny me funding.

37. So the closest the Defendants come to raising a new argument that has not already adjudicated by the courts ... is still based on a bald faced lie.

**Defendants' arguments of lack of ability are entirely without evidence.**

38. The Defendants argue that, because I have not proven beyond genuine dispute that I can successfully be in class, complete my coursework, and subsequently obtain gainful employment after graduating, I am not entitled to summary judgment.

39. This is not a relevant fact. As I said in the Motion, there are two ways to tackle a fact on summary judgment: You can prove them beyond genuine dispute, or you can show that they are not material facts. Facts that are not relevant to the case cannot block an entry of summary judgment, no matter how disputed they are.

40. Again, this is black letter law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted"). See also Conseco Life Ins. Co. v. Williams, 620 F. 3d 902, 910 (8th Cir. 2010) (same). See also Rickard v. Swedish Match North America, Inc., 773 F. 3d 181, 184 (8th Cir. 2014) (same). See also Uhiren v. Bristol-Myers Squibb Co., Inc., 346 F. 3d 824, 827 (8th Cir. 2003) (same). See also Villanueva v. City of Scottsbluff, 779 F. 3d 507, 510 (8th 2015) (same).

41. Again, I could go on like this for entire pages. This is a clearly established, well-settled principle of law.

42. The Defendants argue that I cannot proven that I can be in class, complete my coursework, and subsequently obtain gainful employment. Even if this is disputed (which it is not), it is not a *material* dispute.

43. At best, this would call into question whether I am "otherwise qualified." However, the Defendants do not get to dictate how exactly I must go about proving each essential element. I have already proven that I am otherwise qualified. I did it in a rather unorthodox manner (by proving that I receive SSI, which, according to ARS's own manual, automatically makes me otherwise qualified), but I still did it. Again, the Defendants do not get to dictate how I go about proving each essential element, so just because the Defendants don't like my *method* of proving that I am otherwise qualified does not mean I have not fulfilled my burden.

44. Remember that it is the *Defendants' own manual* which establishes that my SSI benefits make me otherwise qualified! See Undisputed Fact No. 10. If the Defendants do not like how easy it is for me to prove that I am otherwise qualified, they have only themselves to blame.

45. The Defendants maintain that my SSI benefits only create a presumptive eligibility for

ARS funding, but they still must conduct an assessment. Yes, their manual does indeed state this. However, the Defendants' own manual places the burden for overcoming this presumption of eligibility extremely high. See **Plaintiff's Exhibit 3**, attached to the original Second Motion for Summary Judgment:

> "The individual who is presumed eligible as a recipient of SSI/SSDI and who intends to achieve an employment outcome is eligible unless *clear and convincing evidence* demonstrates that the individual is *incapable* of benefiting from vocational services in terms of achieving an employment outcome due to the *severity* of the disability." Emphasis added.

46. By the Defendants' own admission, they reached this conclusion simply by looking at the medical records and noticing that I have X, Y, and Z disabilities and symptoms. That's it. That is literally all they did. They never examined me personally. They never offered me any chance to offer rebuttal evidence. They never took the testimony of any disinterested witnesses. Nothing. Not even a scintilla of evidence that my symptoms were so severe that they made me incapable of obtaining a job.

47. The Defendants' own manual says outright that the mere existence of symptoms does not alone, without more, disqualify me from eligibility form ARS services. However, by the Defendant's own admission, that is exactly what they did.

48. With it established that I am otherwise qualified (even if the Defendants disagree with my method), it has subsequently been admitted by the Defendants that my "medical and psychological reports" were a determining factor in the adverse action. See Undisputed Fact No. 7.

49. The consideration of the plaintiff's disabilities, in any way, shape or form, constitutes a prima facie act of discrimination. See Doane v. City of Omaha, 115 F. 3d 624, 629 (8th Cir. 1997):

> "Once a plaintiff proves that an unlawful motive played *some part* in the [adverse] decision, the plaintiff is entitled to relief, including compensatory

damages, declaratory judgment, and injunctive relief. The defendant may attempt to *limit the relief*[3] by showing that it would have made the same decision, even absent consideration of the impermissible factor. If the [defendant] proves that it would have made the same decision absent consideration of the [plaintiff]'s disability, the remedies available are limited to a declaratory judgment, an injunction ... and some attorney's fees and costs"

(emphasis added; internal citations and quotations omitted)

50. There are exceptions, of course, including, but not limited to, bona fide qualification, direct threat, and undue hardship. However, that's just it: these are *excpetions*, not the rule! They are *affirmative defenses*[4], meaning they must be affirmatively plead by the Defendants and then subsequently proven by the Defendants in the first instance *before* I take on any burden to show rebuttal evidence!

51. It's just like how, if you *kill someone*, there are exceptions to that crime (the most famous of which is self-defense). But those must be affirmatively plead and proven by the defendant. Taking any life, under any circumstances, is still prima facie homicide in the first instance.

52. Likewise, using my disability as a factor in their decisions, under any circumstances, is prima facie discrimination in the first instance. Much like with self-defense being a defense to murder, any defenses to discrimination must be proven by the Defense.

53. At best, the Defendants' denial that I am capable of completing college and obtaining gainful employment would fall under the defense of "bona fide qualification." However, the Defendants have not affirmatively plead this defense in their Answer to Complaint. Their Answer

---

3  Limiting the relief does not mean they are exonerated of discrimination altogether.

4  See Automobile Workers v. Johnson Controls, Inc., 499 US 187, 200 (1991) ("For the plaintiff to bear the burden of proof in a case in which there is direct evidence of a facially discriminatory policy is wholly inconsistent with settled [discrimination] law").

See also EEOC v. Wal-Mart Stores, Inc., 477 F. 3d 561, 571 (8th Cir. 2007) ("we now hold that the employer bears the burden of proof, as the direct threat defense is an affirmative defense").

See also US Airways, Inc. v. Barnett, 535 US 391, 401 (2002) ("Once the plaintiff has made this showing, *the defendant/employer then must show* special (typically case-specific) circumstances that demonstrate undue hardship *in the particular circumstances*") (emphasis added).

has plead *only* collateral attacks as affirmative defenses (all of which are patently frivolous, even as-is, for the reasons I have already explained in my Motion to Strike and Brief in Support thereof). Therefore, this defense is not properly before the Court. See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)). See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

54.   But even if this Court were to allow the Defendants to present this affirmative defense, the defense still fails on the evidence ... or should I say, the *lack* of evidence. By the Defendant's own admission, their determination that I am incapable of completing college and obtaining gainful employment is based on no evidence whatsoever. See Undisputed Fact No. 5. See also Doc. 82, "Supplement to Second Motion for Summary Judgment," showing that the Defendants freely admit that their determination that I am incapable of completing college and obtaining gainful employment is not something they know for a fact to be true or untrue. By their own admission, they do not even have a scintilla of evidence to support this assertion, even if a mere scintilla were all they needed to block an entry of summary judgment (which it is not; see Paragraph 21 of this Reply).

55.   Saying that I am *physically incapable*[5] of waking up in the morning, going to class, completing my coursework, applying for a job, and going to work and getting a paycheck each month, is quite a bold statement. These are very basic, everyday activities (e.g. getting up in the morning ... going to work, etc.), and they deny I am even *capable* of doing these things, even if I wanted to!

56.   As the old adage goes, extraordinary claims require extraordinary proof, and by their own admission, they have ZERO proof of this bold accusation regarding my lack of basic living

---

5   As opposed to simply being too *lazy* to do so

ability!

57. So even if this defense was properly before the Court (which it is not), it still fails on the merits.

### Rule 56(g)

58. Fed.R.Civ.P. 56(g) states "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."

59. If this Court does not grant the Motion for Summary Judgment in its entirety, I ask this Court to enter an order pursuant to this effect. It would save a tremendous amount of time if the Court were to limit the scope of trial, as well as the rest of discovery, to only those facts which the Court considered to be in genuine dispute.

### Conclusion

60. The Defendants made their own bed, and now they don't want to lie in it. They summarily declared that I cannot do some of the most basic day-to-day activities that come with simply *living life* (such as getting up the morning and completing tasks given to me by my boss and/or teachers), basing this finding on a complete absence of any evidence, direct or circumstantial, and now they simply do not want to admit they were wrong. The problem here is not that the material facts are in dispute; the problem is that the Defendants simply do not want to provide any funding for "David Stebbins" because they never want to do anything at all for "David Stebbins," ever, under any circumstances, simply because they don't like "David Stebbins." They would rather make up whatever excuse they can think of to avoid the consequences of their behavior than give "David Stebbins" any public benefits.

61. Wherefore, premises considered, I respectfully request that the Court enter summary

judgment in my favor, issue injunctions to the ARS to pay for my college education, issue an injunction to the State of Arkansas to permanently and perpetually cease and desist their usage of my litigation history as a factor in any of their decisions, and order the Defendants to pay compensatory and punitive damages to me in the grand total amount of $8,623.65 per week starting from December 17, 2015 until I begin enrollment in college, and any other relief to which I may be entitled.

62. So requested on this, the 18th day of October, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com