UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                    PLAINTIFF

VS.                         CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES            DEFENDANTS

### SUPPLEMENT TO [090] REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Supplement to Doc. 90, my Reply to the Defendant's Response in Opposition to my Motion for Summary Judgment.

**The difference between "unlikely" and "unable," and why the Defendants' excuse falls flat**

1. As far as the disability discrimination claim is concerned (as opposed to either of the retaliation claims), the Defendants appear to have hinged their entire defense on their assertion that I am not qualified to receive ARS benefits because … I am unlikely to succeed in the workforce. "And the determination of whether an individual is likely to succeed in the workforce is solely at the discretion of the ARS." See Doc. 16, Page 8 & Doc. 85, Page 12.

2. If the Defendants are to use my disabilities to say that I am not qualified, they have to show that, with or without reasonable accommodations, I *cannot* meet the essential qualifications for the public benefits. The essential qualification the Defendants claim I do not meet is "success in the workforce."

3. There is a huge difference between "being unlikely" to meet the essential qualifications, and "being unable" to meet them. If my disabilities simply make me "unlikely" to succeed, that does not mean I cannot succeed. I can still push through my disabilities and succeed despite them if I buckle down and persevere through sheer grit and determination.

4. It's a tale as old as time. Some underdog is constantly told he can't do something, only for him to shut everyone up by doing the very thing he was told he cannot do. We see it all the time in movies like Rocky, Sidekicks, The Theory of Everything, and many many others. Even in real life, we have stories like Zack Gowan, a real-life person who achieved his dream of being a professional wrestler despite having only one leg!

5. Even if the disability directly *impedes* an essential job qualification, that impediment can still be overcome. For example, citing a case law that I have already cited, look at Doane v. City of Omaha, 115 F. 3d 624 (8th Cir. 1997). In that case, Royce Doane wanted to be a police officer, but he had no vision in one of his eyes. I don't mean he was "legally" blind in one of his eyes; I mean he had precisely ZERO vision in one of his eyes! He was totally blind, not just legally blind. This, understandably, created some fear and apprehension among the City of Omaha that his reaction time and field of view might be a safety hazard to the other officers on the field, as well as civilians. See *id* at 628. That fear was 100% understandable. I absolutely sympathize with the City of Omaha in that respect.

6. However, despite these setbacks, Mr. Doane nevertheless earned passing marks on all the tests the City subjected police applicants to to test their field of vision and reaction time. See *id* at 628 ("Doane made the requisite showing that his disability does not prevent him from performing the essential functions of the job … Doane has made adjustments that compensate for his limited peripheral vision"). He had limitations, but he pushed through them through sheer grit and determination, just like Zack Gowan and just like all those underdog movies! He had to worker *harder* to achieve the same results, but he nevertheless achieved them.

7. The Americans with Disabilities Act protects citizens like this. Disabled citizens are entitled the opportunity to succeed in their goals despite their disabilities. If they try and fail,

then so be it. But the ARS does not have the right to deny me even so much as the opportunity simply on the *possibility* that my disabilities might cause me to fail.

8.  In order to claim that my disabilities make me unqualified, the Defendants must show that my disabilities make me *entirely incapable* of meeting the essential qualifications of the job!

9.  For example, if Royce Doane was completely blind in *both* eyes (not just one), then the City of Omaha would likely have won that lawsuit. There are no "adjustments" you can make in that circumstance to "compensate" for any lack of vision. Your vision cannot be "corrected to 20/20." No amount of perseverance or determination is going to allow you to see what's in front of you, let alone to the side. There is simply no way around it; you cannot do the job, period.

10. That is what the ADA requires for the Defendants to maintain that the plaintiff is not "otherwise qualified." The Americans with Disabilities Act does not, and never has, required a company or a government agency to provide benefits, services, or employment to a citizen who, by way of his disability, simply *cannot* meet the qualifications for the job. It does, however, forbid companies and state agencies from doing precisely what the Defendants are doing here: Denying benefits, services, or employment to citizens simply on the *possibility* that their disabilities *could* have some kind of *impediment* (but not complete blockage) on one or more of the qualifications, especially if they aren't going to actually test the applicant to see if his performance is in fact impeded.

11. The Defendants have given no indication that they believe me *entirely incapable* of obtaining gainful employment upon successful completion of a college degree program. Nothing whatsoever. No summary pleading, no arbitrary opinion, no *in absentia* medical assessment. Nothing. Nada. As far as the disability discrimination claim is concerned, the Defendant's entire claim of me being unqualified rests on their belief that my symptoms have the *potential* of

interfering with my vocational success!

12. Even Dr. Johnson's *in absentia* assessment of my medical records does not suggest that I cannot succeed in the workforce, using the word "may," rather than "will." When describing the "vocational implications," not only was she extremely vague as to exactly what my symptoms and disabilities might impede (e.g. simply saying that my impulsiveness might lead to "poor choices," but never giving any clarification beyond that, and many other examples besides this), but even if you ignore that part, she never stated that I was *incapable* of these things. She only stated that my symptoms "may" have these vocational impediments.

13. This is precisely what the ADA was originally intended to prohibit.

14. Therefore, even assuming the facts in a light most favorable to the Defendants, the Defendants have still completely curb-stomped my rights under the ADA.

### The role the alleged hostility played in the adverse action.

15. Attached to the Defendant's Response in Opposition were a collection of 5 exhibits. One of them – Exhibit C – was an affidavit from Amy Jones.

16. I spent the bulk of my reply documents explaining how everything the Defendants' said regarding my allegedly hostile behavior was a bald-faced lie made up by the Defendants after their Motion to Dismiss got denied to create the *illusion* of a nondiscriminatory motive.

17. However, on a motion for summary judgment, the Court must accept the evidence in a light most favorable to the Defendants. So Today, I wish to take the Defendants' Exhibit C at face value and see if their evidence in fact leaves a genuine dispute of material fact.

18. According to Amy Jones' sworn affidavit, she agreed to reconsider my application on December 9, 2015. See Paragraph 19 of that affidavit. Jones' second decision to deny me funding – occuring on December 16, 2015 – is documented in Paragraph 25 of that affidavit.

19. In between those two events, the only things that happened in between the re-opening of my case and the second decision to deny me funding were (1) calling me to have me tell them I was hospitalized at St. Bernards (see Paragraph 20), (2) btaining the records from HRA (see Paragraph 22), and (3) having Dr. Johnson review the records in my absence (see Paragraphs 23 & 24).

20. All the allegedly hostile behavior towards the defendants' themselves which they claim was a factor in their adverse action happened *before* Jones decided to reconsider my application.

21. So what exactly happened when Amy Jones decided to reconsider the application? Well, there are two ways we can look at the situation:

- **Scenario A**: This was a completely de novo review of the application, meaning that nothing that happened prior to the decision to reconsider carried any weight in her new decision.

- **Scenario B**: Although Amy Jones decided to consider my medical records, she nevertheless was still at least partially swayed by the alleged behavior from before.

22. If Scenario A is true, then we have yet another cut-and-dry case on our hands. At that point, the second decision to deny the application for funding – the only one that matters for purposes of this case – was still made exclusively on the grounds that my symptoms made me "unlikely" (but not unable) to succeed in the workforce. Then, when the Motion to Dismiss got denied, and the Court unequivocally explained to the Defendants that they cannot use the mere existence of some vague symptoms to systematically deny public benefits to an applicant, only then did the Defendants decide to dust off this previous excuse and try to retroactively insert it as justification for their second adverse action.

23. That, however, is just as frivolous, and just as pretextual, as if they had just made up the

complaints of hostile behavior from the ground up. Even if they weren't made up, it only matters in the slightest if they were actually a factor in the adverse action, which, if Scenario A is to be accepted, is not the case.

24.     So if Scenario A is what really happened, the Defendants are unquestionably guilty of discrimination and I am unquestionably entitled to relief.

25.     So instead, let's use Scenario B as the best case scenario, as we are required to do on a motion for summary judgment.

26.     That still does not save them. By their own admission, they were still willing to approve my application if my medical records suggested that I could succeed in the workforce. Even if we assume for the sake of argument that my application status was *weakened* because of the allegedly hostile behavior, it was still the symptoms which landed the killing blow.

27.     At that point, I am still entitled to relief. See Doane v. City of Omaha, 115 F. 3d 624, 629 (8th Cir. 1997) ("Once a plaintiff proves that an unlawful motive played some part in the [adverse action], the plaintiff is entitled to relief, including compensatory damages, declaratory judgment, and injunctive relief." internal citations omitted).

28.     The only thing that could even *help* the defendants at that point (even though it would not save them entirely) is if they would have made the same decision, even absent the impermissible factors (e.g. my statutorily protected activities and/or my symptoms). However, even that excuse is still lost. Even if we assume that my allegedly hostile behavior still played *a role* in their adverse action, by the Defendants' own admission, it was still their noticing of my symptoms and disabilities that struck the killing blow to my application.

29.     On a motion for summary judgment, the Court is required to view the facts in a light most favorable to the Defendants. However, it is not required to accept the Defendants' own confessi-

ons and admissions as false or inaccurate. When the Defendants admit to something, that something is undisputed for purposes of summary judgment. Here, the Defendants admit that A) my symptoms were indeed a factor in the adverse action, B) they do not have any affirmative evidence that my disabilities make me entirely incapable of succeeding in the workforce ... only "unlikely" to, and C) my application was only denied because of the symptoms. Therefore, I am entitled to full, non-restricted relief, including prospective injunctive relief and damages.

### Defendants' lack of evidence is admitted

30. On October 17, 2017, the defendants served me with a discovery response. See **Exhibit 1**. One of my discovery requests demanded that the Defendants produce ALL the evidence they had that any reasonable accommodations were considered, and why those accommodations were rejected. Bear in mind, I asked for ALL of the evidence they had! Every single last piece of it. I did not simply ask for what evidence they felt they needed, nor did I ask for the evidence they think I deserved to know about. I asked for all the evidence, period. If it existed, I wanted it.

31. As you can see, the Defendants raised no objections to the breadth of this discovery request. They instead simply proceeded to give an answer to it. This answer was "Please see Defendants' Response in Opposition to your Motion for Summary Judgment." This, by the Defendant's own admission, contained absolutely every piece of evidence in the entire universe that they used in reaching their decision.

32. In the Defendant's Response, the Defendant attached an affidavit giving the uncorroborated opinion of Amy Jones that my suggested accommodation[1] was not a reasonable accommodation. She offered absolutely no evidence to support her opinion, nor any explanation as to how she reached this opinion.

33. That, combined with the defendants' discovery response, means that, by the Defendant's

---

1 The accommodation of attending therapy simultaneously with college.

own admission, they came to the arbitrary and highly opinionated conclusion that my proposed accommodation is not reasonable, entirely on their own whim. There was never any evidence considered, no logic applied, nothing. There was not even the slightest attempt by the Defendants to look at the matter objectively. Amy Jones wanted the proposed accommodation to be unreasonable, and therefore, she declared it to be unreasonable. By the Defendant's own admission, there was never even the slightest attempt at anything beyond that.

34. I don't see how this could get any more black and white. The Defendants have confessed to discrimination at nearly every turn. They admit to using my disabilities as an excuse to deny me funding. They admit that they discarded the possibility of accommodations solely on their arbitrary and summary word. They admit that the outcome of the application would have been different but-for the symptoms.

35. What more do you need?!

## CONCLUSION

36. With nearly every passing day in this case, the Defendants make their discriminatory intent more and more obvious. Nearly everything they file with the Court, nearly every discovery request they give me, they add another layer of confession onto their own discrimination. First they admit that they based their adverse action on my symptoms, instead claiming that they get sole discretion to decide whether or not I am qualified. Then they admit that they do not even know for sure that I can be in college and complete my coursework. Now they *admit* (not just do fail to rebut) that their decision that my proposed accommodation is not reasonable is based on nothing more than their arbitrary and uncorroborated word!

37. It is clear that the Defendants are not going to stop making stuff up and arguing that their claiming it is all the evidence they need to make it true. They *need* to be held liable in order to

get them to stop doing that.

38. Wherefore, premises considered, I respectfully request that the Second Motion for Summary Judgment be granted.

So requested on this, the 1st day of November, 2017.

/s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com