US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 1 8 2017

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                  PLAINTIFF

VS.                    CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES          DEFENDANTS

## BRIEF IN SUPPORT OF MOTION FOR ADVERSE INFERENCE OR IN THE ALTERNATIVE FOR ADVERSE INFERENCE INSTRUCTION

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of my Motion for Adverse Influence or in the Alternative for Adverse Inference Instruction in the above-styled action.

### Facts

1. On December 5, 2017, the Court entered an order granting in part my Motion to Compel Discovery. The Court ordered the Defendants to produce electronic copies of all the Microsoft Word files that the Defendants typed in order to create my 130-page ARS file. See **Doc. 112**.

2. On December 11, 2017, the Defendants sent an email to me containing an electronic file of the 2-page document that purports on its face to be the recommendation from Leslie Johnson. During this email, as well as a court pleading filed that same day, Defense Attorney Christine Cryer stated that the act of transferring the Microsoft Word document from her computer to the thumb drive had caused the "date last modified" field to be updated. See **Doc. 114, ¶ 6**. See also **Doc. 114, Exhibit B**.

3. However, the Defendants' version of events is simply impossible. The simple bottom line is that transferring files from a computer to a thumb drive simply does not alter the metadata of that file. Attached to this Motion is a computer disc containing, not only the computer file

produced in response to the order compelling discovery, but also a video I created to demonstrate how the "date modified" is not changed simply by transferring the file to a flash drive, even if you change the title of the file!

4. Now, I understand that my explanations of how the transfer of files work is self-serving and interested. Also, I could have edited the video to make it *look* like the metadata is actually being preserved across the transfer. However, my descriptions are not uncorroborated. If this Court wonders if my descriptions are accurate, then the Court may use its own computer files on its own computers to confirm it. Follow my instructions step-by-step on your own computers, and you can see plain as day that the "date modified" is not changed by transferring from a hard drive to a flash drive.

### Defendants' duty of care was not honored.

5. But even if the Defendants could miraculously show that the metadata was lost as an unintentional consequence of transferring it to a hard drive, they still deserve to have sanctions imposed against them. Why? Because under the current circumstances, the Defendants had a duty of care to preserve the metadata. Any failure to do so is inherently an act of bad faith.

6. The case of Stevenson v. Union Pacific R. Co., 354 F. 3d 739 (8th Cir. 2003) provides the precedent. Even though the Defendants in that case had witnesses ready to testify that the deletion of their electronic data was done pursuant to the company's routine policies, the Court nevertheless refused to allow this evidence, striking it before the trial in a Motion in Limine. The Court's rationalization was that, because the electronic data was so important to that case, the Defendants owed a duty to the Plaintiff to preserve the audio recordings *despite* its routine policies. In other words, the Defendants had a common law tort duty to make an *exception* to its own data-deletion practices, and they simply failed to properly discharge this duty.

7.     Here, the Defendants do not even have that excuse. The Defendants do not appear to have any policies concerning the routine deletion of metadata. Instead, the metadata was deleted *in the course of* trying to provide the metadata to me!

8.     Therefore, the Defendants unequivocally deserve to be sanctioned as acting in bad faith in this case.

### Futility of the email attachment.

9.     The Defendants have also sent the file to me in an email attachment, telling the Court that this email attachment would "ensure [I] receive the original document." They are apparently hoping that I don't see right through their pathetic attempts at lying, so I won't advise the Court that this is an exercise in futility.

10.     As I demonstrated in the attached video, the metadata for the files is lost across an email attachment unless you use file compression. I am not receiving the "original" document by having it attached to an email. The Defendants most likely knew that. After all, as I demonstrated, transferring the file to a flash drive does not change the metadata, so they obviously got rid of the metadata on purpose.

11.     As such, their attempts to cover up their actions by sending the document via email attachment are most likely NOT motivated by a good faith effort to ensure I that I receive the "original document." Quite the opposite; it was motivated by an effort to create the *illusion* of a good faith effort to comply with the Court's order without actually doing so!

12.     Now, I know what the court is thinking: "How would the Defendants have *known* that the metadata would be lost in an email attachment? I personally did not even know what metadata even *was* until you filed your Motion to Compel Discovery with us! How were the Defendants supposed to instantly know the various quirks of how metadata preservation works?"

13. The answer to that question is ... because they already knew the metadata was in jeopardy already, which is the whole reason they purportedly used the email method in the first place! By their own admission, the email was merely Plan B, because Plan A – providing the computer file in a flash drive – did not go off without a hitch. At that point, don't you think it would be prudent to double-check to make sure Plan B actually works, and see if you need to come up with a Plan C! Don't you think it is outrageously asinine to just *assume* that Plan B will go off without a hitch, especially when you're only doing it in the first place because something went wrong when you tried to do Plan A? It is asinine enough to assume that Plan A will go off without a hitch and never bother coming up with a Plan B. But it is entirely inexcusable to actually have something go wrong in Plan A, resort to Plan B, and *then* just assume that everything will work fine even after something has already gone wrong!

14. This lends even further credence to the fact that the email was not sent as a means of ensuring that I got the "original document," but rather, merely to pretend like they were cooperating when they really weren't. They lack of thoroughness while implementing Plan B shows a complete lack of good faith on their part. It is the equivalent of a child shoving his toys into his closet rather than cleaning up his room for real.

**Their objections in the first instance are now shown to be in bad faith.**

15. When I first made this discovery request back in September, the Defendants initially objected to this discovery request on the grounds that it was burdensome, irrelevant, and redundant of discovery already produced. When filing my Motion to Compel Discovery, I gave the Defendants the benefit of the doubt that they did not know what metadata was (that is, after all, a very esoteric piece of knowledge). I gave them the benefit of the doubt that they would not be making this objection if they knew what metadata was.

16. The Defendants have attached a copy of the email they purportedly sent to me as an exhibit to their December 11, 2017 pleading with the Court (Doc. 119). This email is actually a forwarded conversation between Christine Cryer and Leslie Johnson.

17. Their email conversation went thusly:

> CRYER: Can you send it to me in word form?
> JOHNSON: Why do you need the word doc?
> CRYER: The Court has ordered me to produced copies of everything generated in Word. Stebbins wants to look at the metadata.
> JOHNSON: Ok. Here you go. Have a good weekend!

18. Wait a minute! So they DID know what metadata was after all?! Leslie Johnson did not initially understand why she had to produce the word file. But once Cryer explained to her that I wanted to look at the metadata, Johnson immediately knew what that meant and it instantly answered her questions about why the word file in particular was so important!

19. Well then, they had no excuse for arguing that my discovery request was not relevant!

20. Maybe you could argue that Christine Cryer only found out what metadata was because of this discovery dispute. But then, why would she expect Leslie Johnson to know about it? The only way Cryer would have expected Johnson to know about it is if it common knowledge amongst their social circle.

21. At this point, the Defendants lose the excuse that they were merely objecting in good faith. They can no longer argue that they did not understand the significance of the discovery requests. Now, it is revealed that Cryer knew full well what the significance of the discovery request was, and nevertheless objected to it anyway, knowing the objection was without merit, for the express purpose of keeping me from seeing the metadata.

22. This lends further credence that the Defendants' last minute loss of metadata was very much intentional.

## Clear evidence of revisions

23. In addition to providing the documents themselves, the Defendants also produced a screenshot purporting on its face to show a small portion of the file's metadata back before it was deleted by them. This document was simply named "Metadata."

24. As you can see from that 1-page document, the version that the Defendants purported on their face to contain eight (8) revisions! That means that there are seven (7) versions of this document that said something different. This Court has already determined that I have the right to see *exactly* what those previous revisions said, hence why it granted my Motion to Compel Discovery! However, because the Defendants deleted this metadata, it is impossible for me to see the previous versions.

## Purposeful deletion of metadata

25. So at this point, the odds are a million to one that the Defendants purposefully created a new version of this document, specifically to prevent me from being able to search the metadata. Transferring files from a hard drive to a flash drive *simply does not delete the metadata*! It just doesn't! You have to take extra steps to delete the metadata.

26. Even in the one in a million chance that the Defendants are telling the truth right now, and that the loss of metadata was lost due to the computer-to-flash drive transfer, the Defendants have offered zero evidence of this unprecedented phenomenon. They could have used screen capture software, just like I used, to show us in real time that the "date modified" does indeed get changed by doing that; if the transfer actually went off without a hitch the second time and preserved the metadata through the transfer while they were recording, then by all means, send me *that* file instead, and just don't show anyone the screen capture footage; nobody would have been any the wiser! Alternatively, they could have sent me the file over email, but using file

compression software to ensure that the metadata was preserved across the email attachment.

27. The Defendants had about a dozen different solutions to this problem. They opted for none of them. Their only evidence in their defense is the uncorroborated word of the defense attorney. It is not even the sworn affidavit of any witness; just the defense *attorney*, who is not even giving this statement under oath!

28. The Defendants' attitude been tragically consistent this whole case, and that is just sad. Time and again, the Defendants maintain that their version of events is correct solely because *they say it is*! Even in the motion to compel, they took it as a personal insult that I simply did not accept their word as sacrosanct (see Doc. 106, pp. 2-3: "Defendants ... object to Plaintiff's insinuation that they have been less than truthful"). It is infuriating!

29. As it stands, the preponderance of the evidence overwhelmingly indicates that the Defendants have purposefully suppressed the metadata, rather than it being by accident, and only *pretended* to make efforts to correct this deficiency by sending it via email because they had *hoped* that I would not realize that this would not do any good. The odds of that *not* being the case are one in a million, and even if that were the case, the Defendants' adamant and consistent refusal to provide any evidence besides their self-serving statements (which are not even sworn in even as-is) should eliminate what little judicial sympathy may remain for the Defendants' plight.

### What could they be hiding?

30. So with it established via million-to-one odds that the Defendants purposefully deleted the metadata, that leaves us with the question ... what could they possibly be trying to hide?

31. Bear in mind that they absolutely have to be trying to hide *something*. It is proven by million to one odds that they purposefully destroyed the metadata. They had to have some

motive for doing so. The case of Stevenson v. Union Pacific R. Co., 354 F. 3d 739 (8th Cir. 2003) had the Defendants asserting that their electronic data was destroyed pursuant to a routine clean-up process, but even then, the Court was not interested in entertaining their version of events[1]. In the instant case, the Defendants do not even have that excuse; by their own admission, the metadata was lost while they were in the act of sending the metadata to me! They clearly deleted the metadata for the express purpose of preventing me from seeing it, to the exclusion of all other motives.

32. So obviously, there was something they were trying to hide by destroying the metadata. The only question is ... what exactly were they hiding? At this point, we are reduced to speculation. The Defendants are not going to tell us what they wanted us to not see; they are not even going to admit to purposefully destroying the metadata! Even if they told us, why should we believe them? They would obviously just be trying to cut their losses in light of a smoking gun. So obviously, they are going to downplay the significance of the data they destroyed!

33. However, there are some aspects of the existing version of the document that give us a few hints.

34. I propose that the original version of this document contained the professional opinion of Leslie Johnson that I was indeed able to succeed in the workforce, and that I should be deemed eligible for ARS benefits. However, Amy Jones wanted to deny my application and insisted that Leslie Johnson change her recommendation. Over the course of seven (7) revisions, Leslie Johnson finally issued a recommendation that fully appeased her boss, and Amy Jones proceeded

---

[1] "Prior to trial, the plaintiffs filed a motion in limine, seeking to prohibit Union Pacific from calling witnesses to explain that it destroyed the tape and track maintenance records pursuant to its routine document retention policies. The district court granted the motion and, at the outset of trial, orally instructed the jury that the voice tape and track inspection records 'were destroyed by the railroad and ... should have been preserved.'" See *id* at 743.

to act on that recommendation, disregarding the previous versions.

35. That is quite a bold accusation, so let us take a look at the evidence I have to support that.

36. First, accepting that this is what they were trying to hide makes it consistent with their attitude this entire case. Since Day 1, the Defendants have made it clear that their adverse action was pre-judged without conducting any individualized analysis of my abilities. They never once tried to deny that their determination that I was "not eligible" was made in my absence and without any regard to the evidence I might have had to rebut their findings, no matter how arbitrary or discriminatory they may be. Even in this very case, the Defendants have repeatedly maintained that "the determination of who [meets our eligibility requirements] is solely at the discretion of the ARS." See **Doc. 16, p. 16, Doc. 85, p. 12,** and **Doc. 110, p. 14**. Accepting that, from Day 1, their decision to deny me funding was already predetermined and that they merely were seeking an excuse to retroactively justify their decision suddenly causes everything to make sense!

37. We have concrete evidence that there are seven (7) revisions of this document that I do not get to see because the Defendants deleted the metadata. What else could the defendants possibly have included in those previous versions that they do not want me to see?

## LAW AND DISCUSSION

38. In light of the Defendants attempts to destroy relevant and extremely probative evidence, sanctions are in order.

39. I ask that the Court to declare the fact undisputed in my favor that the original version of Leslie Johnson's recommendation contained the opinion that I was eligible for ARS benefits.

40. Federal Rule of Civil Procedure 37(e)(2)(A) grants the Court the authority to issue this sanction.

41. If this sanction is issued, the Defendants should also be prohibited from raising this argument at trial. Otherwise, such an adverse presumption makes no sense.

42. However, I would still ask for permission to raise for myself at trial the evidence that the Defendants committed this forgery. After all, their attempts to cover up the evidence are still relevant to destroying their overall credibility in the eyes o the jury, even if the evidence they tried to forge isn't.

43. The reason this sanction would appear to be the most appropriate is because ... they clearly did tamper with the documents! That is why the files have their "date modified" field showing that they had been modified during December 2017. This is almost certainly an intentional act since the odds of this happening exactly as the Defendants describe it are a million to one.

44. I would prefer this sanction. However, if the Court will not grant this sanction, I at least ask the Court to impose the sanction of ...

### Adverse Inference Instruction

45. This is the middle ground between forcing the Defendants to abandon their defense of hostile behavior altogether and not sanctioning them at all. The option of imposing this sanction is given in Federal Rule of Civil Procedure 37(e)(2)(B): "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation [the Court] may ... instruct the jury that it may or must presume the information was unfavorable to the party."

46. The case of Stevenson v. Union Pacific R. Co., 354 F. 3d 739 (8th Cir. 2003) is a case where this sanction was imposed and the imposition of this sanction was affirmed on appeal.

47. In that case, the District Court advised the jury at the *outset of trial* (not at the close of evidence, where most jury instructions happen) that the data was deleted and should have been

preserved. The Defendants in that case tried to call witnesses saying that they deleted the audio tapes pursuant to a routine practice, but they were stopped from calling those witnesses on a Motion in Limine. Here, the Defendants do not have even that excuse. They clearly deleted the metadata from these files *after* the Court had ordered them to produce the files!

48. However, there are two major caveats to this sanction.

49. First, the Defendants' bad faith is still proven beyond genuine dispute. By imposing this sanction instead of the one I actually prefer, we are allowing the defendants from waste time by advancing a version of events which has an extremely astronomical chance of yielding anything fruitful. It is the same logic behind the legal precedent that a mere scintilla of evidence from the nonmovant is insufficient to stave off a Motion for Summary Judgment; the Court must balance the parties' right to be heard against the cost to the taxpayers of providing the platform.

50. Second, this Court has announced its intention to rule on both parties' Motions for Summary Judgment simultaneously. This indicates that the Court plans to dispose of this case in its entirety at the summary judgment stage. If that is what the Court plans to do, then an adverse inference instruction to the jury would do us no good, since there will not be a jury.

51. So this sanction is obviously far less preferable than the sanction I requested earlier of an order outright presuming the evidence to be in my favor.

### Conclusion

52. Whatever this Court decides to do, please understand that I have proven in multiple ways that the Defendants almost certainly deleted the metadata on purpose. They knew from the beginning what the significance of my discovery request was, objecting to it solely to prevent me from seeing the metadata. When they finally had no choice and sent the computer files, they made sure to delete the metadata so I could not see their previous versions, and then *pretended*

like this was only an accident when million-to-one odds say that this is impossible. This court should issue the presumption that the older versions of this document that I cannot see would have shown that I was deemed eligible by Leslie Johnson for ARS benefits.

So requested on this, the 15th day of December, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com