US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 0 2 2018

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS     PLAINTIFF

VS.     CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES     DEFENDANTS

### BRIEF IN SUPPORT OF DAUBERT MOTION TO DISQUALIFY LESLIE JOHNSON

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of my Daubert Motion to Disqualify Leslie Johnson.

### FACTS OF THE CASE

1. On December 17, 2017, the Defendants denied my application for ARS benefits, in part because of the existence of a handful of symptoms.

2. The Defendants maintain that this determination was based off of a recommendation from Leslie Johnson, one of their licensed psychological examiners. See **Exhibit 3**.

3. Leslie Johnson did not examine me personally. See **Exhibit 1, Answer to Requested Admission No. 8**.

4. Leslie Johnson, by her own admission, based her recommendation solely on the fact that a handful of symptoms *exist*. No attempt was made to inquire into the scope of these symptoms, or to what extent they may or may not interfere with my vocational success. See **Exhibit 2**.

5. At no point in either of these affidavits do the Defendants outline any of the following conditions surrounding Dr. Johnsons's recommendation:

   (a) How the determination was based on any emprical data.

   (b) How the determination could be tested and proven false.

   (c) To what extent the determination was subject to peer review.

(d) What the margin of error was for Dr. Johnson's conclusion.

(e) Whether there were any standards controlling the procedure to ensure a fair, impartial, and double-blind outcome.

6. The Defendants made no attempt to fit any of these criteria. Rather, by their own admission, they decided they wanted to deny my application on December 9, 2015 (see **Exhibit 3, ¶ 19**), and then and only then did they search for my medical records in search of an excuse to justify their decision (see **Exhibit 3, ¶ 23**). Dr. Johnson never examined me personally. See **Exhibit 1, Answer to Requested Admission No. 8**.

## LAW AND DISCUSSION

7. In order for a witness to be allowed to provide expert testimony, it is not good enough that the witness merely have expert credentials. The testimony itself must meet a series of criteria to ensure the sort of authority that expert testimony usually entails. Expert credentials are merely one of those criteria.

8. The case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 US 579 (1993) states the other criteria. This is the case law that provides the controlling precedent in this motion.

### Emperically testable

9. First, the findings must be able to be tested empirically. See Daubert, supra at 593 ("The statements constituting a scientific explanation must be capable of empirical test"). This means that the theory must be able to be falsified and refuted using objective means. See Daubert, supra at 600 ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability").

10. This criterion is not met in the instant case; by Leslie Johnsons' own admission, her opinion that I cannot succeed in the workforce is based on absolutely nothing more than her

arbitrary determination. That is not "testable;" it is simply her arbitrary belief.

## Peer Review

11. It must be subject to peer review and publication. See Daubert, supra at 584 ("Petitioner's [expert testimony] were ruled to be inadmissible because they had not been published or subjected to peer review"). Although an individual diagnosis is not normally published (so as to protect patient confidentiality rights), it can still be peer reviewed. However, in order to be peer reviewed, the original author's thoughts and logic must be recorded with sufficient detail and specificity that another similarly-educated expert can understand the original author's reasoning.

12. For example, imagine if Galileo Galilee merely told people that he conducted "an experiment using canon balls," and, from this experiment, concluded that all objects free fall at the same speed regardless of weight. He would have been long forgotten, wouldn't he? It is only because he outlined his experiment step-by-step that it is now considered a well-documented law of physics.

13. While medicine is a different animal than physics, since one's diagnosis is dependent on the individual nature of each patient, that does not give the medical expert a free pass to document her thoughts any less thoroughly. Medical records need to be of sufficient detail that anyone trained to read them can tell whether the diagnosis was improvidently made or not.

14. Here, there was never any attempt to document jack squat. Leslie Johnson merely stated that (A) I have X, Y, and Z symptoms, and (B) therefore, I am not likely to succeed in the workforce. She made absolutely no attempt to document her conclusions in a way that even remotely lent itself to peer review. Therefore, her expert testimony should be disqualified.

## Known or potential error rate

15. "Additionally ... the court ordinarily should consider the known or potential rate of

error." See Daubert, supra at 594.

16. Here, it is impossible to tell what the margin of error is. There was no analysis. There was no medical diagnosis. Literally, Dr. Johnson just saw my symptoms, and decided "That's it. Stebbins is unlikely to succeed in the workforce."

17. Whatever the margin of error is, it is clear that it is astronomically high.

18. Indeed, the Defendants have actively avoided giving us any real margin of error by repeatedly arguing that "the determination of whether a person is likely to succeed in the workforce is solely at the discretion of the ARS." In other words, they believe that the margin of error for their own expert determinations is irrelevant; as long as they personally are satisfied with the expert's conclusions, that expert's margin of error carries no weight in federal judicial proceedings.

19. But that is clearly not the law. The Daubert precedent – which this very court has cited as binding precedent in its Amended Case Management Order (setting the deadline for "Daubert motions" at January 5, 2018) – clearly requires Courts to consider the margin of error for a particular scientific conclusion. Naturally, that requires that there be a clear margin of error, and the Defendants have gone out of their way to avoid that.

20. Therefore, they should suffer the consequences of their laziness by not being allowed to offer this expert testimony.

### Standards controlling the technique's operations

21. "[T]he court ordinarily should consider ... the existence and maintenance of standards controlling the technique's operation." See Daubert, supra at 594.

22. The ARS normally has standards to control the technique of the psychological examiner. One of these standards is for the applicant to be invited personally into the examiner's office for

an in-person evaluation of his abilities. However, this standard was sabotaged by the Defendants. See **Exhibit 1, Answer to Requested Admission No. 8**. They attempt to justify this sabotage by saying that it was necessary to protect ARS staff from harm. However, that does not detract from the fact that Dr. Johnson's recommendation becomes chronically unscientific without any direct, personal observations to back up her claims.

23. If they were maintaining that my allegedly threatening statements were the sole cause of the adverse action, maybe they could have been justified. However, they are not arguing that. By the Defendants' own admission, they had decided to reconsider my application and take my personal qualifications into account. See **Exhibit 3, ¶ 19**.

24. This means that their expert testimony has to be admissible under the Daubert standard. No allegations of physical threat are going to excuse that. They may excuse a refusal to even entertain my other qualifications, but if you are going to entertain them, you cannot take shortcuts.

25. And yet, by the Defendants' own admission, that is exactly what they did.

26. Therefore, the Defendants should be punished by not being allowed to offer this testimony.

### The Defendants could have corrected this deficiency, but they didn't.

27. In my first Motion in Limine in this case, I asked the Court to prohibit the Defendants from offering any evidence that I am unlikely to succeed in the workforce. My grounds for that order was that the Defendants' expert witness never examined me personally.

28. With the filing of that motion, the Defendants were unequivocally put on notice that I objected to the Defendants' expert opinions not being based on in-person testimony. Sure, the motion without prejudice for being premature, but that does not detract from the fact that the

Defendants were unequivocally notified that I intended to object to Leslie Johnson's evidence! If anything, the fact that the motion was only denied *without prejudice* should have been a sign to the Defendants that this was still going to be disputed in this case!

29. At that point, the Defendants had a variety of options at their disposal, including but not limited to, summoning me to an in-person mental examination pursuant to Federal Rule of Civil Procedure #35. This would have corrected nearly every deficiency I have complained about in this Brief, almost overnight.

30. However, the Defendants did not do this. They never made even the slightest effort to correct any real or perceived deficiencies in the quality of their evidence. Rather, they have gone out of their way to actively avoid presenting any evidence beyond their arbitrary and self-serving statements. My numerous attempts to obtain discovery from them have merely been answered by simply deferring me either to the documents ARS 1-130 that were produced in response to my first request for production ... or to their responses in opposition to my Motion for Summary Judgment! It is almost as if they take my expectation that they show evidence to back up their claims as a personal insult!

31. In fact, they DO take that as a personal insult! In fact, they even admit to such in their response in opposition to my Motion to Compel Discovery! See Doc. 106 ("Defendants ... object to Plaintiff's insinuation that they have been less than truthful in producing valid documentation").

32. So even if the Court may have had even a little sympathy for the Defendants' alleged concerns of their safety (and I do mean "alleged") to the point where the Court may have even the slightest sympathy for their hesitance to make the psychological examination as thorough as the Daubert precedent requires, that sympathy should quickly dissipate when you realize that the

Defendants had means of rectifying this issue right in front of them the whole time ... and made the conscious choice not to take them ... especially when their only apparent reason for not doing so is that they are personally offended at the prospect of having to prove stuff, like a bunch of spoiled princesses!

**Granting this motion is dispositive of this case.**

33. If this motion is granted, the Defendants would be prohibited from offering Leslie Johnson's testimony at trial.

34. This means that the Defendants are left without any evidence with which to defend themselves. Their entire defense is dependent on the fact that they were acting within their discretion when they made the determination that I am unlikely to succeed in the workforce due to my symptoms.

35. Without Leslie Johnson's testimony, the Defendants no longer have a leg to stand on. At that point, they simply based their decision to deny the application on the fact that I have disabilities and nothing else. They would no longer have any arguable basis for claiming that their adverse action was based on justifiable, good faith concern that I would not meet their eligibility requirements (assuming that this eligibility requirement even was an essential one to begin with; see Section IV, Sub-Sections 2 & 3 of my Brief in Support of Response in Opposition to Defendants' Motion for Summary Judgment, as well as Section III, Sub-Sections 1 & 2 of my Brief in Support of Second Motion for Partial Summary Judgment).

36. Therefore, even if the question of whether I was "qualified" to receive ARS's benefits might have been in genuine dispute before, it no longer is so. Therefore, I am entitled to judgment as a matter of law on the claim of disability discrimination. Therefore, the Defendants' Motion for Summary Judgment should be denied and both of my Motions for Summary

Judgment should be granted.

## CONCLUSION

37. In the end, the Defendants have only themselves to blame. They chose to make their determination of my abilities without examining me first, and in doing so failed to meet any of the criteria for admissible expert testimony. They dug their own grave. They could have gotten themselves out of this grave by calling me to a mental examination pursuant to Rule of Civil Procedure #35, but they didn't. They have no one to blame but themselves. They *deserve* to have their star witness be stricken because they are the ones who made her testimony inadmissible.

Wherefore, premises considered, I respectfully request that the Defendants be prohibited from calling Leslie Johnson as an expert witness in the above-styled action.

So requested on this, the 29th day of December, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com