US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**JAN 0 2 2018**

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                    PLAINTIFF

VS.                          CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES            DEFENDANTS

## **MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for Partial Summary Judgment in the above-styled action.

1.      My Second Motion for Summary Judgment (Doc. 79) is still pending. However, now that discovery is now over, new grounds for summary judgment are now appropriate, which are completely independent of the previously-stated grounds.

2.      To be clear, I am not withdrawing the Second Motion for Summary Judgment. Both motions request the same relief (summary judgment entered in my favor), but they argue completely separate grounds for this relief. Either one may be granted or denied independently of the other.

3.      Also, I was already planning on filing this motion once the discovery had ended. The Defendants filed their Motion for Summary Judgment on December 4, 2017. Just because I am filing my Response to their motion alongside this filing does not mean I should not be allowed to argue my case. I still deserve the opportunity to explain how I am entitled to judgment as a matter of law when the Defendants have not met their burden of proof.

4.      In this motion, I ask the Court to declare the Defendants to be liable for disability discrimination under Title II of the Americans with Disabilities Act. If this motion is granted and the currently-pending Second Motion for Summary Judgment is denied, then this motion would

still leave the ADA Retaliation claim, the First Amendment Retaliation claim, as well as the scope of damages, to continue to be litigated.

5.    In particular, the Defendants have not met their burden of proof that "likely to succeed in the workforce" is an essential qualification for ARS benefits.

6.    That's right! Although I bear the burden of proof that I am capable of meeting all the essential eligibility requirements with or without reasonable accommodations, it is the *Defendants* burden to prove that something even is an essential eligibility requirement in the first place!

7.    Since the Defendants have offered no evidence that "likely to succeed in the workforce" is an *essential* requirement, whether or not I am in fact capable of meeting that requirement is irrelevant.

8.    Since it is uncontested that my symptoms and disabilities are the most likely primary cause behind my being unable to succeed in the workforce (if I even do lack that ability), I am therefore entitled judgment as a matter of law on the claim of Title II disability discrimination.

9.    Second, the Defendants have produced no admissible evidence (the keyword being "admissible") that I engaged in any hostile behavior with them over the phone. All the evidence they have offered is blatant hearsay. The original declarants of these statements have not been listed as witnesses, and since the time for discovery is now over, it is no longer appropriate to introduce new witnesses.

10.    My Second Motion for Summary Judgment argues that, even if these accusations of hostility were true, it still does not relieve the Defendants of even a little liability, thanks to the precedent of Doane v. City of Omaha. I stand by that argument. I am not withdrawing it. However, now that discovery is now over, the Defendants are forever precluded from offering

any evidence that is not hearsay to even prove I did it, relevant or otherwise. Even if it is indeed relevant, they cannot prove that they did it because the evidence they have for it is unusable.

11.     Because they have no admissible evidence that I actually engaged in any hostile behavior with them, they have no excuse for not examining me personally to determine if I am indeed capable of succeeding in the workforce. Since they are required under well-established ADA law to perform an individualized assessment before making this determination, any failure to do so – if it is even excusable at all – must be justified by a very, very good excuse. If the failure to do so is excusable at all, common sense dictates that the Defendants would need at least *some* evidence to support their excuse ... and that means the evidence has to be admissible. Since their evidence in support of their excuse is hearsay, that excuse is lost.

12.     Third, the Defendants have not shown that my proposed accommodation (the accommod-ation of attending college and therapy at the same time) is unreasonable. Binding precedent in the Eight Circuit clearly states that I am only required to show that an accommodation is *possible*, and then the burden of proof shifts onto the Defendants to show evidence that this accommodation is *unreasonable*. Furthermore, binding precedent in the Eight Circuit states that I meet my initial burden simply by proposing an accommodation. Since I have clearly done that in this case, the Defendants hold the burden of proving that the accommodation is unreasonable. Since the Defendants have offered absolutely no evidence whatsoever to show that, I am entitled to judgment as a matter of law on that issue.

13.     Because the Defendants have not fulfilled their burden of proving any of these three claims, it is legally immaterial whether I have any evidence of the elements that I hold the burden of proof on.

14.     Please find, attached to this motion, the following exhibits:

- **Exhibit 1** – Pages 18-21 of the Defendants' "Arkansas Rehabilitation Services Policy And Procedure Manual"

- **Exhibit 2** – Defendant's Answer to Plaintiff's Fifth Interrogatories and Requests for Production.

- **Exhibit 3** – Defendants' Answer to Plaintiff's Request for Admissions.

- **Exhibit 4** – rejection letter from Amy Jones (filemarked by the Defendants as ARS 130).

- **Exhibit 5** – Client Contact Note from Lorraine Miller

- **Exhibit 6** – Client Contact Note from Caterina Matheny

- **Exhibit 7** – Client Contact Note from Alana Walls

- **Exhibit 8** – Client Contact Note from and Anonymous Writer

- **Exhibit 9** – Client Contact Note from Amy Jones

- **Exhibit 10** – Defendant's Answer to Plaintiff's First Interrogatories.

- **Exhibit 11** – Affidavit from Amy Jones

- **Exhibit 12** – Page 341 of the "Arkansas Rehabilitation Services Policy and Procedure Manual"

- **Exhibit 13** – An email I sent to Kevin Cook while my application was still ongoing, requesting additional funds for extenuating circumstances.

- **Exhibit 14** - a webpage from the website of the United States Bureau of Labor Statistics, showing the median salaries of those in the field of computer and information technology. You can view this webpage yourself at the following URL: https://www.bls.gov/ooh/computer-and-information-technology/home.htm

15.    I am also filing a Brief in Support of this Motion, as well as a Statement of Undisputed Facts, the contents of which are hereby incorporated by reference.

16.     Wherefore, premises considered, I respectfully request that the Court enter judgment in my favor on the claim of Title II ADA discrimination, declare the Defendants liable to me, award costs incurred, and any other relief to which I may be entitled.

So requested on this, the 29th day of December, 2017.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

## III. ELIGIBILITY OR INELIGIBILITY DETERMINATION

ARS has the sole responsibility for determining eligibility for VR Services. The ARS Commissioner has delegated the responsibility of determination of eligibility to the counselor.

For all individuals applying for services, ARS will conduct an assessment to determine eligibility and priority for services if the state is operating under an Order of Selection. 34 C.F.R. §361.42(a.)(2.)

Eligibility requirements will be applied in compliance with Titles VI and VII of the Civil Rights Act, The Americans with Disabilities Act and without regard to age, religion, disability, sex, race, color or national origin. The eligibility requirements are applicable without regard to the particular service need or anticipated cost of services required by an applicant or the income level of an applicant or applicant's family. Eligibility determination will be made within 60 days of the application date. Exceptional and unforeseen circumstances beyond the control of ARS that prevent the Agency from making an eligibility determination within 60 days will require ARS and the individual to agree on a specific extension of time. 34 C.F.R. §361.41 (b-1) (i)

Basic eligibility requirements are:

1. A determination that the individual has a physical or mental impairment defined as an injury, disease or other condition that results in persistent functional limitations: resulting from amputation, arthritis, autism, blindness, burn injury, cancer, cerebral palsy, cystic fibrosis, deafness, head injury, heart disease, hemiplegia, hemophilia, respiratory or pulmonary dysfunction, mental retardation, mental illness, multiple sclerosis, muscular dystrophy, musculo-skeletal disorders, neurological disorders (including stroke and epilepsy), spinal cord conditions (including paraplegia and quadriplegia), sickle cell anemia, specific learning disability, end-stage renal disease, or another disability or combination of disabilities determined on the basis of an assessment for determining eligibility and vocational rehabilitation needs to cause comparable substantial functional limitation.

2. A determination that the individual's physical or mental impairment constitutes or results in a substantial impediment to employment for the individual. A substantial impediment to employment exists when the impairment and the resultant limitation: Prevent the individual from obtaining a job consistent with their abilities; significantly interfere with preparing for employment consistent with their abilities, need for special accommodations or technology to perform essential job duties or barriers to job retention; for example loss of job due to impairment or unable to perform essential job duties.

3. A presumption that the individual can benefit in terms of an employment outcome from the provision of VR services. An individual is presumed capable of achieving an employment outcome, unless documented with clear and convincing evidence is obtained documenting for example: the severity of the diagnosis would preclude not obtainable that employment cannot be obtained due to the severity of the individual's disability.

Exh. 1

4. A determination that the individual requires VR services to prepare for entrance into, engage in, or retain gainful employment consistent with the individual's strengths, resources, priorities, concerns, abilities, capabilities and informed choice. 34 C.F.R. § 361.42 (i.-iv.) An individual is expected to require multiple VR services that will have a substantial impact on the individual's disability and resultant functional limitations or reduce the impediment to employment to allow the applicant to prepare for, obtain, retain or regain employment consistent with the individual's capabilities and abilities and the individual services cannot access these services without VR intervention.

Each individual who meets the eligibility requirements is presumed to be able to benefit from VR services in terms of an employment outcome, unless determined, based on clear and convincing evidence, that the applicant is incapable of benefiting in terms of an employment outcome due to the severity of the disability. Clear and convincing evidence requires a high degree of certainty in order to conclude the individual is incapable of benefiting from services in terms of an employment outcome. The term clear means unequivocal. Given this standard, the use of a standard intelligence test only, would not constitute clear and convincing evidence. A functional assessment of the individual's abilities, capabilities and capacity to perform work situations through the use of trial work experience with appropriate supports and training would assist in defining clear and convincing evidence.

## PRESUMPTIVE ELIGIBILITY SSDI/SSI RECIPIENTS

Social Security Disability Income (SSDI) beneficiaries and Supplemental Security Income (SSI) recipients are considered to be individuals with a significant disability (Category II) and presumed eligible for VR services, if the intent of the individual is to achieve an employment outcome. The employment outcome must be consistent with the unique strengths, resources, priorities, concerns, abilities, capabilities, interests and informed choice of the individual. The Agency is responsible for informing individuals through the application process that the individual must intend to achieve an employment outcome in order to receive VR services. No additional tests or procedures may be used to assess disability in order to determine eligibility.

Note: The individual who is presumed eligible as a recipient of SSI/SSDI and who intends to achieve an employment outcome is eligible unless clear and convincing evidence demonstrate that the individual is incapable of benefiting from vocational services in terms of achieving an employment outcome due to the severity of the disability.

Although an SSDI/SSI recipient is considered an individual with a significant disability, presumptive eligibility for VR services does not entitle the individual to priority for services over other individuals with significant disabilities or most significant disabilities if the state is operating under an Order of Selection.

If an applicant for VR services asserts that he or she is eligible for Social Security benefits, but is unable to provide appropriate evidence, such as an award letter, to support that assertion, ARS must verify the applicant's eligibility by contacting the Social Security Administration. This verification must be made within a reasonable period of

time that enables ARS to determine the applicant's eligibility for VR services within 60 days of the individual submitting an application for services. 34 C.F.R. §361.42 (a.)(3.)

**Note:** Information in this section should not be construed to create entitlement to any vocational rehabilitation service.

## PROCEDURES - SSDI/SSI ELIGIBILITY

- The counselor will obtain verification of SSI/SSDI benefits and will be attached to ECF, i.e. awards letter, benefit's check, verification from Social Security Administration.
- **Exception:** The counselor must document in the case record the justification for completing a Certificate of Eligibility/Ineligibility before verification is obtained. (See procedures on page III-3.)
- Complete the Certificate of Eligibility/Ineligibility for VR, Trial Work Experience, or Extended Evaluation (EE) services (See Appendix E) The certification statement for the Certificate of Eligibility/Ineligibility is **"This individual meets the presumptive eligibility requirement."** The area for limitations does not need to be completed.
- The counselor must be aware of the Ticket to Work Program. If the Applicant is eligible under "presumptive eligibility", the counselor must follow guidelines outlined in Ticket to Work in Appendix B (Special Programs).
- The applicant can be scheduled for additional testing, or medical, psychological, or psychiatric evaluation based on informed choice to determine functional limitations if this information is needed in the development of the IPE.

## COMPLETION OF PRELIMINARY DIAGNOSTIC STUDY

The counselor completes the preliminary diagnostic study when enough information is obtained to write the Certificate of Eligibility/Ineligibility.

## CERTIFICATION OF ELIGIBILITY/INELIGIBILITY

### ELIGIBILITY

The counselor must include a certification statement signed and dated in each individual's record of services indicating eligibility for VR, Trial Work or EE services.

The Certificate of Eligibility/Ineligility must be completed simultaneously with an individual's acceptance for VR services, Trial Work or EE. As a minimum, the Certificate of Eligibility/Ineligibility will contain the client's name, date of eligibility, and a statement of primary or secondary disability with resulting limitations.

### PROCEDURES –ELIGIBILITY

- To determine functional limitations, priority should be given to existing information.
- Complete the Certificate of Eligibility/Ineligibility for VR, Trial Work Experience, or Extended Evaluation services signed and dated by the counselor. (See Appendix E)

- The Certificate of Eligibility/Ineligibility will be generated by the case management system. (See Section X)
- The case management system will generate the status move after required data is keyed for Status 10 (VR) or Status 06 (Trial Work Experience or Extended Evaluation).

**Note: Under presumptive eligibility, the Certificate of Eligibility/Ineligibility will be completed with documented verification that the consumer is a recipient of SSI/SSDI benefits.**

## INELIGIBILITY

When clear and convincing evidence establishes that an applicant does not meet the VR eligibility conditions or intervening reasons prevent eligibility determination (i.e. applicant does not follow through with assessment, individual physical, educational, or medical records unavailable, applicant does not appear for scheduled appointments, for plan development, etc.) the counselor must include a Certificate of Eligibility/Ineligibility in the individual's record of services. This Certificate of Eligibility/Ineligibility will be dated and signed by the counselor. The counselor will notify the applicant in writing of the action taken, or by other appropriate modes of communication consistent with the informed choice of the individual, including the reasons for the ineligibility determination. When appropriate, referral will be made to other agencies and programs that are part of the One-Stop service delivery system under the Workforce Investment Act.

**PROCEDURES – INELIGIBILITY - See Closure Section VIII. Closed Not Rehabilitated.**

## APPEAL/INELIGIBILITY DETERMINATION

The individual may appeal the ineligibility determination. The counselor will provide the individual with information on the means, by which an appeal can occur, including informal and formal due process procedures, such as administrative review, mediation and review by an impartial hearing officer. The counselor will also provide the individual with information regarding services available from the Client Assistance Program and how to contact the Client Assistance Program. (See Due Process Section XIV) 34 C.F.R. § 361. 43(c)

**Note: An Annual Review is required on a case that has been closed as incapable of achieving an employment outcome due to the severity of disability. This review need not be conducted if the individual refuses to participate, no longer resides in the state, or the whereabouts are unknown, or the individual's medical condition is rapidly progressive or terminal. 34 C.F.R. § 361.43(e)**

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**DAVID A. STEBBINS**                                              **PLAINTIFF**

**v.**                            **CASE NO. 3:17-CV-03092-TLB**

**STATE OF ARKANSAS, et al.**                                     **DEFENDANTS**

### DEFENDANTS' RESPONSES TO PLAINTIFF'S
### FIFTH SET OF INTERROGATORIES AND REQUESTS
### FOR PRODUCTION OF DOCUMENTS

COME NOW Defendants State of Arkansas, Arkansas Rehabilitation
Services, and Amy Jones, by and through their attorneys, Attorney General Leslie
Rutledge and Senior Assistant Attorney General Christine A. Cryer, and for their
Answer to Plaintiff's Fifth Set of Interrogatories and Requests for Production of
Documents, state as follows:

**INTERROGATORY NO. 1:** The Defendant's primary defense on the merits
to this case is that A) likelihood to succeed in the workforce is an essential eligibility
requirement and B) I fail to meet that requirement.

In the Magistrate Judge's Recommended Partial Disposition in this case
(Doc. 51), he states the following:

> "[T]he 'qualified individual' inquiry does not end even if the Court
> accepts Defendants' contentions that likelihood of success in the
> workforce is an essential requirement for obtaining benefits from ARS
> *and* that Stebbins failed to meet that requirement. Title II defines a
> qualified individual with a disability as a person who meets the public
> entity's essential eligibility requirements *with or without reasonable
> modifications* (emphasis added). Thus, by the express word of
> Congress, it is not necessary for a person to meet all eligibility

$Exh.2$

requirements. instead*[sic]* , if a proposed modification of those requirements is reasonable, a person can be a qualified individual." (citations and quotations omitted).

I am of the opinion that a "reasonable modification" to your requirements would be to grant ARS benefits to any disabled citizens of Arkansas who have any chance – even a slight chance – of succeeding in the workforce. Only those who have absolutely no chance whatsoever of succeeding in the workforce would be denied ARS benefits under this proposed policy. That way, you are still fulfilling your mission; you are still providing vocational assistance to disabled Arkansas citizens; nobody who was previously eligible for benefits would no longer get the benefits. Instead, you would merely be expanding the number of people who would get those benefits.

So here is my interrogatory: Please explain, with as much specificity and clarity as possible why this proposed modification would not be reasonable.

**RESPONSE NO. 1:** Objection – vague and ambiguous. Without waiving said objections, it appears you are asking the Defendants to interpret the Proposed Findings DE 51) which they are not required to do. If that is not what you are asking them to do, then the Defendants do not quite know how to respond to this Interrogatory. There still needs to be some form of assessment in order to determine eligibility. Eligibility must be determined prior to determining what benefits should be awarded to an individual. Defendants cannot make a blanket statement or agreement that all persons with any sort of disability are eligible, which is what it appears you are asking to be done.

2

In December 2015, it was determined that vocational rehabilitation services were not appropriate for you at that time. You were informed what needed to be done in order to be reassessed for eligibility. (See ARS 122 – 123; 130)

**INTERROGATORY NO. 2:** All the contents of the first interrogatory are hereby incorporated by reference.

Please state, with as much specificity and clarity as possible, why no other modification in your policy would be reasonable.

**RESPONSE NO. 2:** Defendants object to this interrogatory as vague and ambiguous. Without waiving said objection, Defendants do not believe that the policy needs modifying. You were deemed ineligible. You were informed, in writing, what you needed to do in order to be reassessed for eligibility. Those reasons have previously been furnished to you.

**REQUEST FOR PRODUCTION NO. 1:** Produce all evidence in your possession that you used to reach the determinations you reached in your responses to the above two interrogatories.

**RESPONSE NO. 1:** See the documents previously produced to you in response to your first Request for Production of Documents.

**REQUEST FOR PRODUCTION NO. 2:** You have already provided what you consider to be evidence that I am "unlikely" to succeed in the workforce. Please produce all evidence in your possession that shows that I would still fail to meet your eligibility requirements even if you adopted the proposed modification in your requirements mentioned in Interrogatory No. 1.

3

**RESPONSE NO. 2:** Objection – this request asks the Defendants to assume facts which are not in evidence, and then to produce documents in support of hypotheticals. Without waiving said objection, Defendants have produced the documents they have in their possession. They have not looked for documents to dispute your hypotheticals, nor are they required to.

**INTERROGATORY NO. 3:** In Dr. Johnson's Recommendation (Pages 85-86 of the ARS's files that were produced in response to Plaintiff's first Request for Production), Dr. Johnson lists a variety of symptoms recorded in my medical records, including, but not limited to, impulsiveness, depression, and emotional intensity. She further opined that these symptoms have the potential to interfere with my vocational rehabilitation.

> In your Brief in Support of Motion to Dismiss (Doc. 16), you state the following:

> "Stebbins does not deny that he suffers from the above symptoms. Rather, he alleges that Defendants' articulation of the above symptoms as reasons he would not benefit from ARS services, is an 'open confession' that they discriminated against him. On the contrary, these symptoms are illustrative of why Stebbins could not, without some further counseling services and a maintained period of stability which ARS recommended, succeed in the workforce."

You repeat this argument, verbatim, in your Brief in Support of Response in Opposition to Motion for Summary Judgment (Doc. 85, Page 16).

However, you also admit, in your response to Request for Admission No. 8, that you did not examine me personally to determine the full extent of my abilities or inabilities. In other words, by your own admission, you decided that I was

4

unlikely to succeed in the workforce solely on the *existence* of the aforementioned symptoms.

So here is my Interrogatory: Please clarify which of the following is actually your position in this case:

1.  Any person with these symptoms, no matter how slight or benign the symptoms may be, will ever be capable of obtaining gainful employment, under any circumstances, in any career field, no matter what accommodations may or may not be provided, except by eliminating the symptoms entirely. An individual analysis of the scope of the individual's symptoms and/or his unique abilities and inabilities is entirely redundant, as no amount of individualized inquiry would ever reveal that any person with these symptoms could ever achieve gainful employment. The only hope of **_any person_** with these symptoms ever achieving gainful employment is if he cured himself of the symptoms entirely, and no longer had them

2.  I may in fact be able to achieve gainful employment with some assistance from ARS. However, these symptoms present some obstacle to obtaining gainful employment. To be eligible for ARS benefits, a citizen must have absolutely no disability-related roadblocks or obstacles to his path to employment, no matter how insignificant, slight, or easily overcomeable those roadblocks or obstacles may be. The slightest difficulty in achieving gainful employment automatically makes me unqualified for ARS services.

3.  To be ineligible for ARS benefits, my symptoms have to be so severe that the odds of me obtaining gainful employment are astronomical. The listed symptoms do not automatically mean that anyone who has them is necessarily unable to obtain gainful employment. The ability to obtain gainful employment depends on the severity of the individual's symptoms, and that severity differs from individual to individual. However, because the ARS has *decided* that my symptoms are indeed that severe, that declaration, alone, without more, causes that fact to become undisputed truth, even if those same symptoms of the same severity by an otherwise identical applicant would still be eligible for ARS benefits without the ARS's arbitrary determination. Your determination cannot be reviewed or

5

overturned by anyone, not a federal court of competent jurisdiction, or anyone else, solely because YOU are the one who said it.

Please state which of the three is your position in this case.

**RESPONSE NO. 3:** Objection – this interrogatory is vague, ambiguous and argumentative. Defendants object to your mischaracterization "by your own admission, you decided that I was unlikely to succeed in the workforce solely on the *existence* of the aforementioned symptoms."

Without waiving said objections, Defendants have previously stated the reasons you were denied eligibility. In addition, Ms. Jones' letter to you explained what you needed to do in order for ARS to reassess your eligibility at a later date. You did not do those things.

**REQUEST FOR PRODUCTION NO. 3:** Page 18 of the ARS's Policy and Procedure Manual states that the first basic eligibility requirement for ARS benefits is thus:

"A determination that the individual has a physical or mental impairment defined as an injury, disease or other condition that results in persistent functional limitations: resulting from amputation, arthritis, autism, blindness, burn injury, cancer, cerebral palsy, cystic fibrosis, deafness, head injury, heart disease, hemiplegia, hemophilia, respiratory or pulmonary dysfunction, mental retardation, mental illness, multiple sclerosis, muscular dystrophy, musculo-skeletal disorders, neurological disorders (including stroke and epilepsy), spinal cord conditions (including paraplegia and quadriplegia), sickle cell anemia, specific learning disability, end-stage renal disease, or another disability or combination of disabilities determined on the basis of an assessment for determining eligibility and vocational rehabilitation needs to cause comparable substantial functional limitation."

Please produce all evidence in your possession that says that I do not meet this eligibility requirement. If the evidence is located in the documents you have already provided (namely, ARS 001-130), then please state which pages contain this evidence and quote the relevant evidence verbatim.

Alternatively, you may concede that I meet this eligibility requirement. If you do that, there is no need for you to respond to this Request for Production.

**RESPONSE NO. 3:** Please see bates-numbered documents ARS 0001 – 00130 as taken in totality.

**REQUEST FOR PRODUCTION NO. 4:** Page 18 of the ARS's Policy and Procedure Manual states that the second basic eligibility requirement for ARS benefits is thus:

> "A determination that the individual's physical or mental impairment constitutes or results in a substantial impediment to employment for the individual. A substantial impediment to employment exists when the impairment and the resultant limitation: Prevent the individual from obtaining a job consistent with their abilities; significantly interfere with preparing for employment consistent with their abilities, need for special accommodations or technology to perform essential job duties or barriers to job retention; for example loss of job due to impairment or unable to perform essential job duties."

Please produce all evidence in your possession that says that I do not meet this eligibility requirement. If the evidence is located in the documents you have already provided (namely, ARS 001-130), then please state which pages contain this evidence and quote the relevant evidence verbatim.

Alternatively, you may concede that I meet this eligibility requirement. If you do that, there is no need for you to respond to this Request for Production.

**RESPONSE NO. 4:** Please see bates-numbered documents ARS 0001 – 00130 as taken in totality.

**REQUEST FOR PRODUCTION NO. 5:** Page 18 of the ARS's Policy and Procedure Manual states that the second basic eligibility requirement for ARS benefits is thus:

> "A presumption that the individual can benefit in terms of an employment outcome from the provision of VR services. An individual is presumed capable of achieving an employment outcome, unless documented with clear and convincing evidence is obtained documenting for example: the severity of the diagnosis would preclude not obtainable that employment cannot be obtained due to the severity of the individual's disability."

Please produce all evidence in your possession that says that I do not meet this eligibility requirement. If the evidence is located in the documents you have already provided (namely, ARS 001-130), then please state which pages contain this evidence and quote the relevant evidence verbatim.

Alternately, you may concede that I meet this eligibility requirement. If you do that, there is no need for you to respond to this Request for Production.

**RESPONSE NO. 5:** Please see bates-numbered documents ARS 0001 – 00130 as taken in totality.

**REQUEST FOR PRODUCTION NO. 6:** Page 19 of the ARS's Policy and Procedure Manual states that the second basic eligibility requirement for ARS benefits is thus:

> "A determination that the individual requires VR services to prepare for entrance into, engage in, or retain gainful employment consistent with the individual's strengths, resources, priorities, concerns, abilities, capabilities and informed choice. 34 C.F.R. § 361.42(i.-iv.) An

8

individual is expected to require multiple VR services that will have a substantial impact on the individual's disability and resultant functional limitations or reduce the impediment to employment to allow the applicant to prepare for, obtain, retain or regain employment consistent with the individual's capabilities and abilities and the individual services cannot access these services without VR intervention."

Please produce all evidence in your possession that says that I do not meet this eligibility requirement. If the evidence is located in the documents you have already provided (namely, ARS 001-130), then please state which pages contain this evidence and quote the relevant evidence verbatim.

Alternatively, you may concede that I meet this eligibility requirement. If you do that, there is no need for you to respond to this Request for Production.

**RESPONSE NO. 6:** Please see bates-numbered documents ARS 0001 – 00130 as taken in totality.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By: _____

Christine A. Cryer
Ark. Bar No. 2001082
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 683-0958
Fax:    (501) 682-2591
Email: christine.cryer@arkansasag.gov

Attorneys for Defendants

9

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**DAVID A. STEBBINS**                                           **PLAINTIFF**

**v.**                    **CASE NO. 4:16CV545 JM**

**STATE OF ARKANSAS, ARKANSAS**                        **DEFENDANTS**
**REHABILITATION SERVICES, AND**
**AMY JONES**

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## REQUESTS FOR ADMISSIONS

COME NOW Defendants, State of Arkansas, Arkansas Rehabilitation

Services, and Amy Jones, by and through their attorneys, Attorney General Leslie

Rutledge and Senior Assistant Attorney General Christine A. Cryer, and for their

Answer to Plaintiff's Requests for Admissions, states as follows:

**REQUEST FOR ADMISSION NO. 1:** Plaintiff has disabilities including,

but not limited to, Asperger Syndrome and depression.

**ANSWER NO. 1:** Admitted.

**REQUEST FOR ADMISSION NO. 2:** Plaintiff has engaged in various civil

rights and discrimination lawsuits in the past.

**ANSWER NO. 2:** Admitted. Plaintiff provided this information voluntarily.

**REQUEST FOR ADMISSION NO. 3:** The Defendants knew about the

lawsuits mentioned in Requested Admission No. 2.

$Exh.3$

**ANSWER NO. 3:** Admitted. Plaintiff provided this information voluntarily.

**REQUEST FOR ADMISSION NO. 4:** In December of 2015, Plaintiff applied with the Defendants – specifically the Arkansas Rehabilitation Services – for funding for college.

**ANSWER NO. 4:** Admitted.

**REQUEST FOR ADMISSION NO. 5:** The application mentioned in Requested Admission No. 4 was denied by Amy Jones.

**ANSWER NO. 5:** Denied. The Plaintiff was ineligible.

**REQUEST FOR ADMISSION NO. 6:** The adverse action spoken of in Requested Admission No. 5 was motivated, at least in part, by the statutorily protected activities mentioned in Requested Admission No. 2.

**ANSWER NO. 6:** Denied. The Plaintiff was ineligible.

**REQUEST FOR ADMISSION NO. 7:** The adverse action spoken of in Requested Admission No. 5 was motivated, at least in part, by the disabilities mentioned in Requested Admission No. 1.

**ANSWER NO. 7:** Denied. The Plaintiff was ineligible.

**REQUEST FOR ADMISSION NO. 8:** The medical expert who recommended that the disabilities mentioned in Requested Admission No. 1 would interfere with Plaintiff's vocational efforts never actually examined Plaintiff personally.

**ANSWER NO. 8:** Admitted. A licensed psychological examiner reviewed his records on two different occasions. The examiner spoke to her supervisor, who felt it was unsafe for her to meet with plaintiff in person due to safety issues, specifically due to his behavior toward the staff from the time of the initial application for services.

**REQUEST FOR ADMISSION NO. 9:** The Defendants, when engaging in the adverse action spoken of in Requested Admission No. 5, never considered whether any reasonable accommodations may have overcome this deficiency.

**ANSWER NO. 9:** Denied.

**REQUEST FOR ADMISSION NO. 10:** From July 5, 2015 through August 4, 2016, Plaintiff was enrolled as a student at North Arkansas College.

**ANSWER NO. 10:** Denied.

**REQUEST FOR ADMISSION NO. 11:** During the enrollment spoken of in Requested Admission No. 10, Plaintiff thoroughly demonstrated that, despite medical opinion (that was never even based on any personal observations) spoken of

3

in Requested Admission No. 8, he was indeed very much capable of thriving in college.

**ANSWER NO. 11:** Denied.


**REQUEST FOR ADMISSION NO. 12:** Despite the irrefutable evidence spoken of in Requested Admission No. 11 that plaintiff was, indeed, fully capable of being in college, Amy Jones nevertheless refused to re-evaluate Plaintiff's application.

**ANSWER NO. 12:** Object to the form of the question. Without waiving said objection, this request is denied.


**REQUEST FOR ADMISSION NO. 13:** Plaintiff, at the time of his application, expressed a desire to major in either computer science or information technology.

**ANSWER NO. 13:** Unknown, therefore this request is denied.


**REQUEST FOR ADMISSION NO. 14:** The average nationwide (not statewide, but nationwide) salary for people with bachelor's degrees in computer science and/or information technology is $87,985.71 per year.

**ANSWER NO. 14:** Unknown, therefore this request is denied.

**REQUEST FOR ADMISSION NO. 15:** Amy Jones engaged in the retaliation mentioned in Requested Admissions Nos. 5 & 6 knowing full well that Plaintiff's litigation history was protected by the First Amendment.

**ANSWER NO. 15:** Denied.

**REQUEST FOR ADMISSION NO. 16:** The State of Arkansas and all her agents and officers will never stop discriminating and retaliating against Plaintiff for his statutorily protected activities, unless they are forced to, solely because they do not like Plaintiff.

**ANSWER NO. 16:** Denied.

**REQUEST FOR ADMISSION NO. 17:** The symptoms which formed the basis of the Defendants' denial of services was caused by the State of Arkansas' own illegal and corrupt actions.

**ANSWER NO. 17:** Denied.

**REQUEST FOR ADMISSION NO. 18:** The Defendants believe they are above the law.

**ANSWER NO. 18:** Denied.

Respectfully submitted,

5

LESLIE RUTLEDGE
Attorney General

By: _Christine A. Cryer_ (signature)

Christine A. Cryer
Ark. Bar No. 2001082
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 683-0958
Fax:    (501) 682-2591
Email: christine.cryer@arkansasag.gov

## CERTIFICATE OF SERVICE

I, Christine A. Cryer, hereby certify that on 25th day of August, 2017, I mailed this document by U.S. Postal Service to the following:

David A. Stebbins
123 West Ridge Street, Apt. D
Harrison, AR 72601

_Christine A. Cryer_ (signature)

Christine A. Cryer

6

# STATE OF ARKANSAS



*Asa Hutchinson*
Governor

*Chansse Childers, Ph.D*
Director

**Arkansas Career Education**
**Division of Rehabilitation Services**
**Alan McClain, Commissioner**

4058 NORTH COLLEGE STE 150
FAYETTEVILLE  AR 72703
(479)582-1286

http://www.arsinfo.org
An Equal Opportunity Employer

December 17, 2015

David Stebbins
123 W. Ridge
D
Harrison, AR  72601

Dear David Stebbins:

Your case and records have been carefully reviewed and assessed by ARS.  It has been determined that vocational rehabilitation services are not appropriate at this time.

The Licensed Psychological examiner has reported that a referral to a local mental healthcare provider is strongly recommended. Mr. Stebbins would likely benefit from treatment and the support of a therapeutic relationship. Efforts to work with Mr Stebbins should be coordinated with his treatment providers. His vocational success will depend on him stabilizing and effectively managing his psychiatric issues. In order for Mr. Stebbins to be appropriate for ARS services he should be able to demonstrate a period of stable functioning. He will also need to provide documentation from his mental healthcare providers that his symptoms are well-managed and they agree he is ready for training, school or work.

After you have meet the requirements for vocational rehabilitation services and can provide documentation of treatment, stability and recommendations from providers that you are ready for training, school or work, we will reassess your vocational service needs.

Best Regards,
AMY JONES CRC
District Manager

*Exh. 4*

# Client Contact Note

Client Name:     David Stebbins

Date:            12/04/2015
Description:      Client Contact

Whose Note:      LORRAINE MILLER CRC

For Program:     VR
Status:          02

Type of          Phone
Contact:

**Flag this Contact Note?**

Note:
I was asked to speak with David on this date. He was quite agitated, and (I assume) wanted to speak with a supervisor about his counselor. Our District Manager was not available and I was asked to talk to him. I was told by the person answering his call that he had been "yelling" at her. When I picked up the phone and asked him his name, and how to spell it, etc., he asked if he could give me his number so I could call him back, which I promptly did. He sounded very, very anxious, was breathing hard, talking very fast, etc. At one point, I counseled with him on trying to calm himself down. He was upset because he had requested an exception to the service provision policy so he could get his school expenses paid. He wants to go to Arkansas Tech in Russellville, and will need to live in the dorm, and go to summer school since he would have to give up his apartment in Harrison. I asked what he wants to study, and he said computers. I inquired about his taking some online classes, but he did not think there were many he could take. He asked if I thought his request for ARS spending more than the allowed amount would be approved, and I told him I had no idea about that. I told him I seldom ask for an exception, and the requests aren't always approved. He wanted a different counselor, and said he wanted one that would be in Harrison more. I told him there was only one other counselor and I was not certain how many days she was in the Harrison office, as a large territory was served out of that office. He was most upset because he said his counselor had told him he would let him know on Thursday about his request for services exceeding the

$Exh.5$

allowed amount. He said it was unprofessional that his counselor had not let him know since he had said he would tell him on Thursday. I explained that maybe his counselor had not been able to discuss the situation with his supervisor yet. At any rate, I did tell him I would talk to his counselor and ask him to call him today, and if he could not, I would try to call and update him on his request. He said he wanted a phone call, not an email.   LM

Assign this as a task to:

# Client Contact Note

Client Name:       David Stebbins

Date:              12/08/2015
Description:        Client Contact


Whose Note:        CATERINA MATHENY

For Program:       VR
Status:            02

Type of            Phone
Contact:

Flag this Contact Note?

Note:
David call looking for his Counselor Kevin Cook, and ask regarding information did we receive the medical records. I told him we have not received records. He ask who didn't send the information and I told who didn't send yet and he would try to find out why at 2:20pm,  then call back at 3:20pm in a high voice yelling and would not calm down, client state that he call Crossroads Medical Clinic and was hand up on him, tried again his call wouldn't go through, I had to forward the call to Alana Walls to help with the client. ccm

Assign this as a task to:

Exh. 6

# Client Contact Note

Client Name:     David Stebbins

Date:            12/08/2015
Description:      Case Note

Whose Note:      ALANA WALLS

For Program:     VR
Status:          02

Type of          Phone
Contact:

Flag this Contact Note?

Note:
CRC was transferred a phone call around 3:25 from Mr. Stebbins. Mr. Stebbins sounded short of breath and emotionally upset as was noticeable from his rapid speech and volume. Mr. Stebbins was questioning why Mr. Cook has not made any progress in his case and what else he needed to provide the agency to send him to a doctor for a diagnosis. CRC explained to him the need for a documented disability from a doctor in order to be determined eligible. Mr. Stebbins' verbal behavior and temper continued to escalate and CRC told him that she did not have to listen to his abusive language and that if he would calm down an attempt would be made to explain our eligibility policy. He continued to ask the same questions regarding why the information he had already supplied was not enough. He began to yell and CRC told him that she was not going to continue the conversation, wished him a good afternoon and hung up. A call was made to Amy Jones, District Manager, advising her of the telephone encounter.

Assign this as a task to:

$Exh. 7$

# Client Contact Note

Client Name:    David Stebbins

Date:           12/08/2015
Description:     Client Contact


Whose Note:

For Program:    VR
Status:         02

Type of         Phone
Contact:

                                    Flag this Contact Note?


Note:
aa McGehee Received call from client around 2:20 p.m. on 12/08/2015 and
he was very rude and yelling. He was insisting to talk to Kevin Cook and I
tried to explain Kevin was not in the office. He would get quite and start
whispering like he had someone else to talk to but it sounded very strange as
he was doing the whispering.I ask him to please calm down so I could explain
and he would not stop so I told him to hold please so I could possibly get him
help and he was still screaming as I put him on hold and I transferred the call
to Caterina at this point because he did not want to listen to me at all.

Assign this as a task to:  |  |

Exh. 8

# Client Contact Note

Client Name:  David Stebbins

Date:  12/16/2015
Description:  closure narrative

Whose Note:  AMY JONES CRC

For Program:
Status:

Type of
Contact:

Flag this Contact Note?

Note:
David's case was closed status 08 on this date after determining that he is not feasible for VR services at this time. David's behavior to both Fayetteville and Harrison staff has been hostile at every encounter. David did not want to cooperate in giving his medical information but relented that we could send an ROI to his last place of treatment, St. Bernard's Behavioral unit. Once records were received the RIDAC examiner reviewed records and concluded that David was not feasible for VR services at this time. Based on the Mr. Stebbins interaction with myself and staff, past records and history, and Mr. Stebbins refusal for treatment, I have determined him ineligible for services. I will notify Mr. Stebbins of this decision. I will alert the Harrison office staff to be on alert. AJ

Assign this as a task to:

$Exh. 9$

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

DAVID A. STEBBINS                                    **PLAINTIFF**

v.                     **CASE NO. 4:16CV545 JM**

STATE OF ARKANSAS, ARKANSAS                **DEFENDANTS**
REHABILITATION SERVICES, AND
AMY JONES

## DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES

COME NOW Defendants State of Arkansas, Arkansas Rehabilitation Services, and Amy Jones, by and through their attorneys, Attorney General Leslie Rutledge and Senior Assistant Attorney General Christine A. Cryer, and for their Answer to Plaintiff's Interrogatories, states as follows:

**INTERROGATORY NO. 1:** State the names, addresses, phone numbers, and (if applicable) e-mail addresses of every person the Defendants intend to call as a witness or who may have relevant evidence.

**ANSWER NO. 1:** Defendants have not yet decided who they intend to call as witnesses at trial. Once a final decision has been made, they will supplement this response.

At a minimum, Defendants intend to call the following: (a) David Stebbins, 123 West Ridge Street, Apt. D, Harrison, AR 72601, unknown ph#, stebbinsd@yahoo.com.; (b) Amy Jones, M.S., CRC, AR Department of Career Education, Arkansas Rehabilitation Services, 715 W. Sherman, Suite E Harrison,

*Exh. 10*

AR 72601, (870) 741-7153, amy.jones@arkansas.gov; (c) Kevin Cook, AR Department of Career Education, Arkansas Rehabilitation Services, 715 W. Sherman, Suite E Harrison, AR 72601, (870) 741-7153, kevin.cook@arkansas.gov; (d) Leslie S. Johnson, MS, Licensed Psychological Examiner, 4058 North College Avenue, Fayetteville, AR 72703, unknown ph# or email address. Further, Defendants will consider calling any witness identified by Plaintiff, or any individuals identified in the documents produced in discovery or in any other pleadings in this case.

**INTERROGATORY NO. 2:** State, in as much detail as possible, everything you considered when denying Plaintiff's application for ARS funding. Please understand that this Interrogatory requests *absolutely everything* that was considered; if something is not listed in response to this interrogatory, it will be presumed that it was not a factor.

**ANSWER NO. 2:** Defendants object to the wording of this Interrogatory, and assumed presumptions made at the end. Without waiving said objection, Plaintiff was not denied ARS funding. Services are planned after an assessment has been completed and eligibility determined. After eligibility is made, an individualized plan for employment (IPE) is written. All services planned are based on the specific employment outcome. Funding for services depends on availability of resources, comparable benefits and other factors. Plaintiff was determined ineligible for ARS services. This determination was based on Amy Jones' assessment of Plaintiff's inappropriate and hostile interactions with the staff, his medical and psychological

2

reports and refusal for treatment. All of those factors lead Ms. Jones to believe that Plaintiff would not benefit in terms of an employment outcome from the provisions of VR services.

**INTERROGATORY NO. 3:** I am of the belief that the Defendants denied my application for ARS funding in whole, not just in part, because of my disabilities and statutorily protected activities. I am of the belief that the consideration of any other factors is truly impossible because the Defendant does not know anything else about me, except the fact that I am "the guy who files lawsuits," meaning that there is nothing else the Defendants could possibly consider, even if they wanted to.

To either prove or disprove this, please state everything the Defendants know about the Plaintiff, no matter how big or small. If nothing is listed in response to this interrogatory, it will be presumed that it was not a factor.

**ANSWER NO. 3:** Defendants object to the wording of this Interrogatory, and assumed presumptions made at the end. Without waiving said objection, ARS is required to conduct an assessment to determine eligibility and feasibility of VR services. We do not discriminate against anyone's race, religion, disability, age, gender, criminal background, or any other circumstance.

**INTERROGATORY NO. 4:** Please state, with as much detail as possible, the factual bases for each of the defenses listed in Paragraphs 25-35 of the Defendant's Answer to Complaint (Doc. 61).

**ANSWER NO. 4:** Discovery is still on-going at this time. Once discovery has been further developed, the Defendants will supplement this response. Defendants

would, however, refer Plaintiff to the documents provided in Response to Plaintiff's

First Set of Request for Production of Documents, as they will likely serve the basis

for one or more affirmative defenses.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By: _Christine A. Cryer_

Christine A. Cryer
Ark. Bar No. 2001082
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 683-0958
Fax: (501) 682-2591
Email: christine.cryer@arkansasag.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Christine A. Cryer, hereby certify that on 21 st day of September, 2017, I
mailed this document by U.S. Postal Service to the following:

David A. Stebbins
123 West Ridge Street, Apt. D
Harrison, AR 72601

_Christine A. Cryer_

Christine A. Cryer

4

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                        PLAINTIFF

v.                          CASE NO. 4:16CV545 JM

STATE OF ARKANSAS, ARKANSAS                   DEFENDANTS
REHABILITATION SERVICES, AND
AMY JONES

## AFFIDAVIT OF AMY JONES

I, Amy Jones, am competent to testify and have personal knowledge regarding the statements contained in this Affidavit, do hereby state and verify the following:

1.  I am employed by the Arkansas Department of Career Education as a Rehabilitation Area Manager for Arkansas Rehabilitation Services.

2.  I have held this position for 4 years as Manager, 13 years prior as a VR counselor and 17 years total with ARS.

3.  I supervise Offices in Harrison and Fayetteville.

4.  I am familiar with the file for David A. Stebbins.

5.  To the best of my knowledge, I first became aware of David Stebbins on or about December 4, 2015. I received a telephone call from Lorraine Miller. Ms. Miller is a Counselor with our office. She informed me of her conversation with David. **ARS 62-63**

6.  On December 8, 2015, according to the notes entered into David's file that day, David called ARS around 2:20 p.m. and spoke with Emma McGehee,

1



$Exh. II$

an ARS administrative assistant in the Harrison Office. According to the notes, David was screaming at her and noted uncommon phone behavior. He was insisting on talking with Kevin Cook, his counselor in Harrison. Ms. McGehee transferred his call to another person because David did not want to talk with her. **ARS 64**

7. David next spoke with Caterina Matheny, another administrative assistant in the Harrison Office, around 3:20 p.m. that same day. Ms. Matheny informed David that we have not yet received the medical records we had requested from various medical facilities. David reported that he had attempted to call Crossroads Medical Clinic to follow up on ARS' records request, but that they hung up on him. Ms. Matheny forwarded the call to Alana Walls, a counselor in the ARS Harrison Office to see if she could assist David. **ARS 65**

8. Ms. Walls spoke with David around 3:25 p.m. She noted David's unusual and alarming communication with her. David was questioning why Mr. Cook had not made any progress in his case. Ms. Walls explained to David that ARS needed documentation from a doctor establishing that he has a disability in order to determine eligibility. Ms. Walls documented that David became verbally abusive. David asked why the information he had already supplied was not enough. David began to yell and she told him she was hanging up. **ARS 66**

2

9.  Ms. Walls contacted me by telephone and reported the conversation she had just had with David. Ms. Walls reported that she was concerned for her safety and the safety of her staff in the Harrison Office. **ARS 67**

10. After speaking with Ms. Walls, I made contact with David. During this conversation, David displayed the same communication behaviors that other staff had reported. He said he was angry at the government and that explained a bit of why he was mad at ARS – because they are the government. I explained the process for eligibility and plan development to David again. I asked him about his past college experience. David reported that he had been thrown out of the U of A for making threats in 2007. He reported that he then went to North Arkansas College and that the teachers provided him accommodations by pulling him aside to explain his behavior. David was unable to complete most of his semesters. **ARS 67**

11. David reported he'd been seen by St. Bernard's Medical Center in Jonesboro in April 2015, but had received no follow up services since that time. I asked him about his discharge report and recommendations. He reported that he'd been told to go somewhere for counseling, and did one time, but that was it. I expressed my concern for his well-being and mental stability based on the conversation we were having. Throughout the conversation he maintained his escalated voice and rapid breathing and extreme agitation. I asked about his family or any support system he

3

might have so I could contact them regarding my concerns. David reported that he hated his family. He said he cannot control his anger, especially when he cannot get any answers. I explained ARS' system and answered all of his questions. I told him I'd speak with Mr. Cook and the psychological examiner and would try to call him back tomorrow. **ARS 67-68**

12.   I then spoke with Leslie Johnson, a Licensed Psychological Examiner, about David. I often speak with Ms. Johnson about potential as well as current clients. Ms. Johnson said she did not think David needed to be scheduled in any office at this time due to his instability. **ARS 68**

13.   I then called our Chief of Field Services Carl Daughtery and explained the situation to him. Mr. Daughtery said they needed to contact the Harrison Police Department to notify them of hostile communication reported to him from David Stebbins so that the necessary authorities would be on alert in the event of a crisis. He also suggested we contact a psychiatric facility for mandated reporting regarding their concerns for David's well-being. **ARS 68**

14.   I called the Harrison ARS Office and told them to keep doors from the lobby to the office area locked at all times. If David were to show up, they were to call the police. I also instructed them that if David were to call the Harrison ARS Office, he was to be directed to me. **ARS 68**

4

15. Alana Walls contacted the Harrison Police Department to make a report of David's unusual behavior. **ARS 70**

16. The following day, David emailed Mr. Cook. He was asking to know what the details of his update were. **ARS 60**

17. I performed a review of the partial hospital records that David provided to Mr. Cook on December 1, 2015. In the records, the doctor reported that David did not and would not provide them with a medical history. The records further stated that David was arrested for domestic battery against his father. David reported to the doctor that he was thrown out of the U of A for making threats. DM read court documents and found very disturbing facts about the case. David made threats to numerous employees at the U of A to the point of terroristic threatening. **ARS 71**

18. Based on David's actions/inappropriate communication with ARS staff, I did not believe that David was mentally stable enough at that time for a Vocational Rehabilitation program. I also felt that he was a physical threat to my staff and did not feel comfortable for setting him up for a Rehabilitation Initial Diagnosis and Assessment (RIDAC) or sending him to anyone's office.

19. I initially made the decision to close the case that day; however, I decided to reconsider that decision. I can't say for sure now what changed my mind. I believe that I was alarmed by David's behavior and was concerned about it from the reports I was receiving from many of the office

5

staff regarding their interactions with David and the conversation I had personally had with him. On December 9th in the morning I had stated that I was going to close the case after the conversation I had had with David the previous evening and had the chance to read about the U of A report he had told me about the previous day. I believe that I felt at that time David's behavior was potentially more dangerous than I originally feared. It's not as though no one has ever been yelled at by a client but I have never had so many calls, emails or concerns regarding one person's interaction with the staff members.

20.   I called David to speak with him about my findings. I explained that I had reviewed his medical documentation again and that I wanted to clarify where the remainder of his most recent visits were (post April 2015). I asked David where he was treated / transferred to from the ER in Jonesboro. David said that he was treated for 1-2 weeks at St. Bernard's Behavior Clinic. He said he was released from their clinic on April 30th. I explained that I would like to review those records because I believed they would have his latest psychiatric evaluation on file. I also wanted to see what his discharge papers recommended for further or ongoing treatment. I told David I would request all of his records from St. Bernard's and would notify him once I had the records. ARS 72

21.   Emma McGehee received a call from Vantage Point that morning at approximately 11:45 a.m. They reported that David had called their office

6

and was very rude and hateful demanding they send his records to ARS. **ARS 76**

22. Also on December 9, 2015, Ms. Walls contacted the Northwest Arkansas Regional Hospital and asked to speak with someone in their Psychiatric Unit. She was informed that their adult unit was not open or operational at that time. She was referred to Health Resources of Arkansas in Harrison. Ms. Walls called their facility and related the information about David to Renae. She also faxed the information we had received from David. The information was related to these agencies in an effort to protect David from self-harm or in the event there may have been a threat of harm to office personnel. **ARS 77 – 78**

23. I asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on David. I wanted her input in determining the feasibility of VR (vocational Rehabilitation) services/training for David. This was not the first time I have asked Ms. Johnson to review records. I routinely asked her to assist with document reviews.

24. After her review, Ms. Johnson provided me with her conclusions and recommendations. In her opinion, as of December 2015, David was not appropriate for vocational rehabilitation services. Ms. Johnson strongly recommended a referral to a local mental healthcare provider for David. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues. Further, in order for

7

David to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work.   **ARS 85 - 86**

25.  On December 16, 2015, I made the determination that David was not feasible for VR services at that time.  I based my decision on several factors:  (a) his behavior to both Fayetteville and Harrison staff was hostile at every encounter; (b) David did not want to cooperate in giving his medical information but relented that they could send a request for records to his last place of treatment – St. Bernard's Behavioral Unit; and (c) a Licensed Psychological Examiner reviewed his records and concluded that David was not feasible for VR services at that time. **ARS 121**

26.  That same day, I wrote to David and informed him of my decision.  I informed him of his right to request an administrative review of the decision, as well as an opportunity for a fair hearing. **ARS 122 – 123**.

27.  I wrote David a second letter on December 17, 2015.  I again explained my reasoning for determining him to be ineligible for services at that time. **ARS 130**

28.  I did not deny David Stebbins vocational rehabilitation due to his previous filings of civil rights lawsuits.  I did not base my determination that David was ineligible for services on his prior civil litigation.

8

29. I am aware that David has claimed that I discriminated and retaliated against him. This is not true.

30. I am aware that David claims he was automatically qualified for ARS funding because he is an SSI recipient. This is not accurate.

31. For all individuals applying for services, ARS will conduct an assessment to determine eligibility. There is a "presumptive eligibility" for SSD/SSI recipients. The presumption means that the process will not be delayed for the gathering medical records. The "presumption" does not mean that the individual does not still have to be assessed, because the assessment will still occur.

32. David's assessment (history of his interaction with ARS staff members, past records and history, and David's refusal for treatment) made him ineligible for services in December 2015.

33. I am also aware that David claims that no "reasonable accommodations" were considered for him. He now suggests that a "reasonable accommodation" would have been to have allowed him to attend college while simultaneously attending therapy for his symptoms. I do not find that to be a reasonable accommodation.

34. In December 2015, I felt that the provision any ARS services to David would potentially jeopardize the safety of any ARS vendor paid to provide services. I felt that David's untreated mental health and instability could be further aggravated / worsen given the stressors of college training,

9

employment, or any involvement with the public at his current mental state, and the risk for David to cause harm to himself or others was too great a risk to take. I felt that without mental health treatment and a period of mental stability David would not benefit in terms of an employment outcome from the provision of our services. Our services are specially designed and funded to assist eligible individuals to obtain and / or maintain employment.

FURTHER AFFIANT SAYETH NOT.

AMY JONES

ACKNOWLEDGMENT

STATE OF ARKANSAS )

) ss

COUNTY OF Washington)

Subscribed and sworn to before me, a Notary Public, on this 10th day of October, 2017.

Notary Public

My Commission Expires:

KARLA SUE YOCHUM
NOTARY PUBLIC – ARKANSAS
WASHINGTON COUNTY – #12367515
My Comm. Expires Sept. 9, 2018

## Exceptions to Service Provision Policy

The provision of VR services is based on the rehabilitation needs of the individual, as those needs are identified in the IPE and consistent with the individual's informed choice. Although it is not the intent of ARS to limit services to any individual, thresholds (maximum allowable amounts) have been established for some services. ARS recognizes that some individuals with disabilities have unique needs, which may need to be considered as an exception to the normal policy. These individuals are informed and provided an opportunity to request an exception to service provision policies due to extenuating circumstances.

Special approval by the District Manager is necessary for an exception. The District Manager may approve an exception to the threshold (maximum allowable amount) for a specific service.

The individual is informed of the policy of exceptions to service provision policy and the procedure to request an exception by the Agency. This information is available on the application for services and in the Client Handbook that is provided to each applicant.

### PROCEDURES – EXCEPTIONS

- When the counselor becomes aware of the client's extenuating circumstances, the counselor will inform the individual of the procedure to request an exception to a service provision policy.
- The counselor will complete Part 1 of the Request for Exception to Service Provision Policy form to inform the District Manager of the extenuating circumstances that might justify an exception to the service provision policy. (See Request for Exception to Service Provision Policy form)
- After a review of the request for the exception, the District Manager will respond to the Counselor with the decision by completing Part 2 of the Request for Exception to Service Provision Policy form. The District Manager will provide a copy to the Chief of Field Services.
- The counselor will contact the client by telephone, letter or email to arrange an appointment to discuss the District Manager's decision.
- The counselor will document in the case notes the action taken.
- The individual will be informed of the right to appeal the outcome of the decision if not in agreement

$Exh, 12$

| Subject: | RE: Another extenuating circumstance |
| From: | David Stebbins (stebbinsd@yahoo.com) |
| To: | Kevin.Cook@arkansas.gov; |
| Date: | Wednesday, December 2, 2015 6:01 AM |

I've looked up the costs of attendance to see how much extra money I'll need. Take a look at these two links:

http://www.atu.edu/academics/catalog/colleges/applied_sciences/dept_comp_info_sci.html
www.atu.edu/stuaccts/tuitionfees.php

As you can see from the first link, the semester where I'll have the most credit hours is the second freshman semester, where I'll have 17 hours.

According to the second link, that means my cost of attendance, per semester, will be ...
$3,655 for tuition
$731 in student fees
$1,596.00 for a residence hall (because remember, I don't have a car).
$15 for a mandatory P.O. box, and
$1,274.00 for a meal plan that lets me have two meals per day.

Add it all up, and that comes out to $7,271.00 per semester.

I can probably get the maximum pell grant. However, A) that doesn't help me in the summer semester (because as I said before, I absolute HAVE to take summer semesters because I won't have a home to go back to), and B) that still puts me $4,383.50 in the red, per semester.

So, I would need $16,038 per year from you. That amounts to an increase of $11,038 in "extenuating circumstances" funds.

-------------------------------------------
On Tue, 12/1/15, Kevin Cook <Kevin.Cook@arkansas.gov> wrote:

Subject: RE: Another extenuating circumstance
To: "David Stebbins" <stebbinsd@yahoo.com>
Date: Tuesday, December 1, 2015, 2:59 PM

thanks

-----Original Message-----
From: David Stebbins [mailto:stebbinsd@yahoo.com]

Exh. 13

Sent: Tuesday, December 1, 2015 2:23 PM
To: Kevin Cook
Subject: Another
extenuating circumstance

Dear Mr. Cook,

On my way back home, I remembered another
extenuating circumstance that you could forward to your
boss:

I need assistance in
making the one-way trek to ATU campus. That'll easily
cost about $500, since I'll have to take ALL my
possessions with me.

Please
include that in your report.

Thank you.
David Stebbins

| Home | Subjects | Data Tools | Publications | Economic Releases | Students | **Beta** | 🔍 |

Search Handbook

OCCUPATIONAL OUTLOOK HANDBOOK

Computer and Information Technology >

# Computer and Information Technology Occupations

EN ESPAÑOL  PRINTER-FRIENDLY 🖶

Employment of computer and information technology occupations is projected to grow 12 percent from 2014 to 2024, faster than the average for all occupations. These occupations are expected to add about 488,500 new jobs, from about 3.9 million jobs, from 2014 to 2024, in part due to a greater emphasis on cloud computing, the collection and storage of big data, more everyday items becoming connected to the Internet in what is commonly referred to as the "Internet of things," and the continued demand for mobile computing.

The median annual wage for computer and information technology occupations was $82,860 in May 2016, which was higher than the median annual wage for all occupations of $37,040.

| | OCCUPATION | JOB SUMMARY | ENTRY-LEVEL EDUCATION 🛈 | 2016 MEDIAN PAY 🛈 |
|---|---|---|---|---|
| | **Computer and Information Research Scientists** | Computer and information research scientists invent and design new approaches to computing technology and find innovative uses for existing technology. They study and solve complex problems in computing for business, medicine, science, and other fields. | Doctoral or professional degree | $111,840 |
| | **Computer Network Architects** | Computer network architects design and build data communication networks, including local area networks (LANs), wide area networks (WANs), and Intranets. These networks range from small connections between two offices | Bachelor's degree | $101,210 |



Exh. 14

| OCCUPATION | JOB SUMMARY | ENTRY-LEVEL EDUCATION 🌐 | 2016 MEDIAN PAY 🌐 |
|---|---|---|---|
| **Computer Programmers**  | Computer programmers write and test code that allows computer applications and software programs to function properly. They turn the program designs created by software developers and engineers into instructions that a computer can follow. | Bachelor's degree | $79,840 |
| **Computer Support Specialists**  | Computer support specialists provide help and advice to people and organizations using computer software or equipment. Some, called computer network support specialists, support information technology (IT) employees within their organization. Others, called computer user support specialists, assist non-IT users who are having computer problems. | See How to Become One | $52,160 |
| **Computer Systems Analysts** | Computer systems analysts study an organization's current computer systems and procedures and design information systems solutions to help the organization operate more efficiently and effectively. They bring business and information technology (IT) together by understanding the needs and limitations of both. | Bachelor's degree | $87,220 |
| **Database Administrators**  | Database administrators (DBAs) use specialized software to store and organize data, such as financial information and customer shipping records. They make sure that data are available to users and are secure from unauthorized access. | Bachelor's degree | $84,950 |
| **Information Security Analysts**  | Information security analysts plan and carry out security measures to protect an organization's computer networks and systems. Their responsibilities are continually expanding as the number of cyberattacks increases. | Bachelor's degree | $92,600 |
| **Network and Computer Systems Administrators** | Computer networks are critical parts of almost every organization. Network and computer systems administrators are responsible for the day-to-day operation of these | Bachelor's degree | $79,700 |

to next-generation networking capabilities such as a cloud infrastructure that serves multiple customers.

| OCCUPATION | JOB SUMMARY | ENTRY-LEVEL EDUCATION | 2016 MEDIAN PAY |
|---|---|---|---|
| | Software developers are the creative minds behind computer programs. Some develop the applications that allow people to do specific tasks on a computer or another device. Others develop the underlying systems that run the devices or that control networks. | | |
| **Software Developers** | | Bachelor's degree | $102,280 |
| **Web Developers** | Web developers design and create websites. They are also responsible for the look of the site. They are responsible for the site's technical aspects, such as its performance and capacity, which are measures of a website's speed and how much traffic the site can handle. In addition, web developers may create content for the site. | Associate's degree | $66,130 |

**Publish Date:** Thursday, December 17, 2015

RECOMMEND THIS PAGE USING:    Facebook    Twitter    LinkedIn

| TOOLS | CALCULATORS | HELP | INFO | RESOURCES |
|---|---|---|---|---|
| Areas at a Glance | Inflation | Help & Tutorials | What's New | Inspector General (OIG) |
| Industries at a Glance | Injury And Illness | FAQs | Careers @BLS | Budget and Performance |
| Economic Releases | | Glossary | Find It! DOL | No Fear Act |
| Databases & Tables | | About BLS | Join our Mailing Lists | USA.gov |
| Maps | | Contact Us | Linking & Copyright Info | Benefits.gov |
| | | | | Disability.gov |

Freedom of Information Act  |  Privacy & Security Statement  |  Disclaimers  |  Customer Survey  |  Important Web Site Notices

U.S. Bureau of Labor Statistics | Office of Occupational Statistics and Employment Projections, PSB Suite 2135, 2 Massachusetts Avenue, NE Washington, DC 20212-0001
www.bls.gov/ooh | Telephone: 1-202-691-5700 | Contact OOH