US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 0 2 2018

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                PLAINTIFF

VS.                              CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES                DEFENDANTS

## STATEMENT OF DISPUTED FACTS IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Statement

of Disputed Facts in Support of my Response in Opposition to Doc. 109, Defendants' Motion for

Summary Judgment.

1.      **On December 1, 2015, Plaintiff David Stebbins entered the Harrison office of**

**Arkansas Rehabilitation Services and met wtih ARS Counselor Kevin Cook.**

   **ANSWER:** Admitted.

2.      **During his meeting, Stebbins completed an application for services, in which he**

**stated he was seeking assistance with attending Arkansash Tech in Russellville.**

   **ANSWER:** Admitted.

3.      **The first paragraph of the Application reads as follows: "I understand that I am**

**responsible to help the Arkansas Rehabilitation Services (ARS) to determine my eligibility**

**within 60 days of my application."**

   **ANSWER:** Admitted.

4.      **Further, it states that: "When ARS receives the information about me ARS will**

**review it to determine if I am eligible for vocational rehabilitation services."**

   **ANSWER:** Admitted.

5.      **The application completed by Stebbins states that "When ARS receives the**

information about me ARS will review it to determine if I am eligible for vocational rehabilitation services."

ANSWER: Admitted.

6.      The application further documents the steps available to the applicant should he disagree with any decision made by the ARS.

ANSWER: Admitted.

7.      Stebbins signed his application.

ANSWER: Admitted.

8.      Counselor Kevin Cook documented his meeting with Stebbins that day. He documented the following:

·    He told me I was against him as soon as he set down.

·    He reported attending U of A Fayetteville but said he was kicked out.

·    Client was not cooperative so not able to discuss his grades and obtaining copies.

·    He states that his family is against him and everyone he meets is out to get him.

·    "The whole world hates me" was another comment.

·    Client said he needs assistent with paying for college.

·    Counselor told him we can assist with funding but he must apply for pell grants, FAFSA, loans, etc., to pay his part.

ANSWER: Denied. I never said he was against me as soon as I sat down. See **Exhibit 1, ¶ 3**. Also, this is not a material fact.

1.      Mr. Cook noted that "additional medical records would be needed and were requested as something else seems to be going on with Mr. Stebbins."

ANSWER: Admitted.

2.      Stebbins was provided a professional disclosure form. it states that "the purpose of public vocational rehabilitation is to assist eligible persons with disabilities in achieving an employment outcome. This outcome may be returning to your former job or obtaining a job in a new field." Further it states that "you and your counselor will work together to find a job that you are physically and mentally able to do that is as close as possible to your vocational goals."

ANSWER: Admitted.

3.      It also states that "if you are eligible for vocational rehabilitation services, you and your RC (rehabilitation counselor) will jointly develop an Individual Plan of Employment (IPE).

ANSWER: Admitted.

4.      Also, it state that "it is important to remember that the goal of the RC is to help you secure a satisfactory job and that services must be related to that goal."

ANSWER: Admitted.

5.      Stebbins brought with him to his interview 13 pages of medical records from St. Bernard's in Jonesboro dated April 2015.

ANSWER: Admitted.

6.      Stebbins also signed a release for medical records and provided two physicians names.

ANSWER: Admitted.

7.      ARS faxed records requests to Dr. Victor Chu and R. Robert Frenal's offices on 12/01/15.

ANSWER: Admitted.

8.     **On December 2, 2015, Dr. Robert Frenal/Vantage Point responded to the records request stating they had no records on this patient.**

     **ANSWER:** I have no personal knowledge with which to admit or deny this fact. Therefore, it is denied. However, I also maintain that this is not a material fact.

9.     **On December 3, 2015, Stebbins email his counselor at 10:50 a.m., asking about the status of his application.**

     **ANSWER:** Admitted.

10.     **On December 4, 2015, CRC Lorraine Miller, spoke with Stebbins via telephone. Stebbins was quite agitated, and wanted to speak with a supervisor. Ms. Miller was told by the person answering the phone that he had been "yelling" at her. Ms. Miller picked up the phone, Ms. Stebbins asked her to call him back. Ms. Miller did so.**

     **ANSWER:** Admitted in part and denied in part.

     First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 7**.

     Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Lorraine Miller. Miller, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Lorraine Miller is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

11.     **Upon her return call, Stebbins sound very, very anxious, was breathing hard, and talking very fast. At one point, Ms. Miller counseled him to try to calm himself down. Stebbins told her what he was asking ARS to do for him. Ms. Miller inquired about Stebbins taking some online courses but he did not think there were many he could take. She told him that she hardly ever asked for an exception to the funding, and that requests aren't always approved. He wanted to speak with a different counselor.**

**ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 7**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Lorraine Miller. Miller, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Lorraine Miller is not a

witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

12. **That same day, Stebbins emailed his counselor at 5:50 p.m. He appeared to be inquiring regarding his records. Stebbins wanted to know if Cook could subpoena the records.**

ANSWER: Admitted.

13. **On Monday, December 7, 2015, Mr. Cook responded to Stebbins' email and reminded Stebbins he had to allow 60 days for them to get the medical records from the providers.**

ANSWER: Admitted.

14. **On Tuesday, December 8, 2015, Stebbins called ARS around 2:20 p.m., and spoke with Administrative Assistant Maghee. Stebbins was very rude and yelling. He was insisting on talking with his counselor. The Phone counselor transferred his call to another person b/c Stebbins did not want to talk with her.**

ANSWER: Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got

filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Maghee. Maghee, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Maghee is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

15.     **Stebbins was transferred to counselor. Ms. Matheny informed Stebbins that they had not yet received the medical records. Stebbins wanted to know who had not provided his information.**

     **ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore

carries no weight. Their evidence is the client contact note of one Caterina Matheny. Matheny, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Matheny is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

16.     **Stebbins called back and 3:20 p.m. yelling in a high voice and would not calm down. Stebbins reported that he had tried calling Crossroads Medical Clinic to follow up on ARS' records request, but they hung up on him. Ms. Matheny forwarded the call to Alana Walls to help with the client.**

**ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Caterina Matheny. Matheny,

however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Matheny is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

17.     **Stebbins was transferred to Alana Walls at 3:25 p.m. He sounded short of breath and emotionally upset. He was questioning why Cook had not made any progress in his case.**

     **ANSWER:** Admitted in part and denied in part.

     First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

     Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson,

and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

18.     **Ms. Walls explained to Stebbins that ARS needed documentation from a doctor establishing that he has a disability in order to determine eligibility. Stebbins became verbally abusive.**

     **ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore,

anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

19. **Stebbins asked why the information he had already supplied was not enough.**

   **ANSWER:** Admitted.

20. **Stebbins began to yell and she told him she was hanging up.**

   **ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using

evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

21.    **Ms. Walls called Amy Jones and told her of the conversation.**

    **ANSWER:** Admitted in part and denied in part.

    First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

    Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

    Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no

good. Therefore, this is not a material fact.

22.	**Amy Jones attempted to contact Stebbins via phone,b ut there was no answer.**

**ANSWER:** I have no personal knowledge with which to admit or deny this. Therefore, it is denied. However, I also maintain that this is not a material fact.

23.	**Alana Walls reported to Amy Jones that she was concerned for her safety and the safety of her staff in Harrison.**

**ANSWER:** Denied.

First, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶ 9**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no

good. Therefore, this is not a material fact.

24.     **Ms. Jones was later able to reach Stebbins via telephone. Stebbins stated that he was angry at the government and that explained a bit of why he was mad at ARS - because they are the government.**

ANSWER: Admitted in part and denied in part. I admit that I spoke with Amy Jones that day. However, I did not state that I hate ARS, and I certainly did not state that I hated them simply by reason of them being "the government." See **Exhibit 1, ¶ 12**.

25.     **Ms. Jones explained the process for eligibility and plan development to Stebbins again.**

ANSWER: The client contact note does not state exactly what was or was not said. Therefore, I lack sufficient information to either admit or deny this fact. Therefore, it is denied.

Furthermore, I maintain that this is not a material fact.

26.     **Ms. Jones asked Stebbins about his past college experiences.**

ANSWER: Admitted.

27.     **Stebbins reported he had been thrown out of the U of A for making threats in 2007. Stebbins reported that he then attended the North Arkansas College and that his provided him accommodations by pulling him aside to explain his behavior.**

ANSWER: Admitted in part and denied in part. I admit that I attended North Arkansas College and received reasonable accommodations by pulling me aside and explaining my behavior. However, I was not thrown out of U of A "for making threats." I will be able to produce the testimony of an eyewitness to vouch for me that I did not make threats, but rather, that the U of A overreacted to my legitimate and good faith attempts to air a grievance.

28.     **Stebbins was unable to complete most of his semesters.**

**ANSWER:** Denied. I completed the majority of my semesters. The few that I did not complete were not withdrawn from simply because I "was unable" to complete them. Rather, I made conscious and strategic choice to withdraw from those classes. See **Exhibit 1, ¶¶ 14-19**.

If anything, it appears that the Defendants' belief that I was "unable" to complete most of my semesters seems grounded, not in any thorough investigation, but in a lack of communication between the parties.

It appears that Amy Jones misunderstanding is grounded in one of two things: Either her adamant refusal to truly understand my situation, or a lack of communication on her end. Either way, it definitely appears to be her fault.

Also, I have demonstrated that I am indeed capable of being in college and thriving in that environment. I took a class in the Summer of 2016, and paid for the class out of pocket, where I not only earned a "B" in that class, but also had a perfect attendance in that class and had no major disciplinary issues. See **Exhibit 1, ¶ 28**. See also **Exhibit 4, Answers to Interrogatories Nos. 1 & 2**.

29. **Stebbins reported he'd been seen by St. Bernard's in April 2015, but had received no follow-up services since that time.**

    **ANSWER:** Admitted.

30. **Ms. Jones inquired about his discharge report and recommendation. Stebbins reported he'd been told to go somewhere for counseling, and did one time, but that was it.**

    **ANSWER:** Admitted in part and denied in part. I admit that I went to Health Resources of Arkansas for a single check-up session. However, I wholly deny the implications the Defendants are trying to make, that I purposefully avoided any recommended medical treatment. To the contrary, I was only *supposed* to go to a single session! See **Exhibit 1, ¶¶ 20-22**.

It appears that Amy Jones misunderstanding is grounded in one of two things: Either her adamant refusal to truly understand my situation, or a lack of communication on her end. Either way, it definitely appears to be her fault.

31. **Ms. Jones expressed her concern for Stebbins' well-being and mental stability based on the conversation they were having.**

**ANSWER:** Denied. No mention of my "mental stability" was ever made by the Defendants to my knowledge prior to the filing of this lawsuit. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶, 7, 9, and12**.

32. **Throughout their conversation, Stebbins maintained an escalated voice, rapid breathing, and extreme agitation.**

**ANSWER:** Admitted in part and denied in part.

First, I admit that I called the ARS in Fayetteville that day. However, I deny that I was in any way, shape, or form, rude, abrasive, yelling, or threatening. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact note of one Alana Walls. Walls, however, is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Walls is not a witness in this case. Therefore, anything she has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

33.    **Ms. Jones asked about Stebbins' family or any support system he might have so she could contact them regarding her concerns. Stebbins said he hated his family. He said he cannot control his anger, especially when he cannot get any answers.**

**ANSWER:** Denied. Amy Jones never spoke to me about my family. I never said that I cannot control my anger. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

34.    **Ms. Jones explained their system and answered all of Stebbins' questions.**

**ANSWER:** Denied. She did not answer all of my questions. See **Exhibit 1, ¶ 11**. Also, this is not a material fact, since this was not a factor in the Defendants' adverse action, nor are the Defendants even arguing that it was.

35.    **Ms. Jones told him she'd speak with his counselor and the psychological examiner and would try to call him back tomorrow.**

**ANSWER:** Admitted in part and denied in part. Amy Jones did say that she would speak with Kevin Cook. However, she never turned any phone call. See **Exhibit 1, ¶ 13**.

36.    **Ms. Jones spoke with Leslie Johnson, a Licensed Psychological Examiner.**

**ANSWER:** I lack sufficient knowledge with which to admit or deny this fact. Therefore, it is denied.

37.    **Ms. Johnson said she did not think Stebbins needed to be scheduled in any office at this time due to his instability.**

**ANSWER:** Admitted in part and denied in part. I admit that she decided to assess me without me being present. However, this was not due to any real or perceived mental instability or threatening statements. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

The Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. Their evidence is the client contact notes of Alana Walls, Caterina Matheny, and Lorraine Miller. These women, however, are not witnesses in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, these women are not witnesses in this case. Therefore, anything they have to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

38.    **Ms. Jones called Carl Daughtery, her supervisor, and explained the situation to him.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-

faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. This is hearsay. Carl Daughtery is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Daughtery is not a witness in this case. Therefore, anything he has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

39. **Mr. Daughtery said they needed to contact the Harrison Police Department and let them know of the threatening calls and threatening behavior being exhibited by Stebbins.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. This is hearsay. Carl Daughtery is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as

witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Daughtery is not a witness in this case. Therefore, anything he has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

Fourth, this Motion for Summary Judgment is premature. There is still a Motion to Compel Discovery pending in this case, and this discovery, if produced, has the potential to instantly dispose of the issue of whether or not I acted hostily towards ARS staff or of that is just something they made up after getting sued. This Motion for Summary Judgment should not be ruled on until then.

Fifth, even accepting the Defendants' exhibits at face value, these supposed police reports clearly do not document any terroristic threatening. In both of the produced police reports, the official disposition for the police report was "no report required." See **Defendants' Exhibit B, ARS 70 and ARS 74** (pages 45 and 48, respectively, of Defendants' Exhibit B). Thus, even taking their exhibits at face value, it appears that the local police were of the opinion that the Defendants were the ones overreacting, not me!

40.   **Daughtery also said they needed to call a psychiatric facility for mandated reporting regarding their concern for Stebbins' well-being.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, the Defendants' evidence is not admissible because it is hearsay and therefore carries no weight. This is hearsay. Carl Daughtery is not a witness in this case. See **Exhibit 2, Answer to Interrogatory No. 1**. As you can see, the Defendants listed only three (3) people as witnesses in their defense: Amy Jones, Leslie Johnson, and Kevin Cook. They stated that they would add more witnesses as they became available, but they never did. See **Exhibit 1, ¶ 33**. Therefore, Daughtery is not a witness in this case. Therefore, anything he has to say is hearsay and therefore is not admissible.

Third, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

41.     **Ms. Jones called the Harrison ARS Office and told them to keep doors from the lobby to the office area locked at all times. If Stebbins were to show up, they were to call the police.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

In addition, I maintain that this is a material fact. Even if the Defendants could prove,

using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

42.     **Ms. Jones also instructed them that if Stebbins were to call the Harrison ARS Office, he was to be directed to her and that she would be handling his case going forward.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Also, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

43.     **A report was made to the Harrison Police Department.**
**ANSWER:** Denied.

First, I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in

part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

Third, even accepting the Defendants' exhibits at face value, these supposed police reports clearly do not document any terroristic threatening. In both of the produced police reports, the official disposition for the police report was "no report required." See **Defendants' Exhibit B, ARS 70 and ARS 74** (pages 45 and 48, respectively, of Defendants' Exhibit B). Thus, even taking their exhibits at face value, it appears that the local police were of the opinion that the Defendants were the ones overreacting, not me!

44.     **ARS staff did not ask the police to go out and do anything, but they did want the incidents documented.**

    **ANSWER:** Denied.

First, I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Second, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

Third, this Motion for Summary Judgment is premature. There is still a Motion to

Compel Discovery pending in this case, and this discovery, if produced, has the potential to instantly dispose of the issue of whether or not I acted hostily towards ARS staff or of that is just something they made up after getting sued. This Motion for Summary Judgment should not be ruled on until then.

Fourth, even accepting the Defendants' exhibits at face value, these supposed police reports clearly do not document any terroristic threatening. In both of the produced police reports, the official disposition for the police report was "no report required." See **Defendants' Exhibit B, ARS 70 and ARS 74** (pages 45 and 48, respectively, of Defendants' Exhibit B). Thus, even taking their exhibits at face value, it appears that the local police were of the opinion that the Defendants were the ones overreacting, not me!

45. **On December 9, 2015, Stebbins emailed Mr. Cook to inquire about any updates on his case.**

**ANSWER:** Admitted.

46. **That same day, Ms. Jones performed a review of the partial hospital records that Stebbins had provided during his December 1st interview.**

**ANSWER:** Admitted.

47. **In the records, the doctor reported that Stebbins did not and would not provide them with a medical history.**

**ANSWER:** Admitted. I did not feel it was necessary for my then-current treatment plan.

48. **The records further stated that Stebbins was arrested for domestic battery against his father.**

**ANSWER:** Denied. The records clearly state that I was arrested after he framed me for the battery.

49.     **Stebbins reported to the doctor that he was thrown out of the U of A for making threats.**

    **ANSWER:** Denied. I clearly said the complete opposite of that.

50.     **Ms. Jones read court documents and found very disturbing facts about the case.**

    **ANSWER:** Admitted. The "very disturbing facts" that she found were that I had filed several civil rights lawsuits in the past.

51.     **Stebbins made threats to numerous employees at the U of A to the point of terroristic threatening.**

    **ANSWER:** Denied. I will be able to produce an eyewitness to this case to prove that I did not threaten anyone.

52.     **Based on Stebbins' actions/inappropriate communication with ARS staff, Ms. Jones did not believe that Stebbins was mentally stable enough at that time for any Vocational Rehabilitation program.**

    **ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12.**

    Also, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

53.     **She also felt that Stebbins was a physical threat to her staff and did not feel**

comfortable in setting him up for a Rehabilitation Initial Diagnosis and Assessment ((RIDAC) or sending him to anyone's office.

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12.**

Also, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

54.    **Ms. Jones initially made the decision on December 9, 2015, to close Stebbins' case that day; however, she decided to reconsider her decision.**

**ANSWER:** Denied. Amy Jones always knew she wanted to deny my application. She was simply searching for an excuse to do so

55.    **Ms. Jones called Stebbins to speak with him about her records review findings. She explained that she had reviewed his medical documentation again and that she wanted to clarify where the remainder of his most recent medical/mental health visits were (post April 2015).**

**ANSWER:** Admitted.

56.    **Ms. Jones asked Stebbins where he was treated/transferred to from the ER in Jonesboro.**

**ANSWER:** Admitted.

57.     **Stebbins said that he was treated for 1-2 weeks at St. Bernard's Behavior Clinic. He said he was released from their clinic on April 30th.**

**ANSWER:** Admitted.

58.     **Ms. Jones explained that she would like to review those records because she believed they would have his latest psychiatric evaluation on file. She also wanted to see what his discharge papers recommended for further or ongoing treatment.**

**ANSWER:** Admitted.

59.     **Ms. Jones told Stebbins that she would request all of his records from St. Bernard's and would notify him once she had the records.**

**ANSWER:** Admitted in part and denied in part. Amy Jones did say that she would request the records. However, she did not notify me once the records had been received. See **Exhibit 1**.

60.     **At approximately 11:45 a.m. that day, Vantage Point called and reported that Stebbins had called their office - was very rude and hateful demanding they send their records to ARS.**

**ANSWER:** Denied. I never threatened them in any way shape or form. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Also, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no

good. Therefore, this is not a material fact.

61.    **Ms. Walls called the Northwest Arkansas Regional Hospital and asked to speak with someone in the Psychiatric Unit. She was informed they were not open for business, and referred her to Health Resources of Arkansas in Harrison. Ms. walls relayed the information to Ranae at HRA, and then faxed the information ARS had received from Stebbins.**

ANSWER: Denied. I never threatened them in any way shape or form, and nobody from the ARS believed I was a danger to anyone. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Also, I maintain that this is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

62.    **Information was relayed in an effort to protect Stebbins from self-harm. or in the event there may have been a threat of harm to office personnel.**

ANSWER: Denied. I never threatened them in any way shape or form, and nobody from the ARS believed I was a danger to anyone. That is a bald-faced lie perpetrated by the Defendants after this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Also, I maintain that this is a material fact. Even if the Defendants could prove, using

evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

63. **On December 11, 2015, Stebbins emailed both Mr. Cook and Ms. Jones a copy of his college transcript from NAC.**

     **ANSWER:** Admitted.

64. **Ms. Jones asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on Stebbins.**

     **ANSWER:** Admitted in part and denied in part. I admit that Leslie Johnson was contacted for this purpose. However, I deny the implications that

65. **Ms. Jones wanted Ms. Johnson's input in determining the feasibility of VR (vocational Rehabilitation) services/training for Stebbins.**

     **ANSWER:** Admitted in part and denied in part. I admit that Leslie Johnson conducted a review of my medical records. However, I deny the implication that this constitutes a medical opinion. A medical opinion requires an in-person evaluation of my symptoms, not simply reading somebody else's notes.

66. **After her review, Ms. Johnson provided Ms. Jones with her conclusions and recommendations. In Ms. Johnson's opinion, as of December 2015, Stebbins was not appropriate for vocational rehabilitation services.**

     **ANSWER:** Denied. First, Defendants' **ARS 85-86** is not Dr. Johnson's original report. There were seven (7) versions of her report besides that. Leslie Johnson's original report almost

certainly contained the recommendation that I was eligible for receive ARS benefits. See "Motion for Adverse Inference" as well as "Brief in Support of Motion for Adverse Inference."

Second, Leslie Johnson's opinion is not an expert medical opinion, since it was not based on any personal observations of my symptoms. Therefore, her opinion carries no weight.

67. **Ms. Johnson strongly recommended a referral to a local mental healthcare provider for Stebbins. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues.**

**ANSWER:** Admitted in part and denied in part.

First, Defendants' **ARS 85-86** is not Dr. Johnson's original report. There were seven (7) versions of her report besides that. Her original report almost certainly contained the recommendation that I was eligible for receive ARS benefits. See "Motion for Adverse Inference" as well as "Brief in Support of Motion for Adverse Inference."

Second, I admit that this was the final version of Leslie Johnson's recommendation. However, this amounts to an act of disability discrimination.

68. **Further, in order for Stebbins to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work.**

**ANSWER:** Denied. I am already "appropriate" for ARS services. The ARS wanted to deny my application and they merely searched for an excuse to do so.

Defendants' **ARS 85-86** is not Dr. Johnson's original report. There were seven (7) versions of her report besides that. Her original report almost certainly contained the recommendation that I was eligible for receive ARS benefits. See "Motion for Adverse

Inference" as well as "Brief in Support of Motion for Adverse Inference."

69. **On December 16, 2015, Ms. Jones made the determination that Stebbins was not feasible for VR services at that time.**

ANSWER: Admitted in part and denied in part. I admit that the Defendants made this determination, but they did not make it on December 16, 2015. Instead, they made it long before then and needed an excuse to justify their decision.

However, the excuse they came up with was inherently discriminatory. As Magistrate Judge J. Thomas Ray concluded ... "Stebbins has alleged sufficient facts to state a plausible discrimination claim under the ADA ... Defendants denied his request for funds ... the denial was explicitly predicated, at least in part, on symptoms of his disabilities." See Doc. 51, p. 14.

Defendants' **ARS 85-86** is not Dr. Johnson's original report. There were seven (7) versions of her report besides that. Her original report almost certainly contained the recommendation that I was eligible for receive ARS benefits. See "Motion for Adverse Inference" as well as "Brief in Support of Motion for Adverse Inference."

70. **Ms. Jones based her decision on several factors: (a) Stebbins' behavior to both Fayetteville and Harrison staff was hostile at every encounter; (b) Stebbins did not want to cooperate in giving his medical information but relented that they could send a request for records to his last place of treatment - St. Bernard's Behavioral Unit; and (c) a Licensed Psychological Examiner reviewed his records and concluded that Stebbins was not feasiable for VR services at that time.**

ANSWER: Admitted in part and denied in part.

First, I never threatened them in any way shape or form, and nobody from the ARS believed I was a danger to anyone. That is a bald-faced lie perpetrated by the Defendants after

this lawsuit got filed to create the illusion of legitimate decisionmaking. See **Exhibit 1, ¶¶ 7, 9, and 12**.

Also, I maintain that this not is a material fact. Even if the Defendants could prove, using evidence that is not hearsay, the bottom line is that they still based their adverse action at least in part on my disabilities, symptoms, and statutorily protected activities. Unless the Defendants maintain that they would have made the exact same decision just on my allegedly hostile behavior alone, offering evidence – hearsay or otherwise – of my hostile behavior does them no good. Therefore, this is not a material fact.

Second, I deny that I refused to provide any medical documentation to ARS when requested. I have no idea what they are even basing that on. See **Exhibit 1, ¶ 10**.

Lastly, I admit that the adverse action was based, at least in part, on Leslie Johnson's recommendation. However, I maintain that this recommendation is inherently discriminatory. See **Doc. 51, p. 14**: "Stebbins has alleged sufficient facts to state a plausible discrimination claim under the ADA ... Defendants denied his request for funds ... the denial was explicitly predicated, at least in part, on symptoms of his disabilities."

71.  **That same day, Ms. Jones wrote to Stebbins and informed him of her decision. Ms. Jones informed him of his right to request an administrative review of the decision, as well as an opportunity for a fair hearing.**

**ANSWER:** Denied. I never received a copy of **ARS 122-123** before the filing of this lawsuit. ARS 130 is the only letter I received from ARS stating that my application had been denied. See **Exhibit 1, ¶ 25**.

72.  **Ms. Jones wrote Stebbins a second letter on December 17, 2015.**

**ANSWER:** Admitted in part and denied in part. I admit that I received ARS 130 in the

mail. However, that is the only letter I received telling me that my application was denied.

73.     **In it, she again explained her reasoning for determining Stebbins to be ineligible for services at that time.**

        **ANSWER:** Denied. The letter merely stated that she did not think ARS services were "appropriate." She never explained exactly what my symptoms were or what factors were considered. I had to secure the services of a pro bono attorney to investigate the matter to determine what factors were considered by ARS. See **Exhibit 1, ¶ 26.**

74.     **The ARS policy reads, in part, as follows:**

> **APPEAL/INELIGIBILITY DETERMINATION**
> The individual may appeal the ineligibility determination. The counselor will provide the individual with information on the means, by which an appeal can occur, including informal and formal due process procedures, such as administrative review, mediation, and review by an impartial hearing officer. The counselor will also provide the i ndividual with information regarding services available from Client Assistant Program and how to contact the Client Assistant Program.

        **ANSWER:** This is not a material fact.

75.     **Stebbins did not appeal his ineligibility determination.**

        **ANSWER:** This is not a material fact.

76.     **Stebbins did not exhaust his administrative remedy.**

        **ANSWER:** This is not a material fact.

77.     **Ms. Jones did not deny David Stebbins vocational rehabilitation due to his previous filing of civil rights lawsuits.**

        **ANSWER:** Denied. Leslie Johnson's recommendation very clearly listed my litigation history as one of the factors behind her recommendation. Amy Jones adopted this recommendation in its entirety, including the part where my litigation history was listed as a factor. Therefore, my litigation history was a factor in Amy Jones' decision.

78.     **Ms. Jones did not base her determination that Stebbins was ineligible for services on his prior civil litigation.**

**ANSWER:** Denied. Leslie Johnson's recommendation very clearly listed my litigation history as one of the factors behind her recommendation. Amy Jones adopted this recommendation in its entirety, including the part where my litigation history was listed as a factor. Therefore, my litigation history was a factor in Amy Jones' decision.

79.     **Stebbins did not "automatically qualify" for ARS funding.**

**ANSWER:** Denied. ARS's manual very clearly states that I am presumed eligible for ARS funding if I receive SSI, which I did. At that point, by the Defendants' own admission, the burden of proof shifts to the Defendants to prove "by clear and convincing evidence" that the plaintiff "is incapable of benefiting from vocational services in terms of achieving an employment outcome due to the severity of the disability." See **Defendants' Exhibit A, p. 4**. The Defendants have not met their own burden of proof. Therefore, this is still either genuinely disputed or undisputed in my favor.

80.     **For all individuals applying for services, ARS will conduct an assessment to determine eligibility.**

**ANSWER:** Admitted in part and denied in part. I admit that the ARS is *supposed* to conduct an assessment. However, no assessment was ever made. I was never examined personally.

81.     **There is a "presumptive eligibility" for SSD/SSI recipients, which Stebbins was. The presumption means that the process will not be delayed for the gathering of medical records.**

**ANSWER:** Admitted.

82.     **The "presumption" does not mean that the individual does not still have to be assessed, because the assessment will still occur.**

**ANSWER:** Admitted in part and denied in part. I admit that the ARS is *supposed* to conduct an assessment. However, no assessment was ever made. I was never examined personally.

83.     **Stebbins assessment (history of his interaction with ARS staff members, past records and history, and his refusal for treatment) made him ineligible for services in December 2015.**

**ANSWER:** Denied. There was no assessment. They made their decision in absentia. They never examined me personally.

84.     **Stebbins 2017 suggestion that he could have attended school while simultaneously receiving counseling was not a "reasonable accommodation" that would have been made.**

**ANSWER:** Admitted in part and denied in part. I admit that I proposed this accommodation. However, the Defendants offer absolutely no evidence that this accommodation cannot be provided.

85.     **Stebbins has not stopped filing lawsuits since being told he was ineligible for benefits in December 2015.**

**ANSWER:** This is not a material fact. Only facts that are material to the case should be considered a motion for summary judgment.

86.     **In 2016, Stebbins proceeded with his pro se appeal in David A. Stebbins v. David D. Stebbins in the Arkansas Court of Appeals, CV-16-16.**

**ANSWER:** This is not a material fact. Only facts that are material to the case should be considered a motion for summary judgment.

87.     **Stebbins filed various motions and briefs over the course of 15 months in the**
**Stebbins v. Stebbins appeal.**

    **ANSWER:** This is not a material fact. Only facts that are material to the case should be
considered a motion for summary judgment.

88.     **On September 2, 2016, Stebbins filed a Complaint with jury demand in David A.**
**Stebbins v. State of Arkansas, in the Eastern District of Arkansas, 4:16CV00638 BRW.**

    **ANSWER:** This is not a material fact. Only facts that are material to the case should be
considered a motion for summary judgment.

89.     **On December 2, 2016, he filed a Complaint with jury demand against the State of**
**Arkansas and Boone County Circuit Court in the Western District of Arkansas,**
**3:17CV03016 TLB.**

    **ANSWER:** This is not a material fact. Only facts that are material to the case should be
considered a motion for summary judgment.

90.     **On December 31, 2016, he filed a Complaint with jury demand against the State of**
**Arkansas and Boone County Circuit Court in the Eastern District of Arkansas,**
**4:16CV00878 BSM.**

    **ANSWER:** This is not a material fact. Only facts that are material to the case should be
considered a motion for summary judgment.

91.     **On April 28, 2017, Stebbins appealed the dismissal of case 3:17CV03016 in the**
**Eighth Circuit Court of Appeals – 17-1920.**

    **ANSWER:** This is not a material fact. Only facts that are material to the case should be
considered a motion for summary judgment.

92.     **On October 31, 2017, Stebbins filed a Complaint with jury demand against Kenneth**

**Hixson, David Glover, Phillip Whiteaker, and the State of Arkansas, 4:17CV711 JM.**

**ANSWER:** This is not a material fact. Only facts that are material to the case should be considered a motion for summary judgment.

93.     **The actions (or inactions) taken by ARS in December 2015 did not in any way, shape, or form deter or prevent Stebbins with the filing of lawsuits.**

**ANSWER:** Denied.

First of all, the Defendants attach no exhibit in support of this supposedly "undisputed" fact. The fact is automatically disputed if the movant attaches no evidence to support it.

Second, he adverse action had at least a partial chilling effect on my First Amendment exercises. See **Exhibit 1, ¶ 27.**

Wherefore, premises considered, I respectfully request that the Defendants' Motion for Summary Judgment be denied in its entirety.

So requested on this, the 2nd day of January, 2017.

David Stebbins
123 W. Ridget St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com