# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

DAVID A. STEBBINS     PLAINTIFF

v.     CASE NO. 4:16CV545 JM

STATE OF ARKANSAS, ARKANSAS     DEFENDANTS
REHABILITATION SERVICES, AND
AMY JONES

## AFFIDAVIT OF AMY JONES

I, Amy Jones, am competent to testify and have personal knowledge regarding the statements contained in this Affidavit, do hereby state and verify the following:

1. I am employed by the Arkansas Department of Career Education as a Rehabilitation Area Manager for Arkansas Rehabilitation Services.

2. I have held this position for 4 years as Manager, 13 years prior as a VR counselor and 17 years total with ARS.

3. I supervise Offices in Harrison and Fayetteville.

4. I am familiar with the file for David A. Stebbins.

5. To the best of my knowledge, I first became aware of David Stebbins on or about December 4, 2015. I received a telephone call from Lorraine Miller. Ms. Miller is a Counselor with our office. She informed me of her conversation with David. **ARS 62-63**

6. On December 8, 2015, according to the notes entered into David's file that day, David called ARS around 2:20 p.m. and spoke with Emma McGehee,

1



an ARS administrative assistant in the Harrison Office. According to the notes, David was screaming at her and noted uncommon phone behavior. He was insisting on talking with Kevin Cook, his counselor in Harrison. Ms. McGehee transferred his call to another person because David did not want to talk with her. **ARS 64**

7. David next spoke with Caterina Matheny, another administrative assistant in the Harrison Office, around 3:20 p.m. that same day. Ms. Matheny informed David that we have not yet received the medical records we had requested from various medical facilities. David reported that he had attempted to call Crossroads Medical Clinic to follow up on ARS' records request, but that they hung up on him. Ms. Matheny forwarded the call to Alana Walls, a counselor in the ARS Harrison Office to see if she could assist David. **ARS 65**

8. Ms. Walls spoke with David around 3:25 p.m. She noted David's unusual and alarming communication with her. David was questioning why Mr. Cook had not made any progress in his case. Ms. Walls explained to David that ARS needed documentation from a doctor establishing that he has a disability in order to determine eligibility. Ms. Walls documented that David became verbally abusive. David asked why the information he had already supplied was not enough. David began to yell and she told him she was hanging up. **ARS 66**

9. Ms. Walls contacted me by telephone and reported the conversation she had just had with David. Ms. Walls reported that she was concerned for her safety and the safety of her staff in the Harrison Office. **ARS 67**

10. After speaking with Ms. Walls, I made contact with David. During this conversation, David displayed the same communication behaviors that other staff had reported. He said he was angry at the government and that explained a bit of why he was mad at ARS – because they are the government. I explained the process for eligibility and plan development to David again. I asked him about his past college experience. David reported that he had been thrown out of the U of A for making threats in 2007. He reported that he then went to North Arkansas College and that the teachers provided him accommodations by pulling him aside to explain his behavior. David was unable to complete most of his semesters. **ARS 67**

11. David reported he'd been seen by St. Bernard's Medical Center in Jonesboro in April 2015, but had received no follow up services since that time. I asked him about his discharge report and recommendations. He reported that he'd been told to go somewhere for counseling, and did one time, but that was it. I expressed my concern for his well-being and mental stability based on the conversation we were having. Throughout the conversation he maintained his escalated voice and rapid breathing and extreme agitation. I asked about his family or any support system he

might have so I could contact them regarding my concerns. David reported that he hated his family. He said he cannot control his anger, especially when he cannot get any answers. I explained ARS' system and answered all of his questions. I told him I'd speak with Mr. Cook and the psychological examiner and would try to call him back tomorrow. **ARS 67-68**

12. I then spoke with Leslie Johnson, a Licensed Psychological Examiner, about David. I often speak with Ms. Johnson about potential as well as current clients. Ms. Johnson said she did not think David needed to be scheduled in any office at this time due to his instability. **ARS 68**

13. I then called our Chief of Field Services Carl Daughtery and explained the situation to him. Mr. Daughtery said they needed to contact the Harrison Police Department to notify them of hostile communication reported to him from David Stebbins so that the necessary authorities would be on alert in the event of a crisis. He also suggested we contact a psychiatric facility for mandated reporting regarding their concerns for David's well-being. **ARS 68**

14. I called the Harrison ARS Office and told them to keep doors from the lobby to the office area locked at all times. If David were to show up, they were to call the police. I also instructed them that if David were to call the Harrison ARS Office, he was to be directed to me. **ARS 68**

15. Alana Walls contacted the Harrison Police Department to make a report of David's unusual behavior. **ARS 70**

16. The following day, David emailed Mr. Cook. He was asking to know what the details of his update were. **ARS 60**

17. I performed a review of the partial hospital records that David provided to Mr. Cook on December 1, 2015. In the records, the doctor reported that David did not and would not provide them with a medical history. The records further stated that David was arrested for domestic battery against his father. David reported to the doctor that he was thrown out of the U of A for making threats. DM read court documents and found very disturbing facts about the case. David made threats to numerous employees at the U of A to the point of terroristic threatening. **ARS 71**

18. Based on David's actions/inappropriate communication with ARS staff, I did not believe that David was mentally stable enough at that time for a Vocational Rehabilitation program. I also felt that he was a physical threat to my staff and did not feel comfortable for setting him up for a Rehabilitation Initial Diagnosis and Assessment (RIDAC) or sending him to anyone's office.

19. I initially made the decision to close the case that day; however, I decided to reconsider that decision. I can't say for sure now what changed my mind. I believe that I was alarmed by David's behavior and was concerned about it from the reports I was receiving from many of the office

staff regarding their interactions with David and the conversation I had personally had with him. On December 9th in the morning I had stated that I was going to close the case after the conversation I had had with David the previous evening and had the chance to read about the U of A report he had told me about the previous day. I believe that I felt at that time David's behavior was potentially more dangerous than I originally feared. It's not as though no one has ever been yelled at by a client but I have never had so many calls, emails or concerns regarding one person's interaction with the staff members.

20. I called David to speak with him about my findings. I explained that I had reviewed his medical documentation again and that I wanted to clarify where the remainder of his most recent visits were (post April 2015). I asked David where he was treated / transferred to from the ER in Jonesboro. David said that he was treated for 1-2 weeks at St. Bernard's Behavior Clinic. He said he was released from their clinic on April 30th. I explained that I would like to review those records because I believed they would have his latest psychiatric evaluation on file. I also wanted to see what his discharge papers recommended for further or ongoing treatment. I told David I would request all of his records from St. Bernard's and would notify him once I had the records. **ARS 72**

21. Emma McGehee received a call from Vantage Point that morning at approximately 11:45 a.m. They reported that David had called their office

and was very rude and hateful demanding they send his records to ARS. **ARS 76**

22. Also on December 9, 2015, Ms. Walls contacted the Northwest Arkansas Regional Hospital and asked to speak with someone in their Psychiatric Unit. She was informed that their adult unit was not open or operational at that time. She was referred to Health Resources of Arkansas in Harrison. Ms. Walls called their facility and related the information about David to Renae. She also faxed the information we had received from David. The information was related to these agencies in an effort to protect David from self-harm or in the event there may have been a threat of harm to office personnel. **ARS 77 – 78**

23. I asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on David. I wanted her input in determining the feasibility of VR (vocational Rehabilitation) services/training for David. This was not the first time I have asked Ms. Johnson to review records. I routinely asked her to assist with document reviews.

24. After her review, Ms. Johnson provided me with her conclusions and recommendations. In her opinion, as of December 2015, David was not appropriate for vocational rehabilitation services. Ms. Johnson strongly recommended a referral to a local mental healthcare provider for David. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues. Further, in order for

David to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work. **ARS 85 - 86**

25. On December 16, 2015, I made the determination that David was not feasible for VR services at that time. I based my decision on several factors: (a) his behavior to both Fayetteville and Harrison staff was hostile at every encounter; (b) David did not want to cooperate in giving his medical information but relented that they could send a request for records to his last place of treatment – St. Bernard's Behavioral Unit; and (c) a Licensed Psychological Examiner reviewed his records and concluded that David was not feasible for VR services at that time. **ARS 121**

26. That same day, I wrote to David and informed him of my decision. I informed him of his right to request an administrative review of the decision, as well as an opportunity for a fair hearing. **ARS 122 – 123.**

27. I wrote David a second letter on December 17, 2015. I again explained my reasoning for determining him to be ineligible for services at that time. **ARS 130**

28. I did not deny David Stebbins vocational rehabilitation due to his previous filings of civil rights lawsuits. I did not base my determination that David was ineligible for services on his prior civil litigation.

8

29. I am aware that David has claimed that I discriminated and retaliated against him. This is not true.

30. I am aware that David claims he was automatically qualified for ARS funding because he is an SSI recipient. This is not accurate.

31. For all individuals applying for services, ARS will conduct an assessment to determine eligibility. There is a "presumptive eligibility" for SSD/SSI recipients. The presumption means that the process will not be delayed for the gathering medical records. The "presumption" does not mean that the individual does not still have to be assessed, because the assessment will still occur.

32. David's assessment (history of his interaction with ARS staff members, past records and history, and David's refusal for treatment) made him ineligible for services in December 2015.

33. I am also aware that David claims that no "reasonable accommodations" were considered for him. He now suggests that a "reasonable accommodation" would have been to have allowed him to attend college while simultaneously attending therapy for his symptoms. I do not find that to be a reasonable accommodation.

34. In December 2015, I felt that the provision any ARS services to David would potentially jeopardize the safety of any ARS vendor paid to provide services. I felt that David's untreated mental health and instability could be further aggravated / worsen given the stressors of college training,

employment, or any involvement with the public at his current mental state, and the risk for David to cause harm to himself or others was too great a risk to take. I felt that without mental health treatment and a period of mental stability David would not benefit in terms of an employment outcome from the provision of our services. Our services are specially designed and funded to assist eligible individuals to obtain and / or maintain employment.

FURTHER AFFIANT SAYETH NOT.

_____
AMY JONES

ACKNOWLEDGMENT

STATE OF ARKANSAS )
    ) ss
COUNTY OF Washington )

Subscribed and sworn to before me, a Notary Public, on this 10th day of October, 2017.

_____
Notary Public

My Commission Expires:

KARLA SUE YOCHUM
NOTARY PUBLIC – ARKANSAS
WASHINGTON COUNTY – #12367515
My Comm. Expires Sept. 9, 2018