IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID A. STEBBINS                                    PLAINTIFF

v.                          NO. 3:17-CV-3092-TLB

STATE OF ARKANSAS, ARKANSAS                    DEFENDANTS
REHABILITATION SERVICES, AND
AMY JONES

SEPARATE DEFENDANTS STATE OF ARKANSAS AND ARKANSAS
REHABILITATION SERVICES BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S
SECTION 504 OF THE REHABILITATION ACT

I.      INTRODUCTION

Plaintiff David Stebbins filed his original Complaint on July 26, 2016, alleging discrimination and retaliation claims, under the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983[1], against the State of Arkansas[2], Arkansas Rehabilitation Services ("ARS"), and Amy Jones, manager of the Northwest Arkansas District 1 of ARS. (DE 2)  On August 4, 2017, Stebbins filed a Motion for Leave to Amend his Complaint, in which he sought to add a claim pursuant to Section 504 of the Rehabilitation Act against separate Defendants the State of Arkansas and Arkansas Rehabilitation Services. (DE 56)

On December 4, 2017, prior to any ruling on his motion, the Defendants filed a Motion for Summary Judgment as to all of the claims asserted in Stebbins' original Complaint. (DE 109 – 111)  Stebbins' motion for leave to file an Amended

---

[1] Stebbins' § 1983 claim against Defendant Jones for damages was dismissed on July 27, 2017. (DE 55)

[2] Stebbins' Complaint does not explain why he is suing the State of Arkansas or how the State has injured him.

Complaint was granted three days later. (DE 113)  Separate Defendants the State of Arkansas and ARS now move for summary judgment as to Stebbins' Rehab Act claim.

In his Amended Complaint, Stebbins alleges the State of Arkansas and ARS discriminated against him based on his disabilities, in violation of Section 504 of the Rehab Act, by denying his request for funds to assist him in attend college.  He also alleges the ARS denied his funding requests in retaliation for his multiple civil lawsuits.  Stebbins bases his claims on the following:  (a) he has filed numerous lawsuits regarding his civil rights; (b) ARS and Amy Jones were aware of his litigation history; (c) he was deemed ineligible for services without being examined by a Licensed Document Examiner; (d) no reasonable accommodation was considered; (e) he made good grades from 2008 – 2010; thereby establishing he was likely to succeed in school some 6+ years later; and (e) ARS employees including Amy Jones fabricated the accountings of his inappropriate and hostile behavior.  **(DE 79 & 82)**

Stebbins' Rehab Act claims should be dismissed for several reasons:  First, Stebbins has failed to exhaust his administrative remedies regarding his claims.  Second, Stebbins has not alleged any wrong-doing on behalf of the separate defendant, the State of Arkansas.  Third, Stebbins will be unable to establish a *prima facie* case of discrimination under Title II of the ADA.  And third, Stebbins will be unable to establish a *prima facie* case of retaliation under the Rehab Act.

For these reasons, Stebbins' Rehab Act claims should be dismissed, in their entirety, with prejudice.

## II.     STANDARD OF REVIEW

Summary judgment is to be "rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact requiring the trier of fact to resolve the dispute in favor of one party or the other. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). An issue of fact is material only if the fact could affect the outcome of the case under governing law. *Anderson*, 477 U.S. at 248. The non-moving party must establish that there is a genuine issue of material fact in order to survive a motion for summary judgment. *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). To establish the existence of a genuine issue, the non-moving party must produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

The evidence clearly establishes that the Defendants are entitled to summary judgment as to Stebbins' Rehab Act claims. As a result, separate Defendants' motion should be granted, and Stebbins' Complaints dismissed with prejudice.

## III.   DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Separate Defendants, the State of Arkansas and ARS, incorporate by reference, as if stated word for word herein, the Statement of Undisputable Material Facts ("SUMF") and the supporting exhibits filed in support of their Motion for Summary Judgment. Each reference to exhibits made herein, will be to exhibits attached to the SUMF.

## IV.   ARGUMENTS

### A.   Stebbins has failed to exhaust his administrative remedies prior to filing his lawsuit.

The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Old Republic Sur. Co. v. McGhee,* 360 Ark. 562, 203 S.W.3d 94 (2005); *Arkansas Prof'l Bail Bondsman Licensing Bd. v. Frawley,* 350 Ark. 444, 88 S.W.3d 418 (2002); *Cummings v. Big Mac Mobile Homes, Inc.,* 335 Ark. 216, 980 S.W.2d 550 (1998). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot,* 347 Ark. 1, 59 S.W.3d 430 (2001); *Romine v. Arkansas Dep't of Envtl. Quality,* 342 Ark. 380, 40 S.W.3d 731 (2000).

For all individuals applying for services, ARS will conduct an assessment to determine eligibility. **(Ex. A)** Stebbins applied for vocational rehabilitative services (i.e., financial assistance to attend Arkansas Tech University) on December 1, 2015.

**(Ex. B)** Approximately two weeks later, it was determined, based upon his assessment (history of his interaction with ARS staff members, past records and history, and his refusal for treatment) that Stebbins was ineligible for services as of December 2015. **(Ex. B)**

On December 16, 2015, Stebbins was notified, in writing, of the determination of his ineligibility for vocational rehabilitation services. **(Ex. C)** The letter informed Stebbins that if he was dissatisfied with the decision, he could file a request for an administrative review; and, if he were dissatisfied with the administrative review, he would be given the opportunity for a fair hearing. **(Ex. C)** Specifically, the policy reads as follows:

### APPEAL / INELIGIBILITY DETERMINATION

The individual may appeal the ineligibility determination. The counselor will provide the individual with information on the means, by which an appeal can occur, including informal and formal due process procedures, such as administrative review, mediation and review by an impartial hearing officer. The counselor will also provide the individual with information regarding services available from the Client Assistant Program and how to contact the Client Assistant Program. **(Ex. A)**

If Stebbins was dissatisfied with Amy Jones' determination that he was not eligible for services at that time, Stebbins had the option of appealing her decision. He did not do this. **(Ex. B)** As a result, Stebbins did not exhaust his administrative remedy, which means his claims should be dismissed.

**B.     Stebbins will be unable to establish a *prima facie* claim of retaliation pursuant to the Rehab Act.**

Should this Court determine that Stebbins did in fact exhaust his administrative remedies, his Rehab Act retaliation claim should nevertheless be dismissed.

The Rehab Act is "similar in substance" to the ADA and "cases interpreting either are applicable and interchangeable."[3]  A *prima facie* case under the ADA's anti-retaliation provisions will require Stebbins to show that:  (1) he engaged in a statutorily protected activity; (2) an adverse action was taken against him; and (3) a causal connection between the adverse action and the protected activity.  *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999).  Stebbins will be unable to satisfy his burden at trial; therefore, the separate defendants are entitled to judgment as a matter of law.

Defendants do not dispute that Stebbins can satisfy the first element – he engaged in a statutorily protected activity.  Separate defendants admit that, over the years, Stebbins has filed a number of lawsuits in various courts.

With regard to the second element – an adverse action was taken against him – separate defendants do not dispute this either.  Stebbins applied for ARS assistance and did not receive the funds requested.  Separate defendants believe that Stebbins, and this Court, would construe the denial of funds as an adverse action.

---

[3] *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (citations omitted).

Separate defendants do, however, dispute that Stebbins can satisfy the third element - a causal connection between the adverse action and the protected activity. In his Complaint (DE 2), Motion for Partial Summary Judgment (DE 25), Brief in Support (DE 26), Second Motion for Summary Judgment (DE 79), and Brief in Support (DE 80) Stebbins alleges he filed a number of civil lawsuits, that ARS didn't like his filing of lawsuits or took offense to them (his reasoning for the alleged dislike is unclear), and that his litigation history was clearly a factor in their decision to deny him funding through ARS.

In support of his claim, Stebbins references the Psychological Examiner's Report, dated December 14, 2015, in which she states the following pertaining to her "Records Review":

> Treatment records indicated Mr. Stebbins feels he is chronically targeted by the government and law enforcement because he "has the brains to be a leader and change things." He acknowledged perseverative thoughts regarding this issue. A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination. **(Ex. B - ARS 85)**

Stebbins does not and cannot offer an explanation as to why or to what extent he believes his prior lawsuits played a role in Ms. Johnson's Conclusions and Recommendations. It appears he is basing his opinion on the mere fact that her report contained a mention of the lawsuits and that was it. Stebbins' beliefs are not evidence.

Leslie Johnson is a Licensed Psychological Examiner. **(Ex. D)** She has performed approximately 200+ record reviews for Arkansas Rehabilitation Services.

**(Ex. D)** On December 15, 2015, at the request of Amy Jones, ARS District 1 Manager, Ms. Johnson conducted a records review on David A. Stebbins. The reason for her review was to assist Ms. Jones in determining the feasibility of VR (vocational Rehabilitation) services/training. **(Ex. D)** Ms. Johnson reviewed Stebbins' medical and mental health records from St. Bernard's Healthcare and Behavioral Healthcare in Jonesboro dated April 24 – 30, 2015. **(Ex. B - ARS 85)** She also reviewed some of his ARS Client Contact Notes. **(Ex. B - ARS 86)**

According to the medial records she reviewed, Stebbins reportedly attempted suicide after he sued his father and lost. His records indicated he was arrested in 2011 for assaulting his father. They also indicated he was kicked out of the U of A for making threatening statements. Treatment records indicated Stebbins felt he was chronically targeted by the government and law enforcement because he "has the brains to be a leader and change things." He acknowledged perseverative thoughts regarding this issue. **(Ex. B - ARS 85)**

Ms. Johnson conducted a search of public records to get more information regarding Stebbins' 2011 arrest for assaulting his father. **(Ex. D)** Once she entered his name, a number of lawsuits came up. **(Ex. D)** Ms. Johnson looked at the lawsuits to determine whether or not he had any additional criminal charges. **(Ex. D)** Upon review, she determined they were not criminal charges against him. Instead, they were lawsuits he had filed against his parents, Wal-Mart, the U of A, and federal judges. Ms. Johnson noted that the lawsuits were mainly civil rights

and discrimination to accurately reflect the type of lawsuit and to document that they were not criminal. **(Ex. D)**

In her Conclusions and Recommendations, Ms. Johnson made no reference whatsoever to Stebbins' litigation history. **(Ex. B - ARS 86)** Instead, she cited to his history of physical aggression and threatening statements, which in her opinion, suggested Stebbins was not currently appropriate for vocational rehabilitation services. **(Ex. B - ARS 86)**

Leslie Johnson was not the final decision-maker with regard to determining Stebbins' eligibility. That person was Amy Jones. **(Ex. B – ARS 122 & 130)**

Amy Jones is employed by the Arkansas Department of Career Education as a Rehabilitation Area Manager for Arkansas Rehabilitation Services. **(Ex. E)** She has held the position for 4 years as Manager, 13 years prior as a VR counselor and 17 years total with ARS. She supervises offices in Harrison and Fayetteville. **(Ex. E)**

Ms. Jones first learned of Stebbins' litigation history from Stebbins. **(Ex. E)** This was during their December 8, 2015 telephone call. Ms. Jones was the fourth ARS employee to speak with Stebbins that day. **(Ex. B - ARS 64 – 68)**

During their conversation, Stebbins displayed the same communication behaviors that other ARS staff had documented that day. He stated he was angry at the government and that explained a bit of why he was mad at ARS – because they are the government. Ms. Jones explained the process for eligibility and plan development to Stebbins again. She asked him about his past college experience.

Stebbins reported that he had been thrown out of the U of A for making threats in 2007. He reported that he then went to North Arkansas College and that the teachers provided him accommodations by pulling him aside to explain his behavior. Stebbins was unable to complete most of his semesters. **(Ex. B - ARS 67)**

Stebbins reported he'd been seen by St. Bernard's Medical Center in Jonesboro in April 2015, but had received no follow up services since that time. Ms. Jones asked him about his discharge report and recommendations. He reported that he'd been told to go somewhere for counseling, and did one time, but that was it. Ms. Jones expressed her concern for his well-being and mental stability based on the conversation they were having. Throughout the conversation Stebbins maintained his escalated voice and rapid breathing and extreme agitation. Ms. Jones asked about his family or any support system he might have so she could contact them regarding her concerns. Stebbins reported that he hated his family. He said he cannot control his anger, especially when he cannot get any answers. Ms. Jones explained ARS' system and answered all of his questions. She told him she'd speak with Mr. Cook (his counselor) and the psychological examiner and would try to call him back the following day. **(Ex. B - ARS 67-68)**

Ms. Jones performed a review of the partial hospital records Stebbins provided to his counselor, Mr. Cook, on December 1, 2015. In the records, the doctor reported that Stebbins did not and would not provide them with a medical history. The records further stated that Stebbins was arrested for domestic battery against his father. Stebbins reported to the doctor that he was thrown out of the U of A for

making threats.  David made threats to numerous employees at the U of A to the point of terroristic threatening. **(Ex. B - ARS 71)**

Ms. Jones read the court documents related to the terroristic threatening incident and found the facts to be very disturbing. **(Ex. E)**  Ms. Jones did not conduct any independent research related to the civil cases. **(Ex. E)**

Ms. Jones did not deny Stebbins vocational rehabilitation due to his previous filings of civil rights lawsuits. **(Ex. E)** Further, Ms. Jones did not base her determination that Stebbins was ineligible for services on his prior civil litigation. **(Ex. E)**

A review of Stebbins pre-December 2015 litigation does not shed light on any causal connection between the Defendants and the lawsuits.  A cursory review of the cases illustrates the following:

- In 2010, Stebbins filed 5 federal lawsuits.

- The defendants in the 2010 lawsuits included:  Mid States Promotions; Jason Jones; Full Sail University (x2); Wal-Mart (x2); The University of Arkansas; and Office of the U of A Chancellor.

- In 2010, Stebbins filed 6 federal and 3 state court lawsuits.

- The defendants in the 2011 lawsuits included: NET-ARB, Inc.; Harp & Associates (x2); Fred Kirkpatrick; Legal Aid of Arkansas; 7 AR Sup. Ct. Justices; Boone County Circuit Court, and the State of Arkansas.

- In 2012, Stebbins filed 6 federal and 2 state court lawsuits.

- The defendants in the 2012 lawsuits included: Boone County; Sheriff Danny Hickman; Social Security Admin Commissioner; two public defenders Lew Marczuk and Timothy Bunch; Rita & David D. Stebbins (x2); Wes Bradford; State of Arkansas (x2); Boone County Circuit Court (x2); Gordon Webb; Motel 6; Jennie Steen, Leslie Steen, and the Arkansas Supreme Court.

- In 2013, Stebbins filed 1 federal and 2 state court lawsuits.

- The defendants in the 2013 lawsuits included: Rhonda Watkins; Legal Aid; Nick Churchill, and the State of Arkansas.

- In 2014, Stebbins again filed 1 federal and 2 state court lawsuits.

- The defendants in the 2014 lawsuits included: the State of Arkansas; then Governor Mike Beebe; Great Southern Bank, and Rita & David D. Stebbins.

- In 2015, Stebbins filed 2 federal lawsuits and 1 state lawsuit.

- The defendants in the 2015 lawsuits included: Donna gay, Jim Hannah, State of Arkansas, Arkansas Administrative Offices of the Courts, Russell Rogers, David D. Stebbins, James Goldie, Kristie Williams, Gordon Webb, Brad Karren, Wes Bradford, City of Harrison, Robert Turley, Josh Applegate, John Doe Police Officer, Geoff Thompson and Jason Day. **(Ex. F)**

Stebbins does not offer an explanation as to why ARS or Amy Jones would have been upset or even cared that he was filing lawsuits. Neither Ms. Jones or

ARS were named in any of his litigation, spanning back at least 5 years prior to his ARS application submission, and as far as anyone can tell, had no connection with any of the named parties. Simply stated, there is no causal connection between the two. Stebbins has been unable to establish any causal connection, and will be unable to do so at trial. For the reasons stated, Stebbins' retaliation claim pursuant to the Rehab Act must fail as a matter of law.

**C.** **Stebbins has failed to establish a *prima facie* claim of disability discrimination pursuant to the Rehab Act.**

To state a disability discrimination claim under Title II of the ADA, Stebbins must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the entity; and (3) such exclusion, denial or discrimination was "by reason of" his disability. *Folkerts v. City of Waverly*, 707 F.3d. 975, 983 (8th Cir. 2013) Under Title II, a "qualified individual with a disability" is a person "who, with or without reasonable modifications to rules, policies, or practices…meets the essential eligibility requirements for the receipt of services or the participation in programs or activities by a public entity." 42 U.S.C. § 12131(2). Stebbins will be unable to satisfy all three elements; therefore his claim must fail.

Stebbins was not denied ARS's services because of his disability; rather, Stebbins was not otherwise qualified to receive vocational benefits from ARS, *i.e.* able to meet all of the program's requirements *in spite* of his disabilities. Stebbins would not have been eligible to receive any rehabilitative services in the absence of

his disabilities. However, having a disability does not automatically make an individual otherwise qualified. *See, e.g., Mallett v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997) (holding plaintiff who was denied further vocational rehabilitation funds to attend graduate school was not "otherwise qualified" to receive the benefits). A qualified individual with a disability is defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Arkansas law provides ARS's policy regarding who is qualified to receive services:

> The policy and scope of the Arkansas Rehabilitation Services shall be to provide increased employment of individuals with disabilities through the provision of individualized training, independent living services, education and support services, and meaningful opportunities for employment in integrated work settings to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society.

Ark. Code. Ann. § 25-30-201(a). The Arkansas legislature has specifically declared it to be the policy of the State of Arkansas to "provide needed and feasible rehabilitation services to eligible disabled individuals…to the end that *they may engage in useful and remunerative occupations to the extent of their capabilities*." Ark. Code Ann. § 20-79-202(a) (emphasis added). The legislature further stated that ARS's services shall be provided to disabled individuals "whose rehabilitation the Director of the Arkansas Rehabilitation Services determines, after full investigation, can be satisfactorily achieved…" Ark. Code Ann. § 20-79-213(a)(1).

To that end, ARS provides rehabilitation services to "eligible physically or mentally disabled individuals and those who can benefit from vocational rehabilitation and independent living services, *as determined by the agency to be eligible therefor*." Ark. Code Ann. § 25-30-203(a) (emphasis added).  In other words, ARS helps those individuals with disabilities that it determines are likely to succeed in the workforce with some temporary assistance from ARS.  Only those individuals who are likely to succeed in the workforce are eligible for assistance from ARS.  And the determination of whether an individual is likely to succeed in the workforce is solely within the discretion of ARS.

Stebbins' allegation that he was denied ARS services *because of* is incorrect. Stebbins would not have been eligible to receive ARS services at all if he had not been an individual with a disability.  However, having a disability does not automatically make an individual eligible for ARS services.

For all individuals applying for services, ARS will conduct an assessment to determine eligibility. **(DE 79, p. 19)**  There is a "presumptive eligibility" for SSD/SSI recipients. **(*Id.*)**  The presumption means that the process will not be delayed for the gathering medical records.  The "presumption" does not mean that the individual does not still have to be assessed, because the assessment will still occur. **(*Id.*)**

During his initial meeting with his counselor, Stebbins provided documentation that reflected as of October 31, 2015, he was receiving $733.00 per month in SSI benefits. **(Ex. B – ARS 41)** As such, there would have been a

"presumptive eligibility" in favor of Stebbins; however, the analysis did not end there.

Stebbins' assessment included analyzing his history of interactions with ARS staff members, past records and history, and his refusal for treatment, all made him ineligible for services in December 2015. **(Ex. B – ARS 122, 130; DE 79, pp. 19 – 22)**

According to the Client Contact Notes, which were prepared on the date that appears in the upper portion of the records, each and every verbal interaction Stebbins had with ARS staff members was alarming and raised red flags. **(Ex. B - ARS 42 – 44; 62 - 68, 72; and 77 – 78).** Stebbins' behavior was so alarming that the Harrison Office staff felt great concerns for their physical safety and reported Stebbins' behavior to the Harrison Police Department. **(Ex. B - ARS 70 & 74).** A review of the client history, specifically: (a) his unwillingness to follow physicians' orders in obtaining counseling services upon his release from St. Bernard's Behavioral Facility on April 30, 2015; (b) his past terroristic threatening incident; (c) his domestic battery charges, and (d) his unwillingness to provide detailed medical information to both the staff at St. Bernard's and ARS – all impacted his assessment. **(Ex. B – ARS 121; Ex. D)**

Ms. Jones asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a records review on Stebbins. Ms. Jones wanted Ms. Johnson's input in determining the feasibility of VR (vocational Rehabilitation) services/training for Stebbins. **(Ex. B - ARS 84 – 86)** After her review, Ms. Johnson provided Ms. Jones

with her conclusions and recommendations. In Ms. Johnson's opinion, as of December 2015, Stebbins was not appropriate for vocational rehabilitation services. **(Ex. B - ARS 84 – 86; Ex. D)** Ms. Johnson strongly recommended a referral to a local mental healthcare provider for Stebbins. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues. **(Ex. B - ARS 84 – 86)** Further, in order for Stebbins to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work. **(Ex. B - ARS 85 – 86)**

Ms. Johnson documented a list of ways in which Stebbins' observed or reported problem areas were likely to be manifested in a vocational setting. The list included:

- Impulsivity may result in poor choices in job environment;

- Depression may interfere with counseling/job interviews;

- May be source of distraction to co-workers;

- Difficulty assessing consequences of decision alternatives;

- Difficulty relating with instructors/students/co-workers;

- Difficulty performing work tasks which involve people;

- Difficulty changing behavior to meet requirements;

- Emotional intensity may interfere with task performance; and

- Conflicts may preclude adequate task performance. **(Ex. B – ARS 86; Ex. D)**

In December 2015, Ms. Jones felt that the provision any ARS services to Stebbins would potentially jeopardize the safety of any ARS vendor paid to provide services. **(Ex. D)** She felt that Stebbins' untreated mental health and instability could be further aggravated / worsen given the stressors of college training, employment, or any involvement with the public at his current mental state, and the risk for Stebbins to cause harm to himself or others was too great a risk to take. **(*Id*.)** She felt that without mental health treatment and a period of mental stability Stebbins would not benefit in terms of an employment outcome from the provision of their services. **(*Id*.)** ARS services are specially designed and funded to assist eligible individuals to obtain and / or maintain employment. **(Ex. D)**

The manifestations identified by Ms. Johnson, and the opinions reached by Ms. Jones were not based upon a diagnosis if Asperger's. **(Ex. D & E**) They were based upon Stebbins' exhibited threatening behavior. **(Ex. D & E)**

Stebbins has not and unfortunately cannot show that he would benefit from ARS services in that his rehabilitation into the workforce could be satisfactorily achieved with some assistance from ARS. And it is on that criterion that Stebbins fell short.

Per Ark. Code Ann. § 20-79-213(a)(1), ARS is to conduct a "full investigation" into whether an applicant is likely to be satisfactorily rehabilitated with ARS assistance. As part of the investigation into whether Stebbins met that requirement, he admits that ARS had a Licensed Psychological Examiner review his medical records and perform a public records search on him. That investigation

revealed that Stebbins' exhibited symptoms that "would interfere with Plaintiff's vocational efforts." **(D.E. 2, ¶ 22).**

Stebbins does not deny that he suffers from the above symptoms. Rather, he alleges that Defendants' articulation of the above symptoms as reasons he would not benefit from ARS services, is an "open confession" that they discriminated against him. **(D.E. 2, ¶ 25).** On the contrary, these symptoms are illustrative of why Stebbins could not, without some further counseling services and a maintained period of stability which ARS recommended, succeed in the workforce.

While Stebbins alleges that his past academic performance[4] shows that he was qualified to receive assistance from ARS to return to college, academic performance is not the only factor that determines success in college. Schools also have conduct and disciplinary requirements, and courts have held that individuals who cannot meet these standards may not be "otherwise qualified" for vocational rehabilitative services. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154-55 (1st Cir. 1998). Moreover, success in college is not the standard by which ARS determines if individuals are eligible for their services; rather, it is whether an individual can enter the work force after successful completion of their education. ARS determined, as it is authorized to do by statute, that the answer to that question as it pertains to Stebbins is no.

The Eighth Circuit addressed a similar issue in *Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 674 (8th Cir. 2005). In *Reaves*, the

---

[4] Defendants do not dispute that Stebbins attended North Arkansas College between the fall of 2008 and first summer session of 2010. During that time, Stebbins enrolled in 19 classes. Of those 19 classes, Stebbins withdrew from 9 of them and received no grade. **ARS 83**

plaintiff sued over denial by Missouri Division of Vocational Rehabilitation of the plaintiff's request for funds to purchase equipment for the plaintiff's proposed electronic acupuncture business. The plaintiff alleged that the denial was discrimination based on the plaintiff's disability. The Eighth Circuit held that testimony demonstrated that the plaintiff was not well-suited to own the business that she sought to start up, and that the plaintiff was, therefore, not an otherwise qualified individual with a disability as it pertained to receipt of the requested services. *Id.* This Court should similarly rule that Stebbins will be unable to establish a prima facie case of disability discrimination because he is not an otherwise qualified individual to receive services from ARS.

Stebbins' complaint is based on the assumption that by virtue of his disabilities he should automatically receive vocational assistance from ARS. However, having a disability is only one of the factors that determines whether an individual is eligible for ARS services. It is undisputed that Stebbins' Asperger Syndrome and his other disabilities have manifested in ways that "severely hinder[ed]" his ability to socialize with others, make friends, get jobs, get a girlfriend, etc." **(D.E. 2, ¶ 7).** In fact, Stebbins states in his complaint that it was "out of the question" for him to attempt to get along in society and that he has instead chosen to "file suit in federal court" to settle his disputes. **(D.E. 2, ¶8).** Because Stebbins is not an "otherwise qualified" individual with a disability as it pertains to ARS services, he will be unable to establish facts that constitute a violation of the Rehab Act.

Even if this Court were to determine that Stebbins was able to satisfy the first required element and was determined to be "a qualified individual" with a disability, separate defendants deny he would be able to satisfy the second and third required elements. Again, while separate defendants acknowledge Stebbins was not provided the funds he requested, they deny that Stebbins was discriminated against. With regard to the third element – such exclusion, denial or discrimination was "by reason of" his disability – Stebbins has not established this element and will be unable to do so in the future.

The evidence presented by the separate defendants establishes that Stebbins' assessment (history of his interaction with ARS staff members, past records and history, and Stebbins' refusal for treatment) made him ineligible for services in December 2015.

In December 2015, Ms. Jones felt that the provision any ARS services to Stebbins would potentially jeopardize the safety of any ARS vendor (i.e., Arkansas Tech) paid to provide services. **(Ex. D)** She felt that Stebbins' untreated mental health and instability could be further aggravated / worsen given the stressors of college training, employment, or any involvement with the public at his current mental state, and the risk for Stebbins to cause harm to himself or others was too great a risk to take. **(Ex. D)** She felt that without mental health treatment and a period of mental stability Stebbins would not benefit in terms of an employment outcome from the provision of our services. **(Ex. D)** Their services are specially

designed and funded to assist eligible individuals to obtain and / or maintain employment. **(Ex. D)**

Stebbins also advances the argument that he was discriminated against because the separate defendants did not offer him any "reasonable accommodations."  In his Motion for Summary Judgment, Stebbins suggested that a "reasonable accommodation" would have been to have allowed him to attend college while simultaneously attending therapy for his symptoms. **(DE 82, ¶ 42)**  Given his failure to follow physician's orders following his alleged April 2015 suicide attempt to seek counseling, along with the mental instability Stebbins was exhibiting in December 2015, ARS would not have supported this as a viable option. Stebbins was told what he could do in order to be reassessed.  **(Ex. B – ARS 130).**  Until his mental instability was leveled out, ARS did not feel safe in proceeding with Stebbins' application and deemed him to be ineligible as of December 2015.

For the reasons stated, Stebbins' discrimination claim pursuant to the Rehab Act must fail as a matter of law.

## D. Stebbins has failed to allege any wrong-doing on behalf of the State of Arkansas

Stebbins does not allege any specific wrong-doing on behalf of the State of Arkansas in either his Complaint (DE 2) or Amended Complaint (DE 56-1).  Other than listing the State as a party in the case style, the only other reference in the Complaint is found in paragraph 13 of the original Complaint, in which Stebbins refers to ARS as an agency run and funded by the State. (DE 2)  Stebbins does not

identify any actions taken by the State that have harmed him. As a result, the State of Arkansas should be dismissed as a party in this lawsuit.

## V. CONCLUSION

David Stebbins filed his Amended Complaint alleging discrimination and retaliation claims under Section 504 of the Rehabilitation Act against the State of Arkansas and ARS. (DE 56-1)

The evidence presented proves that Stebbins will be unable to establish a prima facie case of discrimination or retaliation pursuant to the Rehab Act. In addition, Stebbins has failed to allege any actual wrong-doing on behalf of the State of Arkansas. As such, the State of Arkansas is entitled to the dismissal of all claims against it. ARS is entitled to judgment as a matter of law on the Rehab Act claims. Separate defendants, the State of Arkansas and ARS, respectfully ask this Court to grant their motion in its entirety.

WHEREFORE, the State of Arkansas and ARS respectfully request this Court grant their motion, and dismiss Stebbins' Complaint with prejudice.

Respectfully submitted,

Leslie Rutledge
Attorney General

By:     /s/ Christine A. Cryer
        Christine A. Cryer
        Arkansas Bar No. 2001082
        Sr. Assistant Attorney General
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        Telephone: (501) 683-0958
        Facsimile: (501) 682-2591
        Christine.cryer@arkansasag.gov

## CERTIFICATE OF SERVICE

I, Christine A. Cryer, Senior Assistant Attorney General, do hereby certify that on January 5, 2018, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system.

I, Christine A. Cryer, hereby certify that on January 5, 2018, I mailed the document by U.S. Postal Service to the following non CM/ECF participant:

Mr. David Stebbins
123 W. Ridge St., Apt. D
Harrison, Arkansas 72601

/s/  Christine A. Cryer