IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

| | | |
|---|---|---|
| DAVID A. STEBBINS | | PLAINTIFF |
| v. | NO. 3:17-CV-3092-TLB | |
| STATE OF ARKANSAS, ARKANSAS REHABILITATION SERVICES, AND AMY JONES | | DEFENDANT |

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S THIRD MOTION FOR SUMMARY JUDGMENT (D.E. 123)**

I. INTRODUCTION

Plaintiff David Stebbins, for the third time, moves for summary judgment on his disability discrimination claim pursuant to Title II Americans with Disabilities Act ("ADA"). In this motion, Stebbins claims to have "new evidence" and "new theories" for recovery. Stebbins does not. His third motion is nothing more than a recitation of the previous arguments asserted in all of his other pleadings. This motion should be denied as well.

As argued in their response to Stebbins previous arguments, in order to state a disability discrimination claim under Title II of the ADA, **_Stebbins_** must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the entity; and (3) such exclusion, denial or discrimination was "by reason of" his disability. *Folkerts v. City of Waverly*, 707 F.3d. 975, 983 (8th Cir. 2013) Under Title II, a "qualified individual with a disability" is a person "who, with or without reasonable modifications to

rules, policies, or practices…meets the essential eligibility requirements for the receipt of services or the participation in programs or activities by a public entity." 42 U.S.C. § 12131(2). Stebbins will be unable to satisfy all three elements; therefore his claim must fail.

As previously stated in their Motion to Dismiss (DE 15 – 16), Response in Opposition to his Stebbins' Second Motion for Summary Judgment (DE 84 – 85), and Defendants Motion for Summary Judgment (DE 109 – 110), Stebbins was not denied ARS's services because of his disability; rather, Stebbins was not otherwise qualified to receive vocational benefits from ARS, *i.e.* able to meet all of the program's requirements *in spite* of his disabilities. Stebbins would not have been eligible to receive any rehabilitative services in the absence of his disabilities. However, having a disability does not automatically make an individual otherwise qualified. *See, e.g., Mallett v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997) (holding plaintiff who was denied further vocational rehabilitation funds to attend graduate school was not "otherwise qualified" to receive the benefits). A qualified individual with a disability is defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Arkansas law provides ARS's policy regarding who is qualified to receive services:

> The policy and scope of the Arkansas Rehabilitation Services shall be to provide increased employment of individuals with disabilities

> through the provision of individualized training, independent living services, education and support services, and meaningful opportunities for employment in integrated work settings to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society.

Ark. Code. Ann. § 25-30-201(a). The Arkansas legislature has specifically declared it to be the policy of the State of Arkansas to "provide needed and feasible rehabilitation services to eligible disabled individuals…to the end that *they may engage in useful and remunerative occupations to the extent of their capabilities*." Ark. Code Ann. § 20-79-202(a) (emphasis added). The legislature further stated that ARS's services shall be provided to disabled individuals "whose rehabilitation the Director of the Arkansas Rehabilitation Services determines, after full investigation, can be satisfactorily achieved…" Ark. Code Ann. § 20-79-213(a)(1). To that end, ARS provides rehabilitation services to "eligible physically or mentally disabled individuals and those who can benefit from vocational rehabilitation and independent living services, *as determined by the agency to be eligible therefor*." Ark. Code Ann. § 25-30-203(a) (emphasis added). In other words, ARS helps those individuals with disabilities that it determines are likely to succeed in the workforce with some temporary assistance from ARS. It is this phrase "likely to succeed in the workforce" that Stebbins focuses in on for his motion.

Stebbins argues the Defendants, collectively, have failed to establish that it is unlikely Stebbins would be able to eventually succeed in the workforce; therefore, he wins. Stebbins is mistaken and incorrect in several aspects.

Based upon the information available to them in December 2015, Amy Jones and ARS made the determination that Stebbins was unlikely to succeed in the workforce. In making that decision, the following information was available: (a) Stebbins' history of argumentative, hostile, and erratic interactions with ARS staff members; (b) the medical records provided by Stebbins; (c) medical records obtained by ARS through records requests with the authorization signed by Stebbins; and (d) his prior refusal of treatment, all made him ineligible for services in December 2015. (DE 84-1)

According to the Client Contact Notes, which were prepared on the date that appears in the upper portion of the records, each and every verbal interaction Stebbins had with ARS staff members was alarming and raised red flags. (DE 84-1). Stebbins' behavior was so alarming that the Harrison Office staff felt great concerns for their physical safety and reported Stebbins' behavior to the Harrison Police Department. (DE 84-1). A review of the client history, specifically: (a) his unwillingness to follow physicians' orders in obtaining counseling services upon his release from St. Bernard's Behavioral Facility on April 30, 2015; (b) his past terroristic threatening incident; (c) his domestic battery charges, and (d) his unwillingness to provide detailed medical information to both the staff at St. Bernard's and ARS – all impacted his assessment. (DE 84-1)

Ms. Jones asked Leslie Johnson, a Licensed Psychological Examiner, to conduct a ***records*** review on Stebbins. Ms. Jones wanted Ms. Johnson's input in determining the feasibility of VR (vocational Rehabilitation) services/training for

4

Stebbins. (DE 84-1) After her review, Ms. Johnson provided Ms. Jones with her conclusions and recommendations. In Ms. Johnson's opinion, as of December 2015, Stebbins was not appropriate for vocational rehabilitation services. (DE 84-1) Ms. Johnson strongly recommended a referral to a local mental healthcare provider for Stebbins. She opined that his vocational success would depend on him stabilizing and effectively managing his psychiatric issues. (DE 84-1) Further, in order for Stebbins to be appropriate for ARS services, Ms. Johnson stated that he should be able to demonstrate a period of stable functioning, and be able to provide documentation from his mental healthcare providers that his symptoms were well-managed and were in agreement that he was ready for training, school, or work. (DE 84-1)

Ms. Johnson documented a list of ways in which Stebbins' observed or reported problem areas were likely to be manifested in a vocational setting. The list included:

- Impulsivity may result in poor choices in job environment;
- Depression may interfere with counseling/job interviews;
- May be source of distraction to co-workers;
- Difficulty assessing consequences of decision alternatives;
- Difficulty relating with instructors/students/co-workers;
- Difficulty performing work tasks which involve people;
- Difficulty changing behavior to meet requirements;
- Emotional intensity may interfere with task performance; and

- Conflicts may preclude adequate task performance. (DE 84-1)

In December 2015, Ms. Jones felt that the provision any ARS services to Stebbins would potentially jeopardize the safety of any ARS vendor paid to provide services. (DE 84-2) She felt that Stebbins' untreated mental health and instability could be further aggravated / worsen given the stressors of college training, employment, or any involvement with the public at his current mental state, and the risk for Stebbins to cause harm to himself or others was too great a risk to take. (*Id*.) She felt that without mental health treatment and a period of mental stability Stebbins would not benefit in terms of an employment outcome from the provision of their services. (*Id*.) ARS services are specially designed and funded to assist eligible individuals to obtain and / or maintain employment. (DE 84-2)

The manifestations identified by Ms. Johnson, and the opinions reached by Ms. Jones were not based upon a diagnosis if Asperger's. (DE 84-2; 84-3) They were based upon Stebbins' exhibited threatening behavior. . (DE 84-2; 84-3)

Stebbins has not and unfortunately cannot show that he would benefit from ARS services in that his rehabilitation into the workforce could be satisfactorily achieved with some assistance from ARS. And it is on that criterion that Stebbins fell short.

Per Ark. Code Ann. § 20-79-213(a)(1), ARS is to conduct a "full investigation" into whether an applicant is likely to be satisfactorily rehabilitated with ARS assistance. As part of the investigation into whether Stebbins met that requirement, he admits that ARS had a Licensed Psychological Examiner review

his medical records and perform a public records search on him. That investigation revealed that Stebbins' exhibited symptoms that "would interfere with Plaintiff's vocational efforts." (D.E. 2, ¶22). Stebbins disputes the findings and opinions by Ms. Johnson; however, he offers no evidence to rebut her findings – just his opinion.

Stebbins does not deny that he suffers from the above symptoms. Rather, he alleges that Defendants' articulation of the above symptoms as reasons he would not benefit from ARS services, is an "open confession" that they discriminated against him. (D.E. 2, ¶25). On the contrary, these symptoms are illustrative of why Stebbins could not, without some further counseling services and a maintained period of stability which ARS recommended, succeed in the workforce.

While Stebbins alleges that his past academic performance[1] shows that he was qualified to receive assistance from ARS to return to college, academic performance is not the only factor that determines success in college. Schools also have conduct and disciplinary requirements, and courts have held that individuals who cannot meet these standards may not be "otherwise qualified" for vocational rehabilitative services. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154-55 (1st Cir. 1998). Moreover, success in college is not the standard by which ARS determines if individuals are eligible for their services; rather, it is whether an individual can enter the work force after successful completion of their education. ARS determined, as it is authorized to do by statute, that the answer to that question as it pertains to Stebbins is no.

---

[1] Defendants do not dispute that Stebbins attended North Arkansas College between the fall of 2008 and first summer session of 2010. During that time, Stebbins enrolled in 19 classes. Of those 19 classes, Stebbins withdrew from 9 of them and received no grade. **ARS 83**

7

The Eighth Circuit addressed a similar issue in *Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 674 (8th Cir. 2005). In *Reaves*, the plaintiff sued over denial by Missouri Division of Vocational Rehabilitation of the plaintiff's request for funds to purchase equipment for the plaintiff's proposed electronic acupuncture business. The plaintiff alleged that the denial was discrimination based on the plaintiff's disability. The Eighth Circuit held that testimony demonstrated that the plaintiff was not well-suited to own the business that she sought to start up, and that the plaintiff was, therefore, not an otherwise qualified individual with a disability as it pertained to receipt of the requested services. *Id*. This Court should similarly rule that Stebbins will be unable to establish a prima facie case of disability discrimination because he is not an otherwise qualified individual to receive services from ARS.

Stebbins' complaint is based on the assumption that by virtue of his disabilities he should automatically receive vocational assistance from ARS. However, having a disability is only one of the factors that determines whether an individual is eligible for ARS services. It is undisputed that Stebbins' Asperger Syndrome and his other disabilities have manifested in ways that "severely hinder[ed]" his ability to socialize with others, make friends, get jobs, get a girlfriend, etc." (D.E. 2, ¶ 7). In fact, Stebbins states in his complaint that it was "out of the question" for him to attempt to get along in society and that he has instead chosen to "file suit in federal court" to settle his disputes. (D.E. 2, ¶8). Because Stebbins is not an "otherwise qualified" individual with a disability as it

pertains to ARS services, he will be unable to establish facts that constitute a violation of Title II of the ADA.

Even if this Court were to determine that Stebbins was able to satisfy the first required element and was determined to be "a qualified individual" with a disability, Defendants deny he would be able to satisfy the second and third required elements. Again, while Defendants acknowledge Stebbins was not provided the funds he requested, they deny that Stebbins was discriminated against. With regard to the third element – such exclusion, denial or discrimination was "by reason of" his disability – Stebbins has not established this element and will be unable to do so in the future.

In December 2015, Ms. Jones felt that the provision any ARS services to Stebbins would potentially jeopardize the safety of any ARS vendor (i.e., Arkansas Tech) paid to provide services. (DE 84-2) She felt that Stebbins' untreated mental health and instability could be further aggravated / worsen given the stressors of college training, employment, or any involvement with the public at his current mental state, and the risk for Stebbins to cause harm to himself or others was too great a risk to take. (DE 84-2) She felt that without mental health treatment and a period of mental stability Stebbins would not benefit in terms of an employment outcome from the provision of our services. (DE 84-2) Their services are specially designed and funded to assist eligible individuals to obtain and / or maintain employment. (DE 84-2)

There was no employment history to take into consideration, because Stebbins has not previously worked. He claims to have applied for jobs, but no one would consider him. (Ex. A) Stebbins claims that does not mean he couldn't succeed, but it most certainly, at a minimum, emphasizes that he never has. That does not speak well to his ability to succeed in the workforce. And while it is not an absolute sign, it is one more piece of the puzzle to be considered, which is exactly what ARS did in making their determination that Stebbins was not eligible for their services. They looked at the totality of the circumstances, of the evidence, and their own personal interactions whether in person or via telephone.

Stebbins again advances the argument that he was discriminated against because the Defendants did not offer him any "reasonable accommodations." In his motion, Stebbins suggests that a "reasonable accommodation" would have been to have allowed him to attend college while simultaneously attending therapy for his symptoms. (DE 82, ¶ 42) Stebbins further argues that the Defendants have never offered any evidence whatsoever to show why this proposed accommodation would not work. To see that Stebbins is mistaken, one only need read the Defendants brief in support of their Motion for Summary Judgment. (DE 110) as well as the Affidavit of Amy Jones, which Stebbins attached to his Motion. (DE 131-5, ¶¶ 33 - 34). Given his failure to follow physician's orders following his alleged April 2015 suicide attempt to seek counseling, along with his undisputed untreated mental instability Stebbins was exhibiting in December 2015, the Defendants would not have supported this as a viable option. Stebbins was told what he could do in order

to be reassessed. (DE 84-1). Until his mental instability was leveled out, the Defendants did not feel safe in proceeding with Stebbins' application and deemed him to be ineligible as of December 2015.

Now that the Defendants have explained why Stebbins' "reasonable accommodation" was not reasonable at all, Stebbins offers no evidence that his "reasonable accommodation" would have worked. And, in his motion and brief, he asserts he doesn't have to. Essentially, Stebbins claims that his only responsibility is to throw a suggestion out there and he's done. That's it. That does not save the day for Stebbins whatsoever.

For all of the reasons stated, Stebbins has not and will not be able to establish a prima facie case of disability discrimination. For these reasons, his motion should be denied.

## II. CONCLUSION

WHEREFORE, Defendants respectfully request this Court deny Plaintiff's third motion, and for any and all other just and proper relief to which they may be granted.

<pre>
                         Respectfully submitted,

                         Leslie Rutledge
                         Attorney General

             By:   /s/ Christine A. Cryer
                         Christine A. Cryer
                         Arkansas Bar No. 2001082
                         Sr. Assistant Attorney General
                         323 Center Street, Suite 200
                         Little Rock, Arkansas 72201
                         Telephone: (501) 683-0958
                         Facsimile: (501) 682-2591
                         Christine.cryer@arkansasag.gov
</pre>

## CERTIFICATE OF SERVICE

I, Christine A. Cryer, Senior Assistant Attorney General, do hereby certify that on January 16, 2018, I emailed a copy of the motion to Plaintiff David Stebbins as the following email address:

stebbinsd@yahoo.com

A copy is being emailed to Mr. Stebbins because the Office of the Arkansas Attorney General is closed today and the mail will not be picked up today.

I, Christine A. Cryer, Senior Assistant Attorney General, do hereby certify that a copy of this pleading will be mailed, via regular U.S. mail, to Mr. Stebbins at the below address on January 17, 2018.

Mr. David Stebbins
123 W. Ridge St., Apt. D
Harrison, Arkansas 72601

<pre>
                              /s/  Christine A. Cryer
</pre>