UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                    PLAINTIFF

VS.                        CASE NO. 3:17-cv-03092

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES              DEFENDANTS

## BRIEF IN SUPPORT OF SEPARATE MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FIRST AMENDMENT RETALIATION CLAIM

Comes now, *pro se* Plaintiff David A. Stebbins, who hereby submits the following Brief

in Support of Separate Motion for Partial Summary Judgment.

### FACTS OF THE CASE

1.      The Defendants denied my application for ARS benefits. They claim that one of the

reasons behind this denial is the "threatening behavior" that I engaged in with ARS staff

memebers over the phone.

2.      However, at no point do the Defendants ever allege any actual threatening behavior. The

closest they come is saying that I was breathing hard (because it's not like the microphone I was

using at the time might have been overly sensitive to the point where you could hear my

breathing, right?!), yelling (because again, it's not like my microphone might have just been

really sensitive so any incoming audio might have been amplified, right?!), and/or sounding

"anxious." The only time, in the ARS's evidence, that the Defendants unequivocally accuse me

of threateing them is in Exhibit 5. Even then, however, the accusation is not even documented by

the original declarant. Instead, Amy Jones merely mentions something one of her colleagues (we

do not know which one) said to her that I was threatening her. In that instance, no details at all

are given as to what exactly I said or how she considered it to be a threat!

3.      The Defendants maintain that they called the cops not once but twice. However, just

going off the Defendants' evidence, the Harrison Police Department nevertheless declined to file

a report, believing the actions they complain about to not be enough to give rise to a claim of

terroristic threatening under Ark. Code Ann. § 5-13-301.

4.      The truthfulness of these accusations are heavily disputed. However, for the purposes of

this motion, I will assume that they are true and go from there.

## STANDARD OF REVIEW

5.      Summary judgment is appropriate when there is no dispute of material fact and the

movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the

moving party to demonstrate the absence of a genuine issue of material fact requirement the trier

of fact to resolve the dispute in favor of one party or the other. Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986); Anderson v. Liberty Lobby, Inc., 177 U.S. 242, 250 (1986). An issue of fact is

material only if the fact could affect the outcome of the case under governing law. Anderson, 477

U.S. at 248. Th enon-moving party must establish that there is a genuine issue of material fact in

order to survive a motion for summary judgment. Celotex, 477 U.S. at 322; Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 475, 585-86 (1986). To establish the existence

of a genuine issue, the non-moving party must produce "specific facts showing that there is a

genuine issue for trial." Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. At 587.

6.      The evidence in this case clearly entitles me to judgment as a matter of law on the claim

of First Amendment Retaliation.

## ARGUMENT

7.      "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff

must show (1) he engaged in a protected activity, (2) the government official took adverse action

against him that would chill a person of ordinary firmness from continuing in the activity, and (3)

the adverse action was motivated at least in part by the exercise of the protected activity." See

Revels v. Vincenz, 382 F. 3d 870, 876 (8th Cir. 2004).

8.      The second and third essential elements are undisputed. See **Undisputed Fact No. 1** and

**Undisputed Fact No. 2**, respectively. Thus, in order for me to prevail on this alternate theory of

liability, I need only prove that the statements they accuse me of making were protected by the

First Amendment. That is a question of law and therefore can be properly disposed of on a

motion for summary judgment.

9.      These statements undoubtedly were protected by the First Amendment.

10.      Before we continue, let me make one thing perfectly clear: I am not conceding to their

admissions that I engaged in any threatening or hostile behavior with them in any way, shape, or

form! See my Statement of Disputed Facts in Response to the Defendants' Motion for Summary

Judgment (Doc. 109-111), where I vehemently deny that I ever threatened them. To the contrary,

this section merley argues that, even if their statements could be proven to be true, it does not

matter.

11.      With that said, the Defendants, by their own admission, issued their adverse action in part

because of pure speech. The actions they complain about are indeed pure speech; at no point do

the Defendants even so much as imply that I *did* anything around them that involved any part of

my body except my voice.

12.      Moreover, by their own admission, the adverse action was done because of the content

and viewpoint of the speech. They say I acted irritably with them, and that I said that I did not

trust them generally simply by reason of them being "the government."

13.      This counts as content and viewpoint-based speech. After all, if the reason I do not trust

them is because they are the government, then that means that my speech is inherently political.

14.    Therefore, because the speech is inerently political, this speech is entitled to the absolute pinnacle of First Amendment protection. See Snyder v. Phelps, 131 S. Ct. 1207, 1215 (2011) (holding that political speech "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection").

15.    This means that the proscription of this speech must be pass strict scrutiny, otherwise the Defendants proscribing the speech is patently unconstitutional. See Citizens United v. Federal Election Com'n, 130 S. Ct. 876, 898 (2010) ("Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest'"). Also, note that this precedent clearly says that strict scrutiny "requires the government to prove" that the proscription is constitutional. That means that the Defendants hold the burden of proof. I do not have to prove that I did not threaten them; they have to prove that I did!

16.    The Defendants maintain that my words towards them amounted to theatening behavior. While threats are generally considered to be a valid exception to First Amendment rights, that does not mean that the government can just take any speech they disagree with, that has even the slightest hint of antagonism in it, just slap the label of "threat" onto it, and use that as a wild card to justify retaliating against that speech. To the contrary, it is clearly-established, black letter law that only "true threats" are proscribable under the First Amendment. See Watts v. United States, 394 US 705, 707 (1969):("[A] statute ... which [proscribes] a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech").

17.    "True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or

group of individuals." See Virginia v. Black, 538 US 343, 359 (2003). The offensiveness of speech alone – even egregiously offensive and alarming speech, and even if the offense and/or alarm was the speaker's main goal – has been consistently held by the Supreme Court to be insufficient to overcome First Amendment protections. See Snyder v. Phelps, 562 U.S. 443 (2011). See also Lawrence v. Texas, 539 U.S. 558 (2003). See also Watts v. United States, 394 US 705 (1969).

18.    The closest the Defendants come to alleging any behavior that could even remotely be classified as "threatening" is as follows:

- I acted agitated.

- I yelled (although we don't know exactly how loud).

- I breathed hard (though we don't know exactly how hard).

- I would not "calm down" (whatever that means).

- I said that I did not like the government and therefore did not like the ARS.

19.    That is not a threat. Because the source of my supposed hatred of them is the fact that they are "the government," that means that my speech is inherently political. However, the Supreme Court has consistently made clear that political speech "is often vituperative, abusive, and inexact," yet is still protected by the First Amendment. See *Watts*, supra at 708.

20.    In fact, *Watts* has even more of a foundation to make a case for a threat than this case does! At least in *Watts*, the Defendant clearly uttered words that expressed an unequivocal desire to assassinate the President, and yet even that was upheld as free speech because it was considered "political hyperbole." Here, the defendants do not even allege that much! They do not allege that I expressed any desire to inflict any physical pain on them or anybody (unless you count that anonymous, hearsay contact where Amy Jones received a complaint from some

anonymous Harrison-based employee ... where no details whatsoever were given as to how excactly she felt I was threatening her). Instead, they only allege that the raw emotion in my words made them feel just a wee bit uncomfortable, to which they proceeded to haphazardly slap the label of "threat" onto my speech so they could give themselves an excuse to retaliate against it.

21.     The alleged irritiablity in my voice does not amount to a threat. Period. The Defendants offer zero evidence suggesting that cases of people who are irritated with another person usually results in escelation to the point of violence. If there was evidence suggesting that such escelation occurs in the majority of cases, then by all means, I defy the Defendants to produce of that! But they will not be able to do that.

22.     The Defendants are the ones overreacting to my alleged behavior (if indeed it can be shown to have happened at all), not me. This is best evidenced by **Exhibit 6** and **Exhibit 7**. When they allegedly called the cops to report my threatening, both dispatch call notes contained the disposition of "No report required." In other words, the Harrison Police Department heard the Defendants' complaints and decided that the alleged conduct, even if true, does not amount to an act of terroristic threatening under Ark. Code Ann. § 5-13-301. So even taking the Defendants' own evidence at face value, it is clear that the Defendants are merley butthurt, not that I actually threatened them.

23.     So with it established that my alleged hostility with the Defendants over the phone being clearly established as a protected form of free speech (and more importantly, one with clear political ramifications) even if it happened in the first place, that means that Amy Jones committed a separate act of First Amendment Retaliation when based her adverse action even partially on that.

**RELIEF REQUESTED**

24.     With it established beyond dispute that Amy Jones committed an act of First Amendment Retaliation by denying the application in part because of actions which she overblew by placing the entirely unwarranted label of "threat" on them, we now turn to what relief I should be entitled to.

25.     I ask that the Court issue an injunction against Amy Jones, ordering her to immediately approve my application for ARS assistance.

26.     Please do not simply order Amy Jones to re-open and re-assess the application. If the Court only orders that, Jones will most likely find some other excuse to deny the application, only this time taking a bit more care to cover up her true motives.

27.     I ask that this Court order Amy Jones to not only approve my application, but also approve my petition for extra funds. In other words, I ask the Court to order Amy Jones to ensure that the ARS covers all of my college education expenses in their entirety, whatever those expenses may be. This portion of the injunction is necessary for the same reason it is necessary to order Jones to approve the application rather than mere reassess it; she has proven that she cannot be trusted to use her discretion in a lawful and impartial manner, and therefore should be stripped of her discretion.

**CONCLUSION**

28.     In conclusion, the Defendants have miscalculated at every turn. No, they do not get sole discretion to decide whether or not I am qualified. No, they do not get to say that I threatened them solely on alleged behavior that is only slightly antagonistic. No, they do not get to say that a fact is undisputed simply because they claim it. They are wrong on nearly every count.

Wherefore, premises considered, I respectfully request that the Defendants' Motions for

Summary Judgment be denied, and that my Motions for Summary Judgment be granted.

So requested on this, the 15th day of January, 2018.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com