IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**DAVID A. STEBBINS**                                                                                   **PLAINTIFF**

**V.**                            **CASE NO. 3:17-CV-03092**

**STATE OF ARKANSAS;**
**ARKANSAS REHABILITATION SERVICES;**
**and AMY JONES**                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff David A. Stebbins filed a lawsuit against the State of Arkansas, Arkansas Rehabilitation Services ("ARS"), and Amy Jones, the District I Manager of ARS, on July 27, 2016, in the United States District Court for the Eastern District of Arkansas. The case was transferred to this District, at Defendants' request, on October 13, 2017. *See* Doc. 89. Before the case was transferred, however, Mr. Stebbins had filed a Motion for Summary Judgment (Doc. 79), Brief in Support (Doc. 80-1), Statement of Facts (Doc. 81-1), and Supplement (Doc. 83); and Defendants had collectively filed a Response (Doc. 84), Brief in Support (Doc. 85), Response to Statement of Facts (Doc. 86), and Statement of Facts (Doc. 87). In the Motion, Mr. Stebbins requests summary judgment on all claims he asserted in the original Complaint, namely: (1) violations of the Americans with Disabilities Act ("ADA") for discrimination and retaliation, and (2) a violation of 42 U.S.C. § 1983, for First Amendment retaliation. The Motion became ripe shortly after the case was transferred, when Mr. Stebbins filed his replies to Defendants' responses. *See* Docs. 93-96, 99.[1]

---

[1] Mr. Stebbins filed yet another Supplement in Reply (Doc. 103) on November 2, 2017, which was not a proper filing, as it was filed too late, *see* Local Rule 7.2(b), but has nonetheless been considered by the Court.

On December 4, 2017, Defendants filed their own Motion for Summary Judgment (Doc. 109), Brief in Support (Doc. 110), and Statement of Facts (Doc. 111). Mr. Stebbins responded to Defendants' Motion, see Docs. 126-128, on January 2, 2018, and at the same time filed a second Motion for Summary Judgment (Doc. 123), Brief in Support (Doc. 124), and Statement of Facts (Doc. 125) against all Defendants. Mr. Stebbins explains in his second Motion for Summary Judgment that he does not intend it to supersede his first Motion; instead, he contends that both Motions "argue completely separate grounds for this relief" and "may be granted or denied independently of one another." (Doc. 123, p. 1).

On January 5, 2018, Defendants filed a second Motion for Summary Judgment. See Docs. 131-133. This second Motion addresses only Mr. Stebbins's claim for discrimination under the Rehabilitation Act ("RA"), which the Court had allowed Mr. Stebbins to add to his Complaint as a separate cause of action on December 7, 2017, just after Defendants filed their first Motion for Summary Judgment. See Doc. 113. Also on January 5, Defendants filed a Response to Mr. Stebbins's second Motion for Summary Judgment, see Doc. 136, as well as a Brief in Support and Statement of Facts, see Docs. 137, 138. Mr. Stebbins then filed a Reply and other documents in support of his second Motion for Summary Judgment (Docs. 149-152). Soon after, on January 29, 2018, Mr. Stebbins filed a Response and supporting documents as to Defendants' second Motion for Summary Judgment, see Docs. 157-159, and Defendants filed a Reply to Mr. Stebbins's Response, see Doc. 160.

At this point, it is clear from the procedural history cited above that all parties believe the issues in this case may be resolved on summary judgment. Mr. Stebbins has filed two Motions, asserting alternative bases for the Court to find in his favor on all claims; and Defendants have also filed two Motions, the first concerning the ADA and First Amendment claims, and the second concerning the RA claim.

The Court has carefully evaluated all four Motions and agrees that Mr. Stebbins's claims may be decided as a matter of law, in view of the undisputed facts. Accordingly, for the reasons explained herein, Mr. Stebbins's first and second Motions for Summary Judgment are **DENIED**, and Defendants' first and second Motions for Summary Judgment are **GRANTED**.

## I. BACKGROUND

According to Mr. Stebbins, he is an individual with several disabilities, including Asperger Syndrome and depression. He receives Social Security Disability benefits. At some point in 2015, or perhaps earlier, he decided he wanted to enroll in college and earn a computer science degree. He had previously taken several college courses at other institutions. See Doc. 109-2, p. 54. On December 1, 2015, he visited the Harrison office of ARS, a state agency that provides vocational services and other assistance to disabled citizens of Arkansas. Mr. Stebbins met with a counselor and completed an application for ARS services. In the application, Mr. Stebbins asked for very specific relief: funds to attend Arkansas Tech University in Russellville, Arkansas.

After the initial meeting, ARS worked to obtain copies of Mr. Stebbins's medical records in order to verify his disabilities and need for services. Mr. Stebbins signed a

release form for his medical records, *id.* at 10, 13, and provided his ARS counselor with some hospital records and the names of two of his doctors. From December 3 to December 9, 2015, Mr. Stebbins called and emailed ARS staff members multiple times, trying to find out the status of his request for funds. ARS contends his phone calls with staff demonstrated extreme agitation, anger, yelling, and overt hostility. The staff documented these exchanges in their notes, *see id.* at 35-47, 52-53, 59, but Mr. Stebbins denies that his calls were as hostile or negative as the staff has characterized them.

At some point in early December, Ms. Amy Jones, the ARS District I Director, feared for her Harrison office staff's safety because of the nature of Mr. Stebbins's repeated telephone contacts. Ms. Jones directed her staff to keep the doors to the lobby and office locked at all times, and to call the police if Mr. Stebbins appeared at the office in person. A staff member from ARS called the Harrison Police Department on December 8 to document an allegedly rude and threatening telephone call with Mr. Stebbins. *See id.* at 45. Another staff member called the police on December 9 to report Mr. Stebbins's "extremely hostile" telephone call. *See id.* at 48. After that, Ms. Jones determined that she "did not feel comfortable" arranging a face-to-face interview between Mr. Stebbins and another ARS staff member to discuss his application. *See id.* at 46. By then, it had only been a little more than a week since Mr. Stebbins first visited the office.[2]

---

[2] Mr. Stebbins does not dispute that he was advised in writing that it could take up to 60 days to gather all of his medical records and assess his application for services. *See id.* at 5-6.

4

On December 15, 2015, ARS's Licensed Psychological Examiner, Leslie S. Johnson, completed a review of Mr. Stebbins's mental health treatment records in order "to assist in determining [the] feasibility of VR ["Vocational Rehabilitation"] services/training."[3] *Id.* at 56. Ms. Johnson had at her disposal all the medical treatment records that ARS was able to gather from Mr. Stebbins's healthcare providers. From reviewing these records, she noted that Mr. Stebbins had advised a nurse that he had been "kicked out of the U of A for making threatening statements." *Id.* He had also admitted that he had been arrested for assaulting his father. He had attempted to commit suicide by drinking bleach. *Id.* He also reported feelings of frustration, anger, and depression. *Id.* The most recent medical records are dated April 26, 2015, around the time of his attempted suicide. Mr. Stebbins was admitted briefly to St. Bernards Medical Center for psychiatric treatment, with further instructions for follow-up care. *See id.* at 32-33. Ms. Johnson further noted that Mr. Stebbins's doctors described him as "impulsive, lack[ing] insight, paranoid, irritable and agitated." *Id.* at 56. Although he had been diagnosed with major depressive disorder, Asperger's Disorder, Delusional Disorder, and Cluster B personality disorder traits (including narcissistic and antisocial personality disorders), he admitted to ARS that he was "not currently in treatment for his mental health issues." *Id.*

In the course of reviewing the medical file, it appears Ms. Johnson also performed a public-records search and discovered that Mr. Stebbins had filed multiple

---

[3] Ms. Jones had made a written request for the records review on December 14, 2015. *See id.* at 55.

lawsuits "against his parents, Wal-Mart, the U of A, and federal judges." *Id.* She surmised that the "[c]auses of action were mainly civil rights and discrimination." *Id.* She prepared a written recommendation as to Mr. Stebbins's request for ARS funds, concluding that his various psychological conditions, as reflected in his treatment records, were "likely to be manifested in a vocational setting" in several negative ways, *id.* at 57. She then went on to explain that his medical records "indicated a history of physical aggression and threatening statements," which suggested to her that Mr. Stebbins was "not currently appropriate for vocational rehabilitation services." *Id.* She strongly recommended that he be referred "to a local mental healthcare provider" for "treatment and the support of a therapeutic relationship," since he was not currently receiving any health care for his multiple mental health issues. *Id.* The final paragraph of her recommendation was as follows:

> In order for Mr. Stebbins to be appropriate for ARS services he should be able to demonstrate a period of stable functioning. He will also need to provide documentation from his mental healthcare providers that his symptoms are well-managed and they agree he is ready for training, school or work.

*Id.*

After receiving Ms. Johnson's report, Ms. Jones reviewed it, as well as the other documents in Mr. Stebbins's file, and made the final decision to deny his request for benefits, at least for the time being. She made a note to the file, dated December 16, 2015, in which she explained that she made this decision "[b]ased on the [sic] Mr. Stebbins interaction with myself and staff, past records and history, and Mr. Stebbins refusal for treatment . . . ." *Id.* at 59. The same day, Ms. Jones sent Mr. Stebbins a

6

letter, see id. at 60, in which she excerpted portions of Ms. Johnson's written recommendation and informed him that he was ineligible for vocational rehabilitation services. The letter explained that if he disagreed with this decision, he could file a request for administrative review, and if still not satisfied, he could then request a hearing. Id. The following day, December 17, Ms. Jones sent Mr. Stebbins a second letter that clarified that her decision to deny him benefits was not permanent. Id. at 62. She explained that ARS "will reassess" his need for services if he supplied "documentation of treatment, stability and recommendations from providers that you are ready for training, school or work . . . ." Id.

Mr. Stebbins concedes that he did not appeal ARS's eligibility determination within the agency, nor did he otherwise attempt to exhaust his administrative remedies. Instead, he filed this lawsuit. He contends that when Defendants denied him vocational funds to attend college, they did so *because of* his disabilities—*because* he has Asperger's Syndrome and depression, among other diagnoses. He therefore believes Defendants violated both the ADA and the RA by discriminating and retaliating against him for his disabilities. He also maintains that Defendants' decision to deny him tuition assistance was in retaliation for him exercising his First Amendment right to file civil lawsuits, since Ms. Johnson's report and recommendation referenced the fact that he had, in fact, filed various civil lawsuits. Below the Court will consider the parties' cross-motions for summary judgment, bearing in mind the appropriate guiding legal standard.

## II. LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When there exists no genuine issue as to any material fact, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

### A. Discrimination and Retaliation under the ADA

As previously mentioned, Mr. Stebbins admits he has "a variety of disabilities, including, but not limited to, Asperger Syndrome and Depression." (Doc. 80-1, p. 4). Defendants do not challenge this and agree Mr. Stebbins is disabled. But a claim of

disability discrimination under Title II of the ADA requires more than just proof of a disability, coupled with proof that a public entity ruled in a manner adverse to the disabled person. There must be proof of a nexus—that the adverse decision was made *because of* the disability. A prima facie case of ADA disability discrimination therefore requires: (1) proof of an individual's qualifying disability; (2) proof that the disabled individual was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and (3) proof that the exclusion or denial was "by reason of the individual's disability." *Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013).

First, the Court agrees with Defendants that Mr. Stebbins's lawsuit was premature. He should have pursued the administrative appellate options that ARS offered him, and he should not have jumped immediately to filing suit—as he has a habit of doing, unfortunately. But setting aside whether Mr. Stebbins's failure to exhaust administrative remedies is, in itself, a reason to dismiss the case, and evaluating the case on the merits, the Court finds that there is clearly no proof in the summary judgment record that ARS declined Mr. Stebbins's application for funds for college in violation of the ADA. Certainly, Mr. Stebbins identified his disabilities to ARS; and certainly, the agency was aware that he suffered from those disabilities when it made the decision to decline his request for college tuition. However, there is no evidence in the summary judgment record that his application was declined due to his disabilities.

It is abundantly clear from the tenor and content of Mr. Stebbins's briefing on summary judgment that he believes he is entitled to receive ARS funds—for the college

9

of his choice and in the amount he designates—simply because he is disabled. That is incorrect. ARS is vested by the State of Arkansas with the discretion to decide who is a proper recipient of services, and what services are appropriate for each individual. The Arkansas Code at Section 25-30-201(a) states that ARS's mission is "to provide increased employment of individuals with disabilities," and ARS is empowered to accomplish that end by providing "individualized training, independent living services, education and support services, and meaningful opportunities for employment . . . ." The goal of the agency, therefore, is to increase employment opportunities for disabled Arkansans. Further, Section 20-79-213(a) of the Arkansas Code sets up eligibility standards for receiving ARS funds, thus tasking the ARS with being a responsible steward of the funds that are allocated to it by the legislature. According to the legislature, ARS services should only be provided to those disabled Arkansans "whose rehabilitation the Director of the Arkansas Rehabilitation Services determines, after full investigation, can be satisfactorily achieved . . . ." Ark. Code Ann. § 20-79-213(a)(1).

In the case at bar, there is no genuine, material dispute of fact that ARS performed its required "full investigation" of Mr. Stebbins's case and, only after that, denied Mr. Stebbins's specific request for immediate funding to attend college. The agency did not decline his request for services outright. Instead, its denial letter explained that Mr. Stebbins could later become eligible for services if he demonstrated a period of stable functioning, as confirmed by a healthcare provider. Obviously, Mr. Stebbins disagrees with ARS's decision, but he fails to provide any evidence to suggest that ARS has done something illegal here. Mr. Stebbins complains that his application

was not fairly decided because it was based on a records review only, rather than an in-person psycho-social evaluation by ARS staff. He also complains that ARS is wrong, and he does not need mental health treatment, but even if he did, ARS should be required to pay his Arkansas Tech tuition right now, and permit him to seek out mental health treatment later—a suggestion he calls a "reasonable accommodation." Finally, he complains that ARS's work-focused eligibility standards are unfair and "inherently discriminatory," see Doc. 124, p. 13, and that, in any event, he has met those requirements because he believes that he can succeed right now in school and eventually become gainfully employed.

Unfortunately, all of Mr. Stebbins's complaints above are just that: complaints. He is not happy with ARS's decision, but he has no evidence that ARS denied his application due to an illegal reason. To put it bluntly, the only evidence he has is his own suspicion that the reasons given could not possibly be the true reasons.

ARS is under no obligation to abandon all eligibility requirements in Mr. Stebbins's case or any other. The documents submitted to the Court on summary judgment include Mr. Stebbins's entire ARS case file, the affidavits of Ms. Johnson and Ms. Jones, and a few written discovery requests and responses. Mr. Stebbins has pointed to nothing in this great pile of evidence that indicates that ARS denied him funding for a discriminatory reason. He has failed to meet proof with proof, and thus, will not be permitted to bring his complaints to a jury, simply because he finds ARS's decision to be wrong and unfair. His ADA discrimination claim is **DISMISSED**.

With respect to the ADA retaliation claim, it also merits immediate dismissal. In order to prove ADA-based retaliation, Mr. Stebbins must demonstrate that he was retaliated against by ARS for engaging in activities that are protected by the ADA. Mr. Stebbins asserts that he was denied benefits because he filed various civil lawsuits in the past against a number of defendants in a number of different courts, and at least *some* of those lawsuits happened to contain ADA-based discrimination claims. This connection between filing lawsuits with ADA claims and ARS's decision to deny benefits is entirely speculative, and is once again only supported by Mr. Stebbins's conjecture, and nothing more. The ADA retaliation claim is **DISMISSED**.

### B. Retaliation Due to Exercise of First Amendment Rights

Mr. Stebbins's next claim is that ARS denied him benefits—not for the reasons stated in their denial letters—but in retaliation for Mr. Stebbins exercising his First Amendment right to file lawsuits. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, Mr. Stebbins must prove that: (1) he engaged in an activity protected by the First Amendment; (2) he suffered an adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated "at least in part" by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Once again, Defendants have presented voluminous proof that the reason why ARS denied Mr. Stebbins's claim for benefits was due to the fact that he was not receiving any mental health treatment for existing, serious mental health conditions, and that the lack of any treatment jeopardized his ability to succeed both in school and later

in the workforce. Rather than deny him benefits in perpetuity, the agency advised him that it would reconsider his request if he sought treatment and had a doctor certify that he was prepared to effectively put to use the vocational assistance and training that ARS could provide.

In response to Defendants' proof, Mr. Stebbins has highlighted a single sentence in Ms. Johnson's report that alludes to his civil litigation history, and from there, Mr. Stebbins has extrapolated that the true reason why ARS denied him benefits was because of his penchant for filing civil lawsuits. In context, the sentence in question immediately follows Ms. Johnson's discussion of Mr. Stebbins's medical records, which note his various mental health symptoms, including paranoia, irritability, agitation, and a feeling that "he is chronically targeted by the government and law enforcement . . . ." (Doc. 109-2, p. 56). The next sentence then states, without further commentary: "A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination." *Id.*

The Court finds that no jury issue is created by the fact that Ms. Johnson, in the course of evaluating Mr. Stebbins's history, performed a public-records search and uncovered Mr. Stebbins's extensive litigation history. Once again, there is no evidence to support his speculation that the litigation history must have influenced the final decision. Ms. Johnson's recommendation does not mention lawsuits as a reason to deny benefits. Moreover, Ms. Jones's letters to Mr. Stebbins similarly fail to mention

lawsuits. As there is no genuine, material dispute of fact as to whether ARS engaged in First Amendment retaliation, the claim is **DISMISSED**.

### C. Discrimination under the RA

According to the Eighth Circuit, "the substantive standards of § 504 of the RA and the ADA are the same." *Loye v. Cnty. of Dakota*, 625 F.3d 494, 496 (8th Cir. 2010). Therefore, the RA discrimination claim is **DISMISSED** for the same reasons that the ADA discrimination claim is dismissed. Mr. Stebbins can point to no genuine, material dispute of fact to support his claim that the reason why he was denied benefits was a discriminatory reason in violation of the RA.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff David A. Stebbins's Motions for Summary Judgment (Docs. 79, 123) are **DENIED**, and Defendants State of Arkansas, Arkansas Rehabilitation Services, and Amy Jones's Motions for Summary Judgment (Docs. 109, 131) are **GRANTED**. The case is **DISMISSED WITH PREJUDICE**, and judgment will enter accordingly.

**IT IS SO ORDERED** on this 8th day of May, 2018.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE